Dennis B. Kass (State Bar No. 137263)
dbk@manningllp.com
Richard Garcia (State Bar No. 198185)
rgg@manningllp.com
Alexandra C. Seibert (State Bar No. 283008)
acs@manningllp.com
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone: (415) 217-6990
Facsimile: (415) 217-6999

Attorneys for GEICO GENERAL INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| CHRISTOPHER T. MONROE,<br><br>Plaintiff,<br><br>v.<br><br>GEICO GENERAL INSURANCE COMPANY,<br><br>Defendant. | Case No. 14-CV-05174-HRL<br><br>**DEFENDANT GEICO GENERAL INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION OF ISSUES AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 25, 2017<br>Time: 9:00 a.m.<br>Ctrm.: 4<br><br>[Filed concurrently with Separate Statement of Undisputed Material Facts; Appendix of Evidence; Request for Judicial Notice and [Proposed] Orders]<br><br>Complaint filed: |

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 25, 2017, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the above-captioned court, located at

280 South First Street, No. 2112, San Jose, California before the Honorable Edward J. Davila, defendant GEICO GENERAL INSURANCE COMPANY ("Geico") will move the Court for an order, pursuant to Federal Rules of Civil Procedure Rule 56 there is no genuine dispute as to any material fact and Geico is entitled to judgment as a matter of law. In the alternative Geico seeks summary adjudication of the following claims or parts of claims:

(1) Defendant is entitled to judgment on plaintiff's first claim for Breach of Contract;

(2) Defendant is entitled to judgment on plaintiff's second claim for violation of California Business & Professions Code section 17200;

(3) Defendant is entitled to judgment on plaintiff's third claim for fraud;

(4) Defendant is entitled to judgment on plaintiff's fourth claim for declaratory relief.

(5) Defendant is entitled to judgment that plaintiff is not entitled to injunctive relief.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities and the declarations of John Quinto, Lawrence Wright, Lon Grothen, Maryam Maleki, and Ladell Hulet Muhlestein and exhibits thereto, the pleadings and papers on file in this action, matters of which the Court has been requested to take judicial notice or may take judicial notice, and such other and further evidence and argument as may be presented before and at the hearing on this motion.

DATED: November 17, 2017

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: Ladell H. Muhlestein
Dennis B. Kass
Richard Garcia
Alexandra C. Seibert
Ladell Hulet Muhlestein
Attorneys for GEICO GENERAL INSURANCE COMPANY

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 6

II. STATEMENT OF FACTS ..... 10

III. LEGAL ARGUMENT ..... 19

A. There is No Evidence to Support Plaintiff's Claims ..... 19

B. Geico Is Entitled To Judgment On Plaintiff's Claim For Fraud ..... 19

1. There is No Evidence that at the Time Plaintiff Purchased His Policy, Geico Intended Not to Pay Valid Claims Or Suppressed a Plan Not to Pay Valid Claims ..... 20

2. There Is No Evidence That Plaintiff Reasonably Relied On His Belief That All Material Facts About Geico's Business Practices Had Been Disclosed To Him ..... 22

C. Geico Is Entitled To Judgment On Plaintiff's Breach of Contract Claim Because He Did Not Meet His Obligations Under the Policy ..... 23

D. The Court Should Decline to Exercise Discretionary Jurisdiction of Plaintiff's Claim For Declaratory Relief ..... 27

E. Geico Is Entitled To Judgment On Plaintiff's Claim For Unlawful, Unfair, or Fraudulent Business Practices ..... 27

F. Plaintiff Is Not Entitled to Injunctive Relief ..... 30

IV. CONCLUSION ..... 30


MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES


Page

**CASES**

*Abdelhamid v. Fire Ins. Exchange*
182 Cal.App.4th 990 (2010) ........ 25

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986). ........ 19

*Behnke v. State Farm General Ins. Co.*
196 Cal.App.4th 1443 (2011) ........ 20, 22

*Brizuela v. Calfarm Ins. Co.*
116 Cal.App.4th 578 (2004) ........ 25

*Chabner v. United Omaha Life Ins. Co.*
225 F.3d 1042 (9th Cir. 2000) ........ 28

*Chierfue Her v. State Farm Ins. Co.*
92 F.Supp.3d 957 (E.D. Cal. 2015) ........ 25

*Desert Healthcare Dist. v. Pacificare FHP, Inc.*
94 Cal.App.4th 781 (2001) ........ 30

*Doerr v. Allstate Insurance Co.*
21 Fed.Appx. 638 (6th Cir. 2005) ........ 25

*Duffens v. Valenti*
161 Cal.App.4th 434 (2008) ........ 20

*Gatson v. Allstate Insurance Co.*
No. 4:08-CV-0749, 2008 U.S.Dist.LEXIS 107996, 2008 WL 5716525 ........ 25

*Gilbert v. Infinity Ins. Co.*
186 F.Supp.3d 1075 (C.D. Cal. 2016) ........ 25, 26

*Globe Indem. Co. v. Superior Court*
6 Cal.App.4th 725 (1992) ........ 25

*Hickman v. London Assur. Corp.*
184 Cal. 524 (1920) ........ 24

*In re Oracle Corp. Sec. Litig.*
627 F.3d 376 (9th Cir. 2010) ........ 19

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007) ........ 27

*Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies*
970 F.2d 273 (7th Cir. 1992) ........ 30


MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

*Othman v. Globe Indem. Co.*
759 F.2d 1458 (9th Cir. 1985) ........ 25

*StreamCast Networks, Inc. v. IBIS LLC*
2006 U.S. Dist. LEXIS 97607 (C.D. Cal. 2006) ........ 27

**OTHER AUTHORITIES**

Federal Civil Procedure Before Trial
Section 10:13.5 (The Rutter Group 2005) ........ 27

Federal Rules of Civil Procedure
56(e) ........ 19

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Insurance industry estimates put fraud at about 10 percent of the property/casualty insurance industry's losses each year. Using this measure, over the five-year period from 2011 to 2015, property/casualty fraud amounted to about $34 billion each year. [See Request for Judicial Notice.] Auto insurance is believed to be one of the lines most vulnerable to insurance fraud. Forty-two states, including California, and the District of Columbia have set up insurance fraud bureaus. Insurers in California are required by Insurance Code sections 1875.20 - 24 to establish and maintain Special Investigative Units ("SIUs").

Insurance companies owe policy holders a duty to investigate all claims to determine coverage, liability and, when applicable, damage; they also owe policy holders a duty to pay valid claims. [Grothen Dec., ¶¶ 2, 3; Exh. A to Grothen Dec.; Quinto Dec., ¶ 3.] Investigations play a crucial role in determining whether a claim is valid and should be paid or fraudulent and should be denied. [Grothen Dec., ¶ 4; Exh. A to Grothen Dec.] Due to consumer protection and privacy laws, much information important to an insurer's investigation, including telephone records, can only be obtained by the policy holders themselves. [Grothen Dec., ¶ 4.] Geico policy holders owe a contractual duty to assist and cooperate with Geico's investigations and in securing evidence. [Grothen Dec., ¶ 5.]

Plaintiff's claim for theft of the vehicle made within 24 hours of the inception of the policy raised a flag that the claim might be fraudulent. On that ground, plaintiff's claim was referred by the claims examiner to SIU for an investigation to investigate whether the claim was legitimate or fraudulent. [Quinto Dec., ¶ 10.] The claim was vetted by SIU, and accepted for investigation. [Wright Dec., ¶ 6.] At the outset of the investigation - when plaintiff gave his recorded statement on October 9, 2013 - he was advised that Geico would be requesting documentation to verify the facts he provided. [Wright Dec., ¶¶ 10, 11; Exh. C to Wright Dec. at pp. 1, 2.] During the recorded statement the SIU investigator, Larry Wright, asked plaintiff a number of questions about phone calls he may have received the day and night before the theft. Plaintiff responded that he would have to look in his phone to know.

Whereupon Wright reminded him that he would be requesting a copy of his cell phone records and text messages. [Exh. C to Wright Dec. at p. 16.] At the end of the statement, Wright gave plaintiff a written list of the documentation and information he was being asked to provide, which included his cell phone and text messages records. [Exh. C to Wright Dec. at pp. 24, 26.] Wright told plaintiff how to get cell phone records for a prepaid account and that he could ask Geico to pay for the cost of the required upgrade of his account.

> You may have to upgrade your cellphone service from . . . from prepaid to monthly such that you can obtain your cellphone records. You have to do that, um administratively. . . . [I]f the cost is problematic for you, you can ask the examiner and they often times will authorize the payment of the , uh, cost to upgrade it, . . . ; [A]nd what I'm gonna be looking for is phone records from 9/1/2013 through 10/1/2013. Okay? And that's both cellphone and text messages. Okay?
> [Exh. C to Wright Dec. at pp. 23, 24.]

Plaintiff admits that Wright asked him to provide his cell phone records. [Deposition of Christopher Monroe taken on Oct. 11, 2017 ("P Depo 2"), p. 156:20-21.] He admits that Wright told him to upgrade his account from prepaid to monthly so that he would be able to get the cell phone records; and that Wright told him that Geico would pay for the cost of the upgrade. [P Depo 2, pp. 155: 20-21; 156: 4, 17-20.] However, although he intended to follow Wright's instructions to upgrade his service plan so he could get his records, plaintiff never asked his cell phone provider to upgrade his plan. His excuse was that it would cost him money and he didn't think it would work:

> A.· . . . . Because I was gonna upgrade, but it was already ten.· And if I would have upgraded it, this was the 10/14 date, it would have cancelled out the whole month I had already paid for. You know what I'm saying?· Because Larry was saying if you upgrade your plan, we'll pay for it or whatever.
>
> Q.· Okay.· So he asked you -- you're saying he asked you to upgrade your account, but it was gonna cost money or something?· Is that what you're saying?
>
> A.· ·Yeah.· . . . . He wanted me to upgrade my plan.· . . . . But it didn't make sense to do it, because I had already paid for a month, I would lose that money, and what it was gonna accomplish wouldn't have helped anyways.
>
> Q.· ·Why wouldn't it have helped?
>
> A.· ·Because he wanted records from whatever date to the 1st, like it's

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

asking here.· And when I called, it was after the 1st.· And if I upgraded then, it wouldn't have produced records they never ever had.
. . . .
Q. . . . . It sounds like there was -- Larry had asked you or requested you to upgrade, so that way you could get your text and cell phone records.· Is that true?

A.· Yeah.· He requested my cell phone records. The same time period, he requested my bank statements.

Q.· Right.· Okay.· And so then he had told you, essentially, to look into doing this or to upgrade. And it sounds like your testimony is that it didn't make sense to do that because if you did upgrade it, you still wouldn't have had access to the records he wanted. Is that correct?

A.· Exactly.·
[P Depo 2, pp. 155: 16 – 157: 4.]

Plaintiff never told Wright that he thought it didn't make sense or it wouldn't work. He felt that Wright acted like he knew everything about cell phone companies, "so I told him to get 'em if he knows how to get 'em." [P Depo 2, p. 157: 12-20.]

Cell phone records frequently lead to information that either validates or invalidates a claim. [Wright Dec., ¶ 12.] Plaintiff's failure to provide the requested cell phone records impeded Geico's ability to cross-check the accuracy of plaintiff's recorded statement. [Wright Dec., ¶¶ 12, 18.] In fact, plaintiff did make false statements that may have been discovered had Geico been provided with the requested cell phone records. For example, contrary to plaintiff's representation in his statement that he had been arrested only once, and only for possession of a small amount of drugs, not trafficking, and had never been on probation or parole (Exh. C to Wright Dec. at pp. 14, 15):

- at the time he gave his statement, plaintiff was a convicted felon with convictions for unemployment ***insurance fraud, theft,*** possession of a controlled substance, and use of a controlled substance.[1] [Exhs. S,T, U to Maleki Dec.]
- plaintiff had been arrested at least eight times [Exhs. O, Q, S, U to Maleki Dec.]
- plaintiff had a long history of felony drug arrests, beginning as early as 1999,

---

[1] The exact date of these some of these offenses is not known. They appear in a Santa Clara Police Department records check conducted no later than May 5, 2014 (Exh. U to Maleki Dec.). Plaintiff's statement was given on October 9, 2013.



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

including arrests for **possession for sale** of a controlled substance and **distribution** of a controlled substance [Exh. U to Maleki Dec.]

- plaintiff had been sentenced to one year on probation [Exh. T to Maleki Dec.].
- plaintiff had at least three prepaid or burner phones in August and September of 2013, none of which were the cell phone he revealed to Wright [Exh. AA to Muhlestein Dec.; Exh. C to Wright Dec. at p. 3]

In addition, had these facts, which demonstrated that plaintiff was not telling the truth about his criminal history and his cell phones, been discovered and the deception of his assertion that he revealed his one drug arrest " 'cause I'm honest," been revealed, it would have led to more and closer scrutiny of plaintiff's account of the theft of his vehicle. [See, Exh. C to Wright Dec. at pp. 15, 16.]

However, even had there been **no** misrepresentations in plaintiff's statement, Geico was prevented from completing its investigation so as to be in a position to make a decision on his claim because plaintiff refused to follow instructions about how to obtain his cell phone records that were reasonably deemed by Geico to be important to its investigation. Accordingly, Geico asserted its contractual right to deny plaintiff's claim for failure to assist and cooperate in its legitimate investigation of his claim and in securing evidence.

Plaintiff's alleged claims for breach of contract, unfair business practices under California Business & Professions Code section 17200 et seq., fraud, and declaratory relief, are all based on the allegedly wrongful denial of this claim, and must fail. There is absolutely no evidence of fraud on the part of Geico. Plaintiff cannot establish that from the time he purchased his policy, Geico intended not to pay any legitimate auto theft claim he might make or that it suppressed the truth of a plan to deny his claim if he did not provide his cell phone records. Nor can plaintiff establish that Geico breached the policy when it asserted its contractual right to deny plaintiff's claim on grounds that he failed to comply with the cooperation and assistance condition in the policy. The declaratory relief claim is duplicative of the breach of contract claim and should be dismissed. Plaintiff cannot establish that

Geico's conduct in denying his claim was unlawful, unfair, or fraudulent under Business and Professions Code section 17200 et seq. Finally, plaintiff is not entitled to injunctive relief because he is no longer insured by Geico and has no interest in its claims handling policies.

## II. STATEMENT OF FACTS

### THE COOPERATION AND ASSISTANCE CONDITION IN THE POLICY

The cooperation and assistance condition set forth in plaintiff's California Family Automobile Policy Contract, Section III – Physical Damages Coverages – **Condition 3** states:

> 3. ASSISTANCE AND COOPERATION OF THE INSURED
>
> The insured will cooperate and assist us, if requested:
> (a) In the investigation of the loss;
> . . . .
> (f) In securing and giving evidence;
> [Exh. BB to Muhlestein Dec.; Grothen Dec., ¶ 5.]

### GEICO'S CLAIMS INVESTIGATION PRACTICES

No company policy mandates circumstances under which a claim must be sent to SIU. That determination is made by the claims examiner to whom the claim is assigned, based on his or her judgment, experience, and training. [Quinto Dec., ¶¶ 2, 4; Exh. A to Grothen Dec.] Geico's claims examiners are trained that thorough investigation is particularly appropriate in cases involving coverage issues, complicated factual situations, suspicious circumstances, and questionable liability or injuries. [Quinto Dec., ¶ 3; Exh. A to Grothen Dec.]

There is no required investigation protocol. No policy specifies the documentation to be requested and SIU investigators are not required to request cell phone records. Rather, they are trained that one fact developed often leads to the need to develop another fact. A decision to request particular documentation, including cell phone records, is made by the individual investigator, depending upon the specific facts of the claim. [Quinto Dec., ¶¶ 5, 6; Wright Dec., ¶ 12; Exh. A to Grothen Dec.]

SIU investigators conduct investigations and issue reports. They make no recommendations regarding the validity of claims. [Wright Dec., ¶ 19.] When the investigation is completed, the claims examiner and a Regional Liability Administrator ("RLA") discuss the claim. No claim can be denied without authority from an RLA.

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

[Grothen Dec., ¶ 11.]

## SUSPICIOUS CIRCUMSTANCES OF PLAINTIFF'S CLAIM

### Insurance On Plaintiff's Vehicles Had Been Lapsed For Over A Month When He Purchased Insurance the Day Before He Reported His Car Stolen.

At the time he applied for insurance from Geico, plaintiff owned three vehicles, a Dodge Neon, a Honda motorcycle, and a Lexus GS 300. [Deposition of Christopher Monroe, taken on Nov. 11, 2015 ("P Depo 1"), pp. 14: 9-10; 19: 12-22.] His insurance with Farmers Insurance on all three vehicles had been lapsed for more than a month when he applied for the minimum length policy, for the most expensive of the cars, the Lexus, only. [P Depo 1, pp. 14: 16-19; 17: 19 – 18: 5; 19: 23-25; 20: 3-13, 18 – 21: 2, 4-9.] In his recorded statement plaintiff referred to purchasing an "emergency policy." [Exh. C to Wright Dec. at pp. 8, 9.]

Plaintiff searched for the "best deal." He went to an on-line website that provided quotes from multiple insurance companies. He selected Geico because it was the cheapest. He did not renew with Farmers because he was trying to save money and Farmers was more expensive. [Exh. C to Wright Dec. at p. 19; P Depo 1, pp. 18: 16-22; 23: 4-16; P Depo 2, p. 78: 17-21.] Plaintiff had his friend pay for the insurance on his friend's credit card, although plaintiff had a credit card, a debit card, and a bank card at the time. [P Depo 2, pp. 85: 6-14, 19-23; 86: 17-19, 24 - 87: 2, 9-15, 23 – 88: 12.]

### Plaintiff Made A Claim For The Total Loss Of His Vehicle Within 24 Hours of Purchasing Insurance

Within 24 hours of purchasing the shortest period insurance available on the most expensive of his cars on September 25, 2013, plaintiff reported a total loss of the vehicle on September 26, 2013. [Quinto Dec., ¶¶ 7, 8; Exh. F to Quinto Dec.; Exhs. B, C to Wright Dec., pp. 5, 12, 18; P Depo 2, pp. 17: 19 – 18: 2; 30: 25 – 31: 22; 78: 6-10; 96: 9-13.] Reporting a loss within 24 hours of the purchase of insurance is a recognized red flag in the auto insurance industry. [Quinto Dec., ¶ 10.] Plaintiff reported the theft of his vehicle to Geico on September 26, 2013. [Quinto Dec., ¶ 8.]

### Plaintiff Parked His Car on the Street a Block or Two Over From His Home

After applying for insurance on the morning of September 25, 2013, plaintiff moved



MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

his car from his driveway and parked it on the street one or two streets over from his home and left town for the rest of the day. [Exh. C to Wright Dec., pp. 5, 8, 13, 18-20; P Depo 1, pp. 14: 16-19, 24 – 15: 3; 42: 17 – 44: 5; 45: 18-24.]

**Although Plaintiff's Home Was Burglarized and Keys to His Car Were Stolen, He Did Not Check on His Car**

When plaintiff and a friend returned that evening, they did not drive past the location where plaintiff's car was parked. When he arrived at home plaintiff discovered that his house had been burglarized. Among the stolen items was a spare key to the Lexus which was inside a locked portable safe. The key had a fob with a panic button. The house had not been ransacked. [Exh. C to Wright Dec., pp. 5-7; P Depo 2, pp. 56: 14-15, 20-25; 57: 18-23; 73:11-17.] Plaintiff gave police the name of a possible suspect. [P Depo 1, pp. 57: 16 – 58: 1; 61: 4-6; 63: 18-21.]

Although the burglary occurred prior to 11:00 p.m. and a key to the Lexus with a panic button was taken, plaintiff went to bed and did not check to see if his car had been stolen. [P Depo 1, p. 64: 3-16; Exh. C to Wright Dec., pp. 5, 12.] The next morning, September 26th, the first full day of coverage under the new policy, plaintiff checked on his car and discovered that it was gone. The car was never recovered. [P Depo 1, pp. 69: 2-6; 70: 2-13; 72: 3-6; Exh. C to Wright Dec., pp. 21, 22.]

**Plaintiff's Precarious Financial Condition**

Plaintiff admitted in his recorded statement that he was having serious financial problems at the time he purchased the Geico policy. He was unemployed. He moved back in with his parents within two weeks; his car payment had been in arrears for two months before his mother paid it for him; and his mother was also making his credit card payments. [Exh. C to Wright Dec., p. 25; P Depo 1, p. 27: 20-23; P Depo 2, p. 176: 9-14 .] He told Wright that his cell phone had been turned off because he didn't have the money to pay for it, and he was using a borrowed phone. [Exh. C to Wright Dec., p. 3.] Plaintiff's bank records, which were ultimately obtained from plaintiff, confirmed that when he purchased the insurance in late September, he was financially distressed. [Wright Dec., ¶ 23; Quinto Dec., ¶ 19.]

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

## GEICO'S INVESTIGATION OF PLAINTIFF'S CLAIM

On September 27, 2013, the day after plaintiff reported the theft of his vehicle, Geico claims examiner John Quinto sent him a letter enclosing a Theft Questionnaire, which is required by the Department of Insurance for every theft claim, to be completed, notarized, and returned and informing him that a recorded statement from the last driver of the vehicle would be needed. [Quinto Dec., ¶¶ 8, 9; P Depo 2, pp. 97: 21 – 98: 1, 6-8; 122: 23 – 123: 1, 24, - 124: 3.] On September 30, 2013, Quinto referred the claim to SIU because the fact that a total theft loss was reported within 24 hours of the policy's inception raised a red flag that the claim might be fraudulent. [Quinto Dec., ¶ 10; Wright Dec., ¶ 6; Exh. B to Wright Dec.]

### The SIU Investigation

Investigator Wright was assigned to handle the SIU investigation. [Wright Dec., ¶ 6.] He took plaintiff's recorded statement on October 9, 2013. [Wright Dec., ¶¶ 8, 9, 10; Exh. C to Wright Dec.; P Depo 2, p. 103: 15-17.] At the beginning of the recorded statement, Wright told plaintiff that he would request documentation to verify the facts plaintiff provided in the statement. [Exh. C to Wright Dec., pp. 1-2.] In his statement plaintiff provided the following information: his cellphone provider was Sprint; he used his parents' address on the insurance application, but he actually lives at a different location; he had the burglary police report; he could provide the telephone number of the woman who gave him the name of the potential suspect; he does not think he called her or anyone else on the day he purchased the insurance, his activities on the day of the theft and the next day, including what time he left and returned from his trip and what he and his friend did along the way; he had receipts to support his activities on that day; he used his cell phone to report the theft to the police and what time he reported the theft; he would have to look in his cell phone to know whether he received or made phone calls on dates immediately preceding the theft (at which point Wright stated that he would be requesting a copy of plaintiff's cell phone records and text messages); what time he went to bed the night before the burglary; whether he had any visitors or received any phone calls during the night before the burglary; what time he found the car missing; and he called the tow yard when he discovered the car was missing and then called the police.

Wright assured plaintiff that the requested cell phone records could be obtained, even for a prepaid account, and that Wright would tell him how to do it when they finished the statement. [Wright Dec., ¶ 10; Exhs. A, B to Wright Dec., pp. 3, 16, 17.] Near the end of the recorded statement Wright told plaintiff that he would need to upgrade his cell phone service from prepaid to monthly to obtain the records and that if he cost posed a problem, he could ask the examiner who often authorizes payment of the cost to upgrade an account. [Exh. C to Wright Dec., pp. 23, 24; P Depo 2, pp. 157: 25 – 158: 7.]

At the end of the recorded statement, Wright gave plaintiff a written list of the documentation he was to provide. The list included Sprint cell phone records from Sept. 1 through Oct. 1, 2013, contact information and telephone numbers for various witnesses, and bank records. [Wright Dec., ¶ 13; Exh. C to Wright Dec., pp. 24-26; P Depo 2, pp. 103: 15-17, 24 - 104: 11; 106: 7-25; 170: 20 – 171: 4.] Wright gave plaintiff his contact information to facilitate submission of the documentation. [Exh. C to Wright Dec., pp. 25-26.]

Plaintiff admits that Wright asked him for his cell phone records and asked him to upgrade his plan so he could get his records. He admits that "Larry was saying if you upgrade your plan, we'll pay for it or whatever." [P Depo 2, pp. 155: 20-21, 25 – 156: 4, 17-20.] On October 14, 2013, plaintiff went to T-Mobile (not Sprint) to upgrade his account pursuant to Wright's instruction, because Larry "wanted me to upgrade my plan," but he did not upgrade the plan because, "[I]t didn't make sense to do it, because I had already paid for a month, I would lose that money and what it was gonna accomplish wouldn't have helped anyways." [P Depo 2, pp. 156: 5-13, 24 - 157: 4.] Plaintiff never asked Quinto to pay for the cost of upgrading his cell phone account to monthly. [Quinto Dec., ¶ 21; Exh. K to Quinto Dec.; P Depo 2, p. 158: 15-16.] He never told Wright that upgrading wouldn't work or that it didn't make sense. [P Depo 2, pp. 157: 12-16.]

Wright followed up with plaintiff regarding the requested information on October 16, and again on October 18, 2013 and provided plaintiff with his fax number to facilitate submission. [Wright Dec., ¶ 14; Exh. A to Wright Dec.] On October 28, 2013, Geico received from plaintiff and a copy of his bank records that was too light to read a handwritten

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

note about cell phone records. Wright left plaintiff a message that the bank records would need to be resent. The handwritten note referenced "10/14/13 4:30 p.m." and "Liz," possibly a customer service representative, and stated, "no records for prepaid customers was going to upgrade plan but wouldn't cover dates 9/1/13 – 10/1/ 13 I was going to upgrade to monthly but it would of canceled out my month I just paid for." [Wright Dec., ¶ 16; Exhs. B, D to Wright Dec.] Plaintiff described the note as "just notes to myself." He does not know who Liz is and he does not know if "no records for prepaid customers" was something Liz told him. [P Depo 2, pp. 153: 2-8, 12-21; 154: 13 – 155: 2, 7-8.]

On October 30, 2013, Wright spoke to plaintiff's friend and noted in the file that he generally corroborated plaintiff's story. Wright also confirmed the dates of the burglary and automobile theft reports with the San Jose Police Department. [Wright Dec., ¶ 16; Exh. A to Wright Dec.] Wright noted in the file that plaintiff had not provided a readable copy of bank records, that the handwritten noted indicated that he was unable to obtain his cell phone records, that the police report was not available to read, and that plaintiff had not submitted the notarized Theft Questionnaire. Wright wrote that "[t]he lack of documentation is problematic from a standpoint of verification." He prepared a closing report with the results of his investigation and closed the SIU file. He made no recommendation with respect to whether or not the claim should be paid. [Wright Dec., ¶ 18; Exh. B to Wright Dec.]

On November 6, 2013, Geico sent plaintiff a letter advising him that it needed more time on his claim to secure the notarized theft questionnaire, legible bank records, police report, and cell phone records, all of which, with the exception of the police report (which plaintiff had represented to Wright he had a copy of), plaintiff had been requested to provide. [Quinto Dec., ¶ 12; Exh. G to Quinto Dec.; P Depo 2, p. 111: 7-12; 125: 2-12.] The following week Geico sent plaintiff a letter stating, "your **assistance and cooperation are necessary** in the investigation of this loss," and referring plaintiff to the cooperation and assistance condition of the policy, which was set forth in the letter. He was advised that a "necessary part of this investigation is that you provide us a completed theft questionnaire form, a copy of the police report to confirm the vehicle was stolen, your bank and cellular phone record."

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

[Quinto Dec., ¶ 13; Exh. H to Quinto Dec. (emphasis in original).] On November 27, 2013 Geico sent another letter advising plaintiff that it needed additional time on his claim to secure the documentation and conduct a field investigation. [Quinto Dec., ¶ 14; Exh. I to Quinto Dec.; P Depo 2, pp. 112: 16-20; 127: 1-16; 131: 16-25.] Geico did not receive any documentation in response to these letters.

**First Denial of Plaintiff's Claim**

After reviewing Wright's SIU closing report and consulting with claims examiner Quinto, RLA Grothen authorized denial of plaintiff's claim for failure to cooperate. Accordingly, on **December 10, 2013** Geico denied plaintiff's claim, citing and quoting the assistance and cooperation condition of the automobile policy. Despite Geico's persistent efforts to obtain them, after two and one-half months, plaintiff had not provided the requested cell phone and text records, notarized vehicle theft questionnaire (which is legally required to pay a claim), and legible bank records. [Quinto Dec., ¶¶ 15,16; Exh. J to Quinto Dec.] Plaintiff admits that he did not provide cell phone records and admits receiving written notice that this claim was denied because he had not provided cell phone records. [P Depo 2, pp. 126: 17-19; 134: 6-9, 12-18; 135: 14-21: 136: 17-20.]

On January 4, 2014, Geico obtained reports from the San Jose Police Department and California Highway Patrol regarding the stolen Lexus. The reports confirmed that plaintiff's car was not parked in front of his home, a key to the Lexus had been stolen during a break-in at his home the evening prior to the reported theft, and plaintiff "did not remember to check the status of his vehicle" after the break-in. [Quinto Dec., ¶ 17; Wright Dec., ¶ 17.]

Approximately three months after his claim was denied, on or about February 26, 2014, plaintiff provided the notarized theft questionnaire, a police report, legible bank records and the handwritten note about cell phone records directly to Quinto. He did not provide the requested cell phone records. [Quinto Dec., ¶ 18; Exh. Z to Muhlestein Dec.] On March 24, 2014 Quinto asked Wright to reopen the SIU file on plaintiff's claim. When plaintiff called Wright in response to a voicemail message to call him to discuss the additional information needed to verify his claim, Wright advised plaintiff that he had not received requested

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

documentation (except illegible bank records and the handwritten note).[2] [Wright Dec., ¶¶ 21, 22; Exh. B to Wright Dec.; Quinto Dec., ¶ 18.] Wright reminded plaintiff about their prior discussion regarding the perishable nature of the cell phone records. When plaintiff said that he had spoken to a representative of his phone carrier who told him that records were not available to prepaid customers, Wright reminded him that he had warned him not to accept that response and informed him, again, that he needed to establish a monthly account and if there was a cost associated with the change, he could discuss the cost with Quinto. Wright told plaintiff, again, that issues surrounding the theft shortly after inception of the policy and a policy decision could likely hinge on the information contained in his phone records. Plaintiff became argumentative and stated that he would have lost the money he had already paid for the phone service that month. Wright responded that he would relay to the claims examiner that the cell phone records were no longer available. [Wright Dec., ¶¶ 21, 22; Exh. B to Wright Dec.; P Depo 2, p. 157: 12-20.]

On March 31, 2014, plaintiff faxed Wright legible bank records, the first page of a police report, his handwritten note about cell phone records (which had already been received), and the notarized Theft Questionnaire (which had already been received). No cell phone records were provided. [Wright Dec., ¶ 23; Quinto Dec., ¶ 19; Exh. E to Wright Dec.] Wright communicated to Quinto that the bank records reflected that plaintiff was under economic stress at the time of the theft and that plaintiff's failure to provide phone records had prejudiced Geico's ability to conduct a thorough claims investigation, and closed the SIU file again. [Wright Dec., ¶ 21; Exh. E to Wright Dec.; Quinto Dec., ¶ 19.]

## Second Denial of Plaintiff's Claim

Quinto met with RLA Grothen again to review the new information plaintiff provided

---

[2] Any confusion over plaintiff's claim to have mailed a set of documents (not including cell phone records) that was not received or lost and to have faxed a second set of documents [P Depo 2, pp. 113: 7-11, 18-20; 118: 12-24], is not relevant because sometime in 2014, after he sent the second set of documents, Wright told him that Geico still needed cell phone records and that he never provided cell phone records. [P Depo 2, pp. 113: 18 – 114: 5; 143: 24 – 144: 14, 24 – 145: 11.]



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

after the claim was denied. They determined to stand on the denial because cell phone records had not been provided and were now not available. [Quinto Dec., ¶ 20; Grothen Dec., ¶ 14.] On **April 10, 2014**, Geico sent plaintiff second denial letter which reviewed the December 10, 2013 denial, recited the documentation that plaintiff had provided since then, and summarized conversations with plaintiff regarding the importance to Geico's investigation of the cell phone records and their perishable nature. Geico concluded that since cell phone records previously requested, were no longer available, the coverage denial for failure to cooperate and assist would stand. [Quinto Dec., ¶ 21; Exh. K to Quinto Dec.; P Depo 2, pp. 162: 2-3; 164: 2-7.]

On May 6, 2014 Geico sent plaintiff a letter in response to his complaint to the Department of Insurance. The letter reiterating Geico's efforts to obtain his cell phone records and plaintiff's recent representation to Geico that due to the length of time that had elapsed, the cell phone records were no longer available from the cell phone service provider, which had impeded Geico's ability to complete its investigation. Geico advised plaintiff that if the records had **never** been available from the cell phone service provider, Geico needed a letter from the cell phone company to confirm that fact. [Quinto Dec., ¶ 22; Exh. L to Quinto Dec.]

**Third Denial of Plaintiff's Claim**

On May 14, 2014, nearly seven months after cell phone records were first requested on October 9, 2013, plaintiff sent Geico a fax with a letter from a Mr. Truong of T-Mobile stating that T-Mobile does not hold phone records for prepaid accounts. Plaintiff offered no evidence that he had timely requested that Sprint (or T-Mobile) upgrade his account to monthly and no explanation of why the letter was from T-Mobile, when he had represented that his cell phone provider was Sprint. After consultation between RLA Grothen and Quinto, by letter dated May 29, 2014, Geico advised plaintiff that it would stand by its decision to deny coverage, inasmuch as it was "unable to complete [its] coverage investigation since cellular phone records are no longer available." [Quinto Dec., ¶¶ 23, 24; Exhs. M, N to Quinto Dec.]

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

## III. LEGAL ARGUMENT

### A. There is No Evidence to Support Plaintiff's Claims.

The party moving for summary judgment need not produce evidence negating or disproving every essential element of the non-moving party's case where the non-moving party has the burden at trial. Fed. R. Civ. P. 56(e) ; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. *Id.* If the moving party carries its burden of production, the burden shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e) ; *Celotex*, 477 U.S. at 324. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B. Geico Is Entitled To Judgment On Plaintiff's Claim For Fraud.

In support of his fraud claim, plaintiff alleges that Gieco never intended to pay his legitimate auto theft claim, although it promised to do so under its policy, and that Geico suppressed the truth of its plan to deny claims based on the pretense of an insured's cell phone records being unavailable. He alleges that he reasonably relied on his belief that all material facts about Geico's business practices had been disclosed to him and based on that reliance, paid premiums to Geico instead of other insurance carriers.

In response to a special interrogatory calling for all facts that support plaintiff fraud claim, he stated that Geico suppressed the truth of its plan to deny his claim based on the pretense of his cell phone records being unavailable; and that he reasonably relied on his belief that all material facts about Geico's business practices had been disclosed to him and upon that reliance paid Geico premiums. [Exh. Y to Muhlestein Dec., no. 22.]

The elements of promissory fraud are: (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise. *Id.* at 1453. Fraudulent inducement to enter into a contract turns upon the party's state of mind at the time the contract was entered into. *Duffens v. Valenti*, 161 Cal.App.4th 434, 450 (2008) . The elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage. *Behnke v. State Farm General Ins. Co.*, 196 Cal.App.4th 1443, 1452-1453 (2011) .

**1. There is No Evidence that at the Time Plaintiff Purchased His Policy, Geico Intended Not to Pay Valid Claims Or Suppressed a Plan Not to Pay Valid Claims.**

Plaintiff cannot prevail on a claim for either variety of fraud because he cannot establish that at the time he purchased his policy, Geico intended not to pay a valid claim, should he make one, or suppressed such a plan. In response to an interrogatory calling for all facts that support his claim that Geico did not intend to pay his claim, plaintiff answered, "GEICO continued to refuse to pay the Plaintiff's claim even after Plaintiff had cooperated with GEICO's investigation of Plaintiff's claim and it had reasonably available information necessary to process the claim." [Exh. Y to Muhlestein Dec., no. 26.] The cited facts manifestly do not address Geico's intent at the time plaintiff purchased his policy.

In order to establish the Geico had an intent not to pay a valid claim at the time he purchased the insurance, plaintiff would have to show that Geico had a policy of not paying valid claims or denying claims, valid or not, when cell phone records are requested and not provided or some specific intent not to pay aimed specifically at plaintiff The evidence establishes that Geico has no such policy. Geico pays approximately 2/3 of all California auto theft claims made. It has no policy requiring SIU investigation of all total theft cases or requiring that cell phone records be requested in all total theft cases [Grothen Dec., ¶ 9; Wright Dec., ¶¶ 3, 4; Quinto Dec., ¶¶ 2, 5] and

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

has no policy requiring denial of claims when cell phone records are requested and not provided. [Grothen Dec., ¶ 7; Quinto Dec., ¶ 6.]

Furthermore, the evidence establishes that there were valid grounds for requesting an SIU investigation in this case, including the fact that plaintiff made a total loss theft claim within 24 hours of obtaining the shortest term insurance on the most expensive of his cars, after being uninsured for a month, his acknowledged financial difficulties, and the suspicious circumstances of having parked the vehicle away from his home and failing to check on it after the theft of a key to the car.

The evidence also establishes that there were valid grounds for requesting plaintiff's cell phone records. Details of his activities prior to the theft provided in his recorded statement could likely be either confirmed or refuted by comparing them against his cell phone records. Furthermore, plaintiff stated that in order to answer questions about whether and from whom he received phone calls during the days prior to the theft he would have to look at his cell phone. Wright does not request cell phone records in every case, although cell phone records frequently lead to information that bears on or resolved the question of whether a claim is valid or fraudulent. However, in this case he felt that cell phone records were critical to the investigation. [Wright Dec., ¶ 12.]

Nor is there proof that Geico has a policy requiring denial of claims when cell phone records are not provided. The decision to deny a claim for failure to cooperate is made by an RLA in consultation with the claims examiner depending on the unique facts that rendered the claim suspicious, the aspects of the case that could likely be confirmed or refuted through cell phone records, the history of the claim investigation, and the effect of the absence of cell phone records on Geico's ability to conduct a thorough investigation. A claim may not be denied without authorization by an RLA. Both the claims examiner and the RLA testify that their claims decisions were based on exercise of their discretion based on the facts of the case and were not dictated by company policy. [Grothen Dec., ¶¶ 7, 11, 14, 16; Quinto Dec., ¶¶ 6, 15, 23, 25, 26.]

In addition, the evidence establishes that Geico attempted to assist plaintiff in

obtaining his cell phone records. He was advised that although the cell phone company might respond that cell phone records are not available for pre-paid accounts, if he would upgrade his account from pre-paid to monthly, his records could be obtained. He was warned that the records were perishable and would not be available if too much time passed before he opened a monthly account. Wright volunteered information that Geico often pays charges for upgrading accounts and invited him to discuss costs with the claims examiner. Geico sent plaintiff multiple reminders of his contractual obligation to cooperate and assist and asked multiple times that he provide his cell phone records. Despite these efforts by Geico, plaintiff never asked the claims examiner to pay for an upgrade and did not attempt to upgrade his account because it didn't make sense and he would lose the money he had paid for the month. As a result, his cell phone records became unavailable and Geico could not complete its investigation. Geico made the decision to deny plaintiff's claim for failure to cooperate after plaintiff purchased the policy, made a claim, and the claim was investigated. There is no evidence that it pre-determined to deny valid claims at all, or if cell phones were requested and not provided.

Nor is there any evidence that Geico intended in advance not to pay any valid claim plaintiff personally might make. Plaintiff applied for his policy over the Internet and spoke only briefly with a Geico representative who merely confirmed some information and accepted payment. [P Depo 1, pp. 14: 16-19; 16: 6-23.] There is no evidence that at the time plaintiff purchased his policy, Geico intended not to pay any valid claim he might make under the policy.

**2. There Is No Evidence That Plaintiff Reasonably Relied On His Belief That All Material Facts About Geico's Business Practices Had Been Disclosed To Him.**

Fraud requires a misrepresentation in the form of a false representation, concealment, or nondisclosure of a material fact the defendant has an obligation to disclose. *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1452-1453. Plaintiff's "belief that all of Geico's claim handling practices had been disclosed to him" is insufficient unless it was falsely represented to him that such a disclosure had been



MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

made or Geico had a legal obligation to disclose every detail of its claim handling practices to potential customers, which it does not. There is no evidence either that Geico represented to plaintiff that it had disclosed all of its claim handling practices to him or that he purchased his Geico policy in reasonable reliance on any such a representation.

Rather, the evidence establishes that plaintiff's concern in selecting insurance was price, not the insurer's claims handling practices. Plaintiff applied for his policy on line. He spoke for five or six minutes with a Geico representative who confirmed information in his application and took payment for the policy. He denies having any other discussion with the Geico representative. [P Depo 1, p. 16: 6-23.] Geico's claims handling procedures are not available to the public on-line and are not provided to potential insureds in advertising or in any other materials distributed to the public. [Grothen Dec., ¶ 17.] He cannot establish that Geico's claims handling procedures were disclosed to him before he purchased his policy.

In addition, he admits that he searched on line for a month trying to find the best deal. He chose Geico because it was the cheapest. He did not renew with his former insurer because he was trying to save money and it was more expensive. [Exh. C to Wright Dec. at p. 19; P Depo 1, pp. 18: 16-22; 23: 4-16.] Geico made no representation that all its claims handling procedures had been disclosed to plaintiff and he did not rely on any such representation. Moreover, his reliance on such a representation would not have been reasonable. The details of every type of documentation or information that might be required and the consequences of failing to provide each such document or item of information would drown consumers in information that in most cases would be wholly irrelevant to them. For example, an extremely vast majority of California policy holders will never be concerned with Geico's policies regarding cell phone records. [See, Grothen Dec., ¶ 6.] There is no evidence that Geico defrauded plaintiff or that he relied on or reasonably relied on any misrepresentation by Geico.

### C. Geico Is Entitled To Judgment On Plaintiff's Breach of Contract Claim Because He Did Not Meet His Obligations Under the Policy.

In support of his claim for breach of contract, plaintiff alleges: He had an

automobile insurance policy with Geico. [FAC ¶ 10.] He and Geico agreed that in exchange for premium payments, Geico would pay insurance benefits in the event of a loss "in accordance with the terms of the Policy." [FAC ¶ 21.] He fully performed his obligations under the policy. [FAC ¶ 22.] Geico failed to perform and materially breached the policy by denying benefits due under the policy. [FAC ¶¶ 17, 24.]

In response to an interrogatory calling for all facts that support plaintiff's breach of contract claim, plaintiff responded that the covered car was stolen and a claim submitted, plaintiff cooperated fully in investigation of the claim, the claim was wrongfully denied due to plaintiff's inability to produce cell phone records, which plaintiff communicated to Geico were not maintained by his cell phone carrier, and Geico had no justifiable reason for denying his claim. [Exh. Y to Muhlestein Dec., no. 20.]

Plaintiff's policy expressly set forth a number of "conditions" for coverage, including a requirement that the insured "cooperate and assist, if requested . . . in the investigation of the loss . . . [and] [i]n securing . . . giving evidence." In *Hickman v. London Assur. Corp.*, (1920) 184 Cal. 524 (1920) the Supreme Court declared: "[I]t is necessary that [the insurer] have some means of cross-examining, as it were, upon the written statement and proofs of the insured, for the purpose of getting at the exact facts before paying the sum claimed of it." *Id.* at 529-530. "Such considerations justify the provision ... requiring the insured as often as demanded to submit to an examination under oath touching all matters material to the adjustment of the loss, ***and provisions of that character*** are held to be ***reasonable and valid***.' " *Id.* (emphasis added). The Court declared that even if the insurer was not acting in good faith, "the fact still remains that defendant was acting within the terms of an expressed stipulation found in the policy, which gave it the right to demand such an examination, and it is not for the insured to inquire into the motive actuating the company in exacting the examination, but on his part to comply therewith and to answer all material questions . . . .' " *Id.* at 530.

A California insurer's contractual obligation to pay policy proceeds does not arise until the insured complies with his obligations under the policy to submit reasonably requested



MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

information. *Globe Indem. Co. v. Superior Court*, 6 Cal.App.4th 725, 731 (1992) ; see also, *Othman v. Globe Indem. Co.*, 759 F.2d 1458, 1465 (9th Cir. 1985) ("An insurer may deny coverage on the basis of the insured's refusal to cooperate if it is substantially prejudiced.")

In *Gilbert v. Infinity Ins. Co.*, 186 F.Supp.3d 1075 (C.D. Cal. 2016) the court granted summary judgment on breach of contract claim in favor of an insurer who denied the insured's claim for failure to provide unredacted cell phone records under a policy requirement that the insured "cooperate with [the insurer] in any matter concerning a claim or suit." *Id.* at 1077, 1085. The court declared, "Provisions of an insurance policy that require an insured to cooperate and meet various conditions **are enforceable**, and the violation of such provisions by an insured may be grounds for denying a claim," citing *Chierfue Her v. State Farm Ins. Co.,* 92 F.Supp.3d 957, 971 (E.D. Cal. 2015) (collecting cases); and *Brizuela v. Calfarm Ins. Co.,* 116 Cal.App.4th 578, 589 (2004) (failure to comply with policy provisions requiring examination under oath and production of documents generally results in forfeiture of coverage, relieving the insurer of liability to pay and providing absolute defense to action on the policy). *Id.* at 1085. Summary judgment was also granted to defendant insurers who denied coverage for failure to cooperate by providing requested documents, including cell phone records in *Gatson v. Allstate Insurance Co.*, No. 4:08-CV-0749, 2008 U.S.Dist.LEXIS 107996, 2008 WL 5716525, at *3 (N.D. Ohio. July 31, 2008) (plaintiff failed to provide income tax returns, bank records, cellphone records, and estimates to support damage claim) and *Doerr v. Allstate Insurance Co.*, 21 Fed.Appx. 638, at 639-40 (6th Cir. 2005) (insured refused to provide cellphone records and financial statements).

The *Gilbert* court noted that California courts require a showing that the insurer was prejudiced in its investigation by the insured's failure to cooperate in order to void the policy, citing cases holding that an insured's proof of loss is subject to the substantial performance standard, and that "[I]f the deficiencies in an insured's submissions are substantial and 'a far cry from minor defects,' then there is no substantial performance." *Gilbert*, 186 F.Supp.3d at 1085-1086, citing *Abdelhamid v. Fire Ins. Exchange*, 182 Cal.App.4th 990, 999-1001 (2010).

The *Gilbert* court declared, "Without this information [unredacted cell phone records],

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

Defendant could not confirm that Plaintiff had not previously contacted a towing company or any repair shops, could not confirm which of Plaintiff's friends he had been in contact with that day, could not obtain accurate witness accounts, and could not verify that Plaintiff lost his cellphone before the loss. . . . This prevented Defendant from determining whether there was coverage for the loss." *Id.* at 1087. The Court found that the plaintiff failed to cooperate and that her failure prejudiced the insurer and granted summary judgment as to the breach of contract and the breach of the duty of good faith and fair dealing claims. *Id.* at 1086-1087.

Here, plaintiff's policy sets forth as a condition of coverage that he cooperate in the investigation of the claim and assist in securing evidence. Plaintiff concedes that he was requested to provide cell phone records and instructed how to obtain them. He also concedes that he did not follow the instructions given and never provided the requested cell phone records. Plaintiff's claim was denied a third and final time on May 29, 2014 some six months after cell phone records were first requested, for violation of plaintiff's contractual obligation to assist and cooperate for failure to provide cell phone records, which by that time had become unavailable. The decision to deny the claim was made by an RLA in consultation with the claims examiner and informed by the information provided in the SIU report, and was based on the prejudicial effect the lack of cell phone records had on Geico's ability to complete its investigation. Plaintiff's cell phone records were not available to Geico through other sources [Wright Dec., ¶ 5] and their absence impeded Geico's ability to investigate the circumstances of the theft of plaintiff's car, which raised a number of red flags as to the validity of plaintiff's claim. Without plaintiff's cell phone records, Geico could not cross-check the details of plaintiff's story, could not determine whether he made a call to determine whether his car had been towed before calling the police when he discovered his car was missing, as he represented, whether he had a connection to the individual he identified as a potential suspect in the theft, or whether he had called anyone or anyone had called him in the days leading up to the theft of the car (identified by the *Gilbert* court as a determination the insurer could not make without the plaintiff's cell phone records), and the identity of those potential

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

witnesses. [Wright Dec., ¶ 25.] Plaintiff's failure to provide cell phone records prejudiced Gecio's investigation of the suspicious circumstances of plaintiff's claim. [Wright Dec., ¶ 24.]

### D. The Court Should Decline to Exercise Discretionary Jurisdiction of Plaintiff's Claim For Declaratory Relief.

Plaintiff seeks a declaration from the Court that "the burden to prove a claim and the manner of proof required by Geico is unlawful and **in material breach of the policy** . . . ." [FAC ¶ 45.] Plaintiff's declaratory relief claim is duplicative of his breach of contract claim and is superfluous. Exercising jurisdiction under the Declaratory Judgment Act is discretionary, and federal courts have unique and substantial discretion in deciding whether to declare the rights of litigants. 28 U.S.C. § 2201 (2006) (the Court "may" declare the rights of any interested party); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). Declaratory relief is designed to resolve uncertainties or disputes that may result in future litigation. It operates prospectively and is not intended to redress past wrongs. *StreamCast Networks, Inc. v. IBIS LLC*, 2006 U.S. Dist. LEXIS 97607 (C.D. Cal. 2006), *9. "[W]here . . . determination of [a] breach of contract claim [will] resolve any question regarding interpretation of the contract, there is no need for declaratory relief," and dismissal of a companion declaratory relief claim is appropriate. *Id.* at *10-11, citing William Schwarzer, A. Wallace Tashima, James M. Wagstaffe, Federal Civil Procedure Before Trial, § 10:13.5 (The Rutter Group 2005) and various cases dismissing declaratory relief claims. Here, similarly, plaintiff's rights under the contract will be determined via his breach of contract claim. The declaratory relief claim is duplicative and unnecessary and should be dismissed.

### E. Geico Is Entitled To Judgment On Plaintiff's Claim For Unlawful, Unfair, or Fraudulent Business Practices.

Plaintiff's claim cannot prevail under any of the three prongs of California Business & Professions Code section 17200 et seq, authorizing actions for an "unlawful, unfair, or fraudulent business act or practice." The "unlawful" prong of the statute incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under statute. *Chabner v. United Omaha Life Ins. Co.*, 225

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

F.3d 1042, 1048 (9th Cir. 2000). A defendant cannot be liable under section 17200 for committing "unlawful" business practices without having violated another law.

Plaintiff alleges that the following conduct violated the string of statutes he recites. Geico: (1) failed to give its insured's rights at least as much consideration as its own interests; (2) denied his claim without a reasonable factual basis that it was not valid; (3) shifted the burden to him to prove that his claim was valid; (4) required that his claim be proved in a particular way although it is required to pay claims when it has enough information from another source to pay a valid claim; (5) failed to perform its contractual obligations in good faith; (6) erroneously asserted that its obligations are conditional and depend upon the insured's obligation under the insurance contract. [FAC ¶ 28.] Plaintiff also alleges that Geico mislead, misrepresented and omitted material facts regarding its duties and the duties of its insured. [FAC ¶ 34.] In response to a special interrogatory calling for all facts that support his 17200 claim, plaintiff adds that Geico gave no advance notice prior to the purchase of a policy or submission of a claim that providing cell phone records was a condition or requirement for claim processing. [Exh. Y to Muhlestein Dec., no. 21.]

Plaintiff cannot establish that by denying his claim for failure to provide cell phone records, Geico failed to give its insured's rights at least as much consideration as its own interests, inasmuch as a requirement that the insured cooperate by providing requested documents is an enforceable condition of insurance under the policy, as discussed above. Plaintiff cannot establish that Geico denied his claim without a reasonable factual basis that it was not valid because the claim was denied for failure to cooperate, not on ground that it was not valid. Plaintiff cannot establish that Geico shifted the burden to him to prove that his claim was valid or required him to prove it was valid in a particular way. Geico merely required that he comply with conditions of coverage, which included cooperating with its investigation and assisting in securing evidence that Geico could not secure on its own. Geico acknowledges that there must be evidence of fraud to deny the claim for fraud, even when fraud is suspected. Red flags

are an indication that fraud might be taking place, but a claim will not be denied on the basis of suspicion without evidence of actual fraud. [Grothen Depo 59: 11-14; 60: 20 – 61: 10.] Plaintiff cannot establish that Gecio failed to perform its contractual obligations in good faith. The evidence demonstrates that Gecio under took efforts to investigate his claim. Wright collected and evaluated documents from plaintiff and the police department. He contacted plaintiff's friend, with whom he claimed to have spent the day before the theft to confirm his story. He sought to determine the truth and noted his findings in the file regardless of whether they suggested a valid claim or fraud. [Wright Dec., ¶ 7.] He told plaintiff how to obtain his cell phone records and volunteered that Geico would likely pay the cost to upgrade his account. Geico requested cell phone records on multiple occasions and even reopened its investigation twice. There is no evidence that Geico's investigation was not conducted in good faith. Finally, plaintiff cannot establish that Geico erroneously asserted that its obligations are conditioned on the insured's obligation under the policy because it carried out its obligation to investigate plaintiff's claim and its obligation to pay plaintiff's claim is, in fact, conditioned on plaintiff's cooperation, as discussed above. Thus, Geico did not engage in the alleged conduct and has not violated the "unlawful" prong of section 17200.

Nor can plaintiff establish a claim under the "unfair" prong of the statute. For the reasons discussed above, plaintiff cannot establish that Geico engaged in the alleged conduct, regardless of whether it is characterized as unlawful or as unfair. Insurers owe a duty to investigate possibly fraudulent claims and cell phone records are an important tool in ascertain whether a claim is valid and should be paid or fraudulent and should not be paid and cannot be obtained by the insurers. [Grothen Dec., ¶¶ 2, 4.] Geico requested plaintiff's to verify the details of his statement and explained to him how he could obtain them; it followed up numerous times with him, and reopened its investigation twice to reconsider whether he had provided the documents necessary to its determination. Geico's procedures ensure that the SIU investigator is not involved in the decision to pay or deny a claim and that a claim will not be denied without authorization

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

by an experienced administrator who was not involved in gathering the information. [Grothen Dec., ¶ 11; Wright Dec., ¶ 19.] There was nothing unfair about Geico's investigation or its decision to deny plaintiff's claim for failure to cooperate.

To the extent that plaintiff's 17200 claim is predicated on the "fraudulent" prong of the statute, he cannot prevail under that prong either for the reasons cited above and discussed in connection with plaintiff's fraud claim.

### F. Plaintiff Is Not Entitled to Injunctive Relief.

Plaintiff seeks an injunction prohibiting Geico from "denying valid auto theft claims by placing the burden to prove the claim is not invalid on the insured." [Complt, Prayer, A.] A plaintiff seeking prospective injunctive relief must have a concrete injury and there must be "a sufficient likelihood that **he will again be wronged in a similar way**." *Bates, supra,* 511 F.3d at 985 (emphasis added). Plaintiff lacks standing to seek injunctive relief because he is no longer insured with Geico. [P Depo 2, pp. 32; 17-23; 33: 18-19.] There is therefore **no** likelihood of future injury and he has no interest Geico's future claims handling.

Furthermore, courts properly refuse to issue broad injunctions requiring continuing oversight. *See, Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies,* 970 F.2d 273, 277 (7th Cir. 1992); *Desert Healthcare Dist. v. Pacificare FHP, Inc.,* 94 Cal.App.4th 781, 796 (2001). An injunction barring Geico from "***wrongfully*** denying ***valid*** auto theft claims" would require continuing oversight of the merits of every denial of an auto theft claim, apparently forever. Plaintiff is not entitled to the injunctive relief he seeks.

## IV. CONCLUSION

Geico respectfully requests that this motion for summary judgment be granted.

DATED: November 17, 2017

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: [signature]
Richard Garcia
Attorneys for GEICO GENERAL INSURANCE COMPANY



MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW