*Counsel for Plaintiff:*
James M. Terrell (Appearance *Pro Hac Vice*)
Email: jterrell@mmlaw.net
P. Michael Yancey (Appearance *Pro Hac Vice*)
Email: myancey@mmlaw.net
Patrick C. Marshall (Appearance *Pro Hac Vice*)
Email: pmarshall@mmlaw.net
**McCallum, Methvin & Terrell, P.C.**
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199; Fax: (205) 939-0399

[additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

CHRISTOPHER T. MONROE,

Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

Defendant.

Case No. 5:14-CV-05174-HRL

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT GEICO GENERAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION OF ISSUES AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: January 25, 2018
Time: 9:00 a.m.
Court Room: 4

[Filed concurrently with Plaintiff's Notice of Cross Motion for Partial Summary Judgment; Plaintiff's Moving Separate Statement of Uncontroverted Facts; Appendix of Evidence; Plaintiff's [Proposed] Order; and Plaintiff's Response to Defendant's Separate Statement of Undisputed Facts]

**TABLE OF CONTENTS**


I. INTRODUCTION……………………………………………………………1

II. SUMMARY JUDGMENT STANDARD…………………………………3

III. STATEMENT OF FACTS…………………………………………………...4

IV. ARGUMENT IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM……………………………………………………………………10

A. Summary Judgment Should Be Granted in Plaintiff's Favor on His Breach of Contract Claim Because Plaintiff Fully Complied with all Provisions under the Policy and GEICO Breached the Contract By Denying Plaintiff's Claim Based Solely on His Failure to Produce Prepaid Cell Phone Records GEICO Knew He Could Not Produce……………………………………………………11

B. Summary Judgment Should Be Granted in Favor of Plaintiff's Breach of Contract Claim Because GEICO Breached the Implied Covenant of Good Faith and Fair Dealing by Denying Plaintiff's Claim in Bad Faith……………………………………………………………………16

V. PLAINTIFF'S ARGUMENT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION OF ISSUES AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT……………………………………………………………20

A. GEICO's Declarations and Plaintiff's Criminal Records Attached to GEICO's Motion for Summary Judgment Should Be Stricken Because the Declarations Contradict Sworn Testimony and the Criminal Records Are Irrelevant to GEICO's Denial of Plaintiff's Claim. ……………….…………………20

B. Summary Judgment Is Not Appropriate as to Plaintiff's Unlawful, Unfair and Fraudulent Business Practices Act (California Business & Professions Code Section 17200, *et seq.*) Because GEICO Has Failed to Satisfy Its Rule 56 Burden By Showing the Absence of any Material Fact. ……………………22

C. This Court Should Deny GEICO's Motion as to Plaintiff's Fraud Claim Because GEICO Has Failed to Satisfy Its Rule 56 Burden By Showing the Absence of Any Material Fact. ……………………………………………24

D. Summary Judgment Should Be Denied as to Plaintiff's Declaratory Relief Count Because Plaintiff's Declaratory Judgment Request Is Not Duplicative of the Breach of Contract Claim ……………………………………….24

E. Summary Judgment Should Not Be Granted as to Plaintiff's Injunctive Relief Claim...……………………………………………………………25

VI. CONCLUSION........................................................................25

# TABLE OF AUTHORITIES

**CASES** **Page(s)**


*Abdelhamid v. Fire Ins. Exchange*,
106 Cal. Rptr. 3d 26 (Cal. Ct. App. 2010) ....15

*Anderson v. Liberty Lobby*, Inc.,
477 U.S. 242 (1986) ....3, 4

*Bowman v. CMG*, No. C 07-03140 SI,
2008 WL 3200662 (N.D. Cal. Aug. 4, 2008) ....11

*Brizuela v. Calfarm Ins. Co.*,
10 Cal. Rptr. 3d 661 (Cal. Ct. App. 2004) ....15

*Buss v. Superior Court*
939 P.2d 766 (Cal. 1997) ....12

*Buxbaum v. Aetna Life & Casualty Co.*,
126 Cal. Rptr. 2d 682 (Cal. Ct. App. 2002) ....17

*Cabral v. Supple, LLC*, 2012 WL 4343867 (C.D. Cal. 2012) ....25

*Cecena v. Allstate Ins. Co.*,
2007 WL 13245 (N.D. Cal. Jan. 16, 2007) ....3, 4, 19, 20

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....3, 4, 20

*Chierfue Her v. State Farm Ins. Co.*,
92 F. Supp. 3d 957 (E.D. Cal. 2015) ....17, 18, 19

*Cleveland v. Groceryworks.com, LLC*,
200 F. Supp.3d 924 (N.D. Cal. 2016) ....21

*Egan v. Mutual of Omaha ins. Co.*,
620 P.2d 141 (Cal. 1979) ....20

*Gilbert v. Infinity Insurance Co.*,
186 F. Supp.3d 1075 (C.D. Cal. 2016) ....16

*Globe Indem. Co. v. Superior Court*,
8 Cal. Rptr. 2d 251 (Cal. Ct. App. 1992) ....14, 15

*Gray v. Zurick*,
419 P.2d 168 (Cal. 1966) ....25

*Henderson v. Gruma Corp.*, 2011 WL 1362188 (C.D. Cal. 2011) ....26

*Hickman v. London Assur. Corp.*,
195 P. 45 (Cal. 1920) ..........13

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir.1991) ..........21

*Koehler v. Litehouse, Inc.*, 2012 WL 6217635 (N.D. Cal. 2012) ..........25

*Letizia v. Facebook Inc*.,
2017 WL 3006950 (N.D. Cal. July 14, 2017)..........17

*Lilly v. Jamba Juice Co.*,
2015 WL 1248027, at *3 (N.D. Cal. 2015) ..........25

*Lunsford v. American Guarantee & Liability Insurance Co.*,
18 F.3d 653 (Cal. Ct. App. 1994) ..........19

*Makreas v. First Nat. Bank of N. Cal.*,
856 F. Supp. 2d 1097 (N.D. Cal. 2012) ..........22, 23

*Mariscal v. Old Republic Life Ins. Co.*
50 Cal. Rptr. 2d 224 (Cal. Ct. App. 1996) ..........12

*Mazzarella v. U.S. Postal Service*
849 F. Supp. 89 (D. Mass. 1994) ..........22

*McCormick v. Sentinel Life Ins. Co.*,
153 Cal. App. 3d 1030 (Cal. Ct. App. 1984) ..........18

*Miller v. Elite Ins. Co.*,
161 Cal. Rptr. 322 (Cal. Ct. App. 1980) .......... 24, 25

*Othman v. Globe Indem. Co.*
759 F.2d 1458 (Cal. 1985) ..........15

*Scottsdale Ins. Co. v. Moreno*,
133 F. App'x 415 (9th Cir. 2005) ..........21

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) .......... 24

*ViCHIP Corp. v. Lee*,
438 F. Supp.2d 1087 (N.D. Cal. 2006) ..........3

*Waller v. Truck Ins. Exchange, Inc.*,
900 P.2d 619 (Cal. 1995) ..........17

*Wilson v. 21st Century Ins. Co.*,
171 P.3d 1082 (Cal. 2007) ....................17, 19

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) ....................21

**STATUTES**

FED. R. CIV. P. 56 ....................1, 3, 4, 20

CAL. CIVIL CODE § 1572 ....................23

CAL. CIVIL CODE § 1573 ....................23

CAL. CIVIL CODE § 1700 ....................23

CAL. CIVIL CODE § 1709 ....................23

CAL. CIVIL CODE § 1711 ....................23

CAL. CIVIL CODE § 1670.5 ....................23

CAL. INS. CODE § 790.03 ....................23

**MEMORANDUM OF POINTS AND AUTHORITIES**

In accordance with FED. R. CIV. P. 56 and this Court's Standing Order, Plaintiff Christopher T. Monroe, by and through the undersigned counsel, respectfully submits this Memorandum of Points and Authorities in Support of his Cross Motion For Partial Summary Judgment and in Opposition To Defendant GEICO General Insurance Company's ("GEICO") Motion for Summary Judgment or in the Alternative for Summary Adjudication of Issues as to Plaintiff's First Amended Complaint.

## I. INTRODUCTION

GEICO had no valid reason to deny Plaintiff's claim for the theft of his vehicle. Four years after filing his claim, GEICO still cannot point to a valid reason to support its denial. GEICO should have paid Plaintiff's claim and its decision to deny coverage was in breach of the parties' contract and the implied duty of good faith and fair dealing. Plaintiff paid his premium, coverage was bound and Plaintiff cooperated in GEICO's investigation. Further, no material evidence supports GEICO's decision to deny Plaintiff's claim or any finding that Plaintiff's loss was not covered under his GEICO policy. Under these circumstances, California law and GEICO's own admissions require that GEICO pay Plaintiff's claim and all consequential damages that followed.

Rather than accept its responsibility to pay Plaintiff's claim, GEICO manufactured an excuse to defend its denial. GEICO contends that Plaintiff did not provide his prepaid cell phone records, and therefore 'failed to cooperate' in its investigation of the claim. This is the heart of Plaintiff's bad faith claim – that GEICO denied his claim without any valid reason. GEICO's denial was based solely Plaintiff's inability to provide his September 2013 prepaid cell phone records when GEICO was fully aware that these cell phone records could not be produced.

As demonstrated below, the undisputed facts prove that Plaintiff cooperated and did what GEICO asked of him – he tried to obtain his cell phone records on multiple occasions but could not do so because his provider, T-Mobile, did not maintain such records for its prepaid customers.

Plaintiff further cooperated by following GEICO's directions and asking T-Mobile about upgrading his plan in order to make the records available. However, T-Mobile informed him that upgrading his plan would not enable him to obtain his prepaid cell phone records. Plaintiff communicated these facts to GEICO on multiple occasions. GEICO also confirmed these facts to be true.

Rather than accept these facts, GEICO argues that it has a suspicion of fraud because Plaintiff purchased his vehicle insurance the day before his car was stolen and because Plaintiff has a criminal record.[1] However, GEICO cannot point to any evidence proving that Plaintiff's car was not stolen. Bear in mind, GEICO couldn't prove this point at the time that it chose to deny Plaintiff's claim, and it cannot prove this point after four years of litigation. In this lawsuit, GEICO deposed the Plaintiff twice, deposed the police officers who investigated the theft (and found nothing to implicate Plaintiff), deposed witnesses identified by Plaintiff, subpoenaed documents and records from numerous third parties, and obtained full and complete responses to written discovery requests. That GEICO has no valid reason to support its position is perhaps best illustrated by the fact that GEICO does not support its Motion for Summary Judgment with any evidence obtained through discovery. Instead, GEICO exclusively relies upon three self-serving declarations provided by its employees. Significantly, these employees had previously been deposed by Plaintiff and provided contradictory testimony.

To date, Plaintiff's vehicle has not been recovered and Plaintiff has not received any payment from GEICO for the loss of his automobile. GEICO's claim denial was based on an invalid reason, indeed one that was unsupported by evidence and manufactured by GEICO, and

---

[1] GEICO makes many additional unsubstantiated claims, disguised as facts, to further distract this Court from the undisputed facts at hand, including that Plaintiff was told how to get his cell phone records, that he never asked his cell phone carrier if upgrading his plan would allow him to obtain his prior months cell phone records, that he never communicated to GEICO or Mr. Wright that upgrading his plan would not allow him to access his prior records, and that Plaintiff possessed multiple "burner" phones. (Def. MSJ, pp. 7-9). GEICO provides no evidence to support these purported facts. To the contrary, the undisputed facts demonstrate the opposite. (*See* Plaintiff's Separate Moving Statement of Facts "SOF", Nos. 20-21, 37, 42-44).

there is no question that GEICO has acted in bad faith. Plaintiff's breach of contract claim is supported by undisputed evidence, and summary Judgment is due to be granted in Plaintiff's favor on his breach of contract claim.

As for Defendant's Motion for Summary Judgment, GEICO has failed to satisfy its burden of showing "the absence of a triable issue of material fact" as to Plaintiff's claims for breach of contract, violation of the California Business & Professions Code Section 17200, fraud, declaratory relief, and injunctive relief. Instead of demonstrating the absence of any material facts, GEICO's arguments are entirely dedicated to introducing irrelevant and immaterial facts which have no bearing on this Court's resolution of summary judgment. A prime example are the self-serving and improper declarations discussed in Section V. A, *infra*. Because GEICO fails to satisfy its burden, and because genuine issues of material fact exist which preclude summary judgment on Plaintiff's UCL, fraud, declaratory relief, and injunctive relief claims, this Court should deny GEICO's Motion for Summary Judgment in its entirety.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "Material facts are those which may affect the outcome of the case." *ViCHIP Corp. v. Lee*, 438 F. Supp.2d 1087, 1092-93 (N.D. Cal. 2006) (citing *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986)). Furthermore, "[t]he moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions or affidavits that demonstrate the absence of a triable issue of material fact." *Cecena v. Allstate Ins. Co.*, No. C 05-3178, 2007 WL 13245, at *3 (N.D. Cal. Jan. 16 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party meets its burden, the non-moving party must then "present specific facts that there is a genuine issue for trial. *Id.* (citing FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324). If the evidence is merely colorable, or is

not significantly probative, then summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted).

## III. STATEMENT OF FACTS

On September 25, 2013, Plaintiff, Christopher T. Monroe, was issued Policy No. 4325-03-34-16 by Defendant, GEICO General Insurance Company, for his 2006 white Lexus GS 300 with Vin No. JTHBH96S065010679. (SOF[2] No. 1). Plaintiff paid GEICO the initial premium on Policy No. 4325-03-34-16 to insure his Lexus that same day. (SOF No. 2). On September 26, 2013, Plaintiff's vehicle was stolen from its parked location. (SOF No. 3). At the time of the theft of his vehicle, Plaintiff's vehicle was insured by GEICO under his active policy, Policy No. 4325-03-34-16. (SOF Nos. 1, 3). After discovering that his vehicle had been stolen, Plaintiff promptly reported the theft to the local police department and filed a timely claim with GEICO for the theft of his vehicle. (SOF No. 3).

GEICO began a fraud investigation shortly after Plaintiff filed his theft claim. (SOF No. 4). As part of GEICO's investigation into Plaintiff's insurance claim, GEICO requested that Plaintiff provide documents and information including a vehicle theft questionnaire, the names and contact information of several individual witnesses, and a copy of his bank records for the month prior to the theft of his vehicle. (SOF Nos. 4, 17, 18). Plaintiff also cooperated in GEICO's investigation by participating in a recorded interview at GEICO's request regarding his claim on October 9, 2013. (SOF Nos. 5, 17, 18). Lastly, GEICO's Special Investigation Unit ("SIU") Claims Investigator, Larry Wright, requested that Plaintiff provide his cellular telephone and text message records for the month prior to the theft of his vehicle (from 9/1/13 – 10/1/13). (SOF Nos. 5, 19).

---

[2] Plaintiff refers this Court to Plaintiff's Moving Separate Statement of Uncontroverted Facts, filed contemporaneously with Plaintiff's Cross Motion for Partial Summary Judgment, which Plaintiff will cite to herein as "SOF". Defendant GEICO also filed a Moving Separate Statement of Uncontroverted Facts with its Motion for Summary Judgment. Any reference Plaintiff makes to such facts will designated "Defendant's SOF".

Immediately following the recorded interview, in October 2013, Plaintiff complied with GEICO's request and made numerous attempts to retrieve his cell phone records from his prepaid cellular phone provider, T-Mobile. (SOF Nos. 6, 20). However, T-Mobile informed Plaintiff that due to his status as a prepaid cell phone customer, it did not maintain those records. (SOF Nos. 6, 20, Internal T-Mobile Notes entered on 10/14/2013: "Chris Issue: Called in to as[k] if we could help him print out his call and sms records, edu cx we dont keep those records in our database."). Upon learning this information, Plaintiff communicated to GEICO, and Mr. Wright, that he could not provide his prepaid cell phone records because such records were not maintained or available. (SOF Nos. 7, 20-21). Mr. Wright suggested that Plaintiff may have to upgrade his account to gain access to his records. (SOF No. 5). Plaintiff attempted to follow Mr. Wright's suggestion but was told by T-Mobile that upgrading his plan would only provide records from the date of the upgrade forward. (SOF No. 6). Plaintiff subsequently informed Mr. Wright that upgrading his account to a monthly "post-paid" plan would not allow him to obtain his back-dated prepaid phone records. (SOF Nos. 8, 20-21, Handwritten note referencing "10/14/13 4:30 p.m." "NO RECORDS FOR PREPAID CUSTOMERS WAS GOING TO UPGRADE PLAN BUT WOULDN'T COVER DATES 9/1/13-10/1/13"). Subsequently, GEICO sent Plaintiff several letters stating that GEICO was continuing to evaluate and investigate Plaintiff's claim and that GEICO needed "additional time to secure [the] notarized vehicle theft questionnaire, police report, bank records, [and] cell and text records." (SOF No. 22). On December 10, 2013, GEICO denied Plaintiff's claim for the first time, citing "a lack of cooperation." (SOF No. 23).

Plaintiff then re-sent the documents GEICO previously requested and GEICO reopened its evaluation of Plaintiff's claim on or around March 20, 2014. (SOF Nos. 24-26). After re-opening Plaintiff's claim, it is undisputed that GEICO was in possession of the notarized vehicle theft report, bank statements, witness information, and the police report confirming the theft of Plaintiff's vehicle on September 26, 2013. (SOF No. 27). The only document GEICO requested

that Plaintiff did not provide was a copy of his cell phone records. (SOF No. 27). However, as Plaintiff had previously communicated to GEICO on multiple occasions, Plaintiff was unable to provide these records because his cell phone carrier does not maintain cell phone records for its prepaid customers. (SOF Nos. 6-8, 20-21).

On April 10, 2014, GEICO denied Plaintiff's claim for a second time. (SOF No. 28). GEICO's April 10th letter acknowledged that Plaintiff had cooperated in GEICO's investigation by providing GEICO with each document it requested with the exception of Plaintiff's prepaid cell phone records. (SOF No. 27). GEICO further acknowledged that Plaintiff communicated that such records were not available for Plaintiff to provide. (SOF No. 27) ("You related that the cell carrier would not provide the records, and that those records were not available to prepaid customers.").

Importantly, GEICO's witnesses testified that they did not know whether T-Mobile, or any other cell phone company, actually maintained cell phone records for its prepaid customers when it requested such records from Plaintiff or when it denied Plaintiff's claim based on his inability to provide such records. (SOF No. 10, 29). To the contrary, despite all evidence demonstrating that Plaintiff could not provide such prepaid cell phone records, GEICO merely speculated that a prepaid customer, such as Plaintiff, could change or upgrade his phone plan to obtain his previous months' prepaid phone records. (SOF No. 30). GEICO also did not know if this was possible, and the evidence provided by Plaintiff confirmed that it was not. (SOF Nos. 30).

Following GEICO's second denial of Plaintiff's claim, Plaintiff filed a claim with the California Department of Insurance and requested that they conduct an inquiry into GEICO's denial of Plaintiff's claim. (SOF No. 31). As a result of Plaintiff's inquiry, GEICO reopened Plaintiff's claim again on May 6, 2014. (SOF No. 32). In response to the California Department of Insurance, GEICO sent Plaintiff a letter on May 6, 2014, stating, again, that it needed Plaintiff's

cell phone records to reconsider its position. (SOF No. 32). Importantly, GEICO's letter also stated the following:

> "You recently advised us that due to the length of time that has elapsed,[3] the cell phone records we requested are no longer available through your phone carrier. This lapse has impeded us from being able to complete our investigation of this loss. **If this is incorrect and these records were never available through your phone carrier, we need a letter from the phone company confirming this."**
>
> **. . .** Once the information we requested is received, we will be able to re-evaluate our position.

(SOF No. 32). In response to this letter, Plaintiff faxed and GEICO received a letter on May 14, 2014 from James Truong, a T-Mobile retail store manager, confirming that Plaintiff's prepaid cellular phone records were never available and stating that due to the nature of Plaintiff's prepaid account, T-Mobile did not possess any phone records for Plaintiff's prepaid cell phone. (SOF No. 9, 33).

Mr. Quinto, GEICO's claim examiner assigned to Plaintiff's claim, testified that this letter meant to him that Plaintiff's cell phone records were not available. (SOF No. 34). Additionally, Mr. Grothen, GEICO's corporate representative and Regional Liability Administrator positioned above Mr. Quinto, testified that this letter confirmed what Plaintiff communicated to GEICO from the outset – that T-Mobile did not maintain cell phone records for its prepaid cell phone customers. (SOF No. 35). Furthermore, Mr. Wright, the Special Investigation Unit investigator responsible for investigating Plaintiff's claim and whose SIU report Mr. Quinto solely relied upon in denying Plaintiff's claim[4], does not recall making any efforts to confirm whether Plaintiff could have obtained his prepaid cellular phone records despite having suggested to Plaintiff early on that he could obtain those records. (SOF No. 37).

---

[3] To be clear, there is no evidence that Plaintiff ever advised GEICO that "due to the length of time that has elapsed, the cell phone records we requested are no longer available." Plaintiff made it clear, within a month of the theft of his vehicle, that such prepaid cell phone records were not maintained by T-Mobile and, therefore, never available. (SOF No. 20).

[4] Curiously, Mr. Wright's Report was not produced to Plaintiff until after his deposition, Mr. Grothen's deposition and Plaintiff's deposition had been conducted. In fact, Plaintiff's counsel did not receive the report until immediately prior to Mr. Quinto's deposition.

Additionally, and of great importance, Mr. Quinto independently confirmed by telephone with T-Mobile representatives on May 22, 2014 that T-Mobile does not maintain cell phone records for its prepaid customers and that even if a prepaid customer upgraded his account to a post-paid account, this would not allow retrieval of prior prepaid cell phone records that were not maintained. (SOF Nos. 11, 36). Mr. Quinto also confirmed that if a customer were to change his or her plan, it would only allow records to be retrieved from the date the plan was changed to a post-paid account going forward. (SOF No. 36, referencing GEICO's ATLAS customer notes).[5]

Nevertheless, despite Mr. Quinto confirming what Plaintiff had been telling GEICO for the last seven months was true (that such records did not exist) and that Plaintiff could not have obtained and provided his prepaid cell phone records, GEICO denied Plaintiff's claim for the third and final time on May 29, 2014 due to Plaintiff's inability to provide his cell phone records. (SOF No. 38) ("I have reviewed the [T-Mobile] letter, and unfortunately we will stand by our decision to deny coverage. We are unable to complete our coverage investigation since the cellular phone records are no longer available."). It is undisputed that the sole reason GEICO denied Plaintiff's claim was his failure to provide his cell phone records. (SOF Nos. 12, 39).

Notwithstanding, Mr. Grothen, the Regional Liability Administration who ultimately authorized the denial of Plaintiff's claim based his decision on erroneous facts and conclusions. Mr. Grothen testified that his entire belief that Plaintiff could have obtain his cell phone records, but did not, was based solely on Mr. Wright's SIU written report. (SOF No. 40). This was contrary to GEICO's "Claims Manual", which explicitly states that its investigators are to

> Avoid drawing conclusions based on assumption or speculation. An erroneous conclusion can make the difference between settlement and denial. If the denial is

---

[5] GEICO's ATLAS customer notes, which are maintained for every insured and used by GEICO to track each interaction, document, and conversation with an insured, were not produced to Plaintiff's counsel until after the close of discovery and after depositions had already taken place. (SOF No. 36). Plaintiff's counsel only learned of such notes during Mr. Quinto's deposition. Importantly, GEICO does not even reference the ATLAS notes in its Motion for Summary Judgment, which are of clear and important relevance to the issue at hand considering it demonstrates GEICO's acknowledgment that Plaintiff could not have obtained and provided his prepaid cell phone records.

> unsound, the result may be a complaint or lawsuit, either of which could have been avoided.

(SOF No. 45). Mr. Grothen further testified that if this belief turned out to be incorrect and Plaintiff could not have obtained his prepaid cell phone records, then Plaintiff's claim would have to be re-evaluated in its entirety. (SOF No. 41).

As the evidence demonstrates, Mr. Wright was wrong -- Plaintiff could not obtain and provide his prepaid cell phone records. (SOF No. 42). It is undisputed that Mr. Wright did not know whether Plaintiff could have obtained his prepaid cellular phone records when he provided his written SIU reports. (*Id.*). Further, he has no personal knowledge whether T-Mobile even maintains such records for its prepaid cellular phone customers. (*Id.*). It is also undisputed that Mr. Wright did not know whether a T-Mobile customer, or any cellular provider for that matter, could upgrade or change his plan from prepaid to postpaid to obtain prior month's cell phone records. (SOF Nos. 43-44). Tellingly, both Mr. Wright and Mr. Quinto testified that they did not know what else Plaintiff could have done to obtain and provide his prepaid cell phone records. (SOF No. 46).

GEICO admits that it is obligated to make a final determination to pay or deny a claim based on the information they have available and that GEICO must pay a claim where there is only a suspicion of fraud or misrepresentation. (SOF No. 47). GEICO further admits that a claim cannot be denied by GEICO without ***evidence*** of fraud or misrepresentation. (SOF No. 50). Here, the undisputed testimony is that GEICO possessed zero evidence that Plaintiff committed fraud or misrepresented any information in submitting his insurance claim for the theft of his vehicle. (SOF No. 51). It is also undisputed that at the time of its claim denial GEICO had zero evidence that Plaintiff participated in the theft of his vehicle in any way. (*Id.*). Moreover, after 4 years of litigation, discovery, and GEICO's continued attempts to invalidate Plaintiff's claim, GEICO still has no evidence to support its mere suspicions.

Mr. Grothen, who also served as GEICO's corporate representative, testified that if Plaintiff had provided confirmation that his prepaid cellular telephone records were never available – which he undisputedly did as evidenced in SOF No. 33 – then GEICO **could not have denied** Plaintiff's claim for failure to cooperate based upon his inability to provide his cell phone records. (SOF No. 48). Instead, GEICO was obligated to examine Plaintiff's file based on the information they had available and if there was no evidence of any misrepresentation or fraud, which there was not, then GEICO was required to pay Plaintiff's claim. (SOF Nos. 47-48). Mr. Grothen further testified that when conducting this examination, GEICO must pay a claim if it only has a suspicion of fraud or misrepresentation and that GEICO cannot deny a claim unless it has evidence of fraud or misrepresentation. (SOF No. 50). Here, it is undisputed that there exists no evidence of fraud or misrepresentation by Plaintiff in submitting his insurance claim or that he was involved in any way in the theft of his vehicle. (SOF No. 51).

It has now been over four years since Plaintiff's vehicle was stolen, it has not been recovered and Plaintiff has yet to receive any payment on the claim. (SOF Nos. 14, 53-54). Instead, Plaintiff was forced to payment of his insurance claim through this lawsuit. Four years after the loss of his vehicle, Plaintiff's claim still has not been paid. GEICO chose and perpetuated this expensive and time-consuming result.

## IV. ARGUMENT IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM

Summary Judgment should be granted in favor of Plaintiff's breach of contract claim for two reasons. First, there is no genuine dispute of material fact that GEICO breached its contract by denying Plaintiff's claim for "failure to cooperate". GEICO's reason for denial was based solely upon Plaintiff's inability to produce his prepaid cell phone records, even though GEICO knew these records did not exist and could not be produced. Second, there is no dispute of material fact as to GEICO's breach of the implied covenant of good faith and fair dealing. By unreasonably

withholding the benefits that Plaintiff is due under his insurance policy, Defendant acted in bad faith.

**A. Summary Judgment Should Be Granted In Plaintiff's Favor on His Breach of Contract Claim Because Plaintiff Fully Complied With All Provisions Under The Policy And GEICO Breached The Contract By Denying Plaintiff's Claim Based Solely On His Failure To Produce Prepaid Cell Phone Records GEICO Knew He Could Not Produce.**

"In order to prove a breach of contract under California law, a plaintiff[] must prove the following elements: (1) existence of a contract; (2) plaintiff['s] performance; (3) Defendant['s] breach; and (4) resulting damages to plaintiff." *Bowman v. CMG*, No. C 07-03140 SI, 2008 WL 3200662, at *3 (N.D. Cal. Aug. 4, 2008). It is undisputed that Plaintiff's insurance policy was in effect and coverage was bound at the time his vehicle was reported stolen. (SOF Nos. 1-2). Plaintiff performed under the contract by paying the initial premium owed on the policy. (SOF No. 2). Plaintiff also promptly reported the theft of his vehicle to both the police and GEICO, and then cooperated with GEICO's investigation in accordance with the contract.[6] (SOF Nos. 3-6, 17-18). The only document Plaintiff did not provide was his cell phone records for his pre-paid phone, which GEICO knew could not be produced. (SOF Nos. 6-9, 11). Plaintiff has suffered damages as a result of GEICO's failure to pay for Plaintiff's covered loss and GEICO does not dispute this loss. (SOF No. 13). In addition to GEICO leaving Plaintiff without the means to replace his car, Plaintiff has been forced to hire attorneys to assist him, and has sat for multiple depositions and participated in discovery in his efforts to compel payment from GEICO. Even today, while GEICO has admitted that it has no more evidence now to justify its denial of Plaintiff's claim than it did when it first denied the claim, Plaintiff's car is still missing, his claim is still unpaid, litigation continues, and he continues to suffer from undue hardship as a result. (SOF No. 14).

[6] There is no dispute that at the time GEICO denied Plaintiff's claim on April 10, 2014 and again on May 29, 2014, Plaintiff had provided all of the information GEICO requested with the exception of his unavailable, prepaid cell phone records. (SOF No. 27).

"An insurance policy is a contract between an insurer and an insured . . . the insurer making promises, and the insured paying premiums, the one in consideration for the other, against the risk of loss." *Buss v. Superior Court*, 16 Cal. 4th 35, 44, 939 P.2d 766, 772 (1997) (citations omitted). "When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it holds its own interests above that of its insured." *Mariscal v. Old Republic Life Ins. Co.*, 50 Cal. Rptr. 2d 224, 225 (Cal. Ct. App. 1996) (emphasis added). Despite having no material evidence or a legitimate basis to support its decision, GEICO denied Plaintiff's claim and breached the contract by failing to cover the loss of Plaintiff's vehicle. (SOF Nos. 12-13). Plaintiff fully performed his contractual obligations and met all the conditions for the payment of the claim. (*Id.*). It is undisputed that GEICO denied Plaintiff's claim <u>solely</u> because he did not provide GEICO with his cell phone records, which GEICO knew were not maintained by Plaintiff's cell phone provider, T-Mobile. (GEICO's Motion for Summary Judgment "Def. MSJ", p. 26, "Plaintiff's claim was denied a third and final time on May 29, 2014. . . for violation of plaintiff's contractual obligation to assist and cooperate for failure to provide cell phone records. . .") (SOF Nos. 7-8, 11-13, 36). GEICO also confirmed prior to denying Plaintiff's claim for a final time on May 29, 2014, that T-Mobile does not maintain such records for its prepaid customers and that changing his plan to a post-paid account would not allow him to obtain prior prepaid cell phone records which were never maintained. (SOF, Nos. 11, 36). However, despite possessing this knowledge, GEICO improperly denied Plaintiff's claim in breach of the parties' insurance contract.

For the same reasons that Plaintiff's Motion for Partial Summary Judgment should be granted, GEICO's Motion for Summary Judgment should be denied. Additionally, and as discussed in Section V.A., infra, GEICO fails to meet its Rule 56 burden because its Motion is premised entirely on self-serving declarations that contradict prior sworn testimony and ignore the actual evidence.

GEICO also mistakenly relies upon *Hickman v. London Assur. Corp.*, 195 P. 45, 48 (Cal. 1920), which states that "it is necessary that [the insurer] have some means of cross-examining, as it were, upon the written statement and proofs of the insured, for the purpose of getting at the exact facts before paying the sum claimed of it." Def. MSJ, p. 24. Unlike this case, in *Hickman*, the insured refused to submit to any sort of examination to recover for property loss by fire and claimed the privilege of constitutional immunity since he was about to be tried on a charge for arson. *See id.* at 48-9. In contrast, GEICO has had ample time and opportunity to cross-examine Plaintiff because Plaintiff sat for a recorded statement, two depositions and submitted all obtainable, requested documents and information, including his bank statements, a notarized vehicle theft questionnaire, and contact information for multiple witnesses. (SOF No. 4).

The court in *Hickman* further recognized that "[t]o excuse nonperformance it must appear that the act to be done could not by any means have been accomplished." *Hickman*, 195 P. at 48. Not only does the evidence reflect that Plaintiff's prepaid cell phone records were unavailable and obtaining them "could not by any means have been accomplished," but GEICO fails to cite to any evidence demonstrating that the cell phone records could have been obtained. *See id.* GEICO merely alleges, without justification or evidence, that Plaintiff could have obtained the records by upgrading to a monthly post-paid plan even though its own Claims Examiner confirmed with T-Mobile that prepaid cell phone records were in fact not available even if a customer upgraded his plan. (SOF Nos. 7-11, 30, 36).

GEICO's reliance on *Globe Indem. Co. v. Superior Court*, 6 Cal.App.4th 725, 731 (1992), is misplaced because it supports Plaintiff's position and highlights GEICO's breach of the parties' contract. GEICO cites *Globe Indem. Co.* for the proposition that "[a] California insurer's contractual obligation to pay policy proceeds does not arise until the insured complies with his obligations under the policy **to submit reasonably requested information**. (*See* Def.'s MSJ, pp.

24-25) (emphasis added). Demanding cell phone records that do not exit, and that GEICO confirmed do not exist, cannot be considered "reasonably requested information."

Additionally, GEICO states, without any supporting evidence, that its Claims Investigator, Larry Wright, instructed Plaintiff on how to obtain his prepaid cell phone records by upgrading his plan to a monthly account.[7] (Def. MSJ pp. 7, 26). However, Mr. Wright only suggested this "may" have been possible without knowing whether it was. In fact, Mr. Wright testified that he: (1) does not know whether T-Mobile maintains cell phone records for its prepaid customers and (2) does not know whether a prepaid phone customer could, in fact, upgrade his account to somehow obtain such records. (SOF Nos. 37, 42-43). Mr. Wright's sole belief that this was even possible, which it was not, was based on second hand discussions with other GEICO employees, which he personally never confirmed. (SOF No. 44).[8] Therefore, since Plaintiff was unable to provide his cell phone records, even after cooperating with GEICO by attempting to obtain such records, and GEICO had no actual knowledge that anything else could have been done to obtain such prepaid cell phone records, Plaintiff's claim should not have been denied.

GEICO cites to other distinguishable cases in which the plaintiff failed to cooperate by failing to produce ***available*** documents and information. (Def. MSJ pp. 24:12-28, 25:1-28, 27-8, 29:1-7) (emphasis added); *See also Globe Indem. Co. v. Superior Court*, 8 Cal. Rptr. 2d 251, 252-53 (Cal. 1992) ("plaintiffs refused to provide the information necessary to allow Globe to process the claim" because they refused to allow the driver to submit to examination under oath as required

---

[7] GEICO further states, incorrectly, that Plaintiff never asked his cell phone provider to upgrade his plan. (Def. MSJ p. 7). This statement is blatantly false, as GEICO admits that Plaintiff communicated to Mr. Wright that changing his plan would not allow him to provide records that were never maintained to begin with, and that GEICO possessed records confirming that upgrading Plaintiff's cell phone plan would not allow him to provide cell phone records. (*See* Declaration of Lawrence Wright ¶¶ 16. 18, 22-3, indicating that Plaintiff "WAS GOING TO UPGRADE PLAN BUT WOULDN'T COVER DATES 9/1/13 -- 10/1/13"; *see also* Def. MSJ pp. 14-15 in which GEICO received Plaintiff's October 28, 2013 fax stating that "no records for prepaid customers was going to upgrade plan but wouldn't cover dates 9/1/13 – 10/1/13 . . . ").

[8] Mr. Wright later admitted that this GEICO employee was Mr. Grothen. However, Mr. Grothen testified that he has no knowledge whether this could be done either, that he had never had a prepaid phone plan and never attempted to change his plan from prepaid to post-paid, and that he has never looked into whether a customer can change his or her plan to obtain his prepaid cell phone records. (SOF Nos. 30, 40, 45).

by the terms of the insurance policy); *Othman v. Globe Indem. Co.*, 759 F.2d 1458, 1461 (Cal. 1985) (where insurer's denial was based on failure to cooperate when insured "refused to produce certain documents and to answer certain questions, most of which related to the circumstance of the fire and Othman's personal financial condition"); *Abdelhamid v. Fire Ins. Exchange*, 106 Cal. Rptr. 3d 26 (Cal. Ct. App. 2010) (where the insured refused to answer material questions during examination under oath); *Brizuela v. Calfarm Ins. Co*., 10 Cal. Rptr. 3d 661, 663 (Cal. Ct. App. 2004) (insured's claim was properly denied where the insured "violated the requirement of the policy that he submit to an examination under oath")).

Unlike these cases, Plaintiff fully complied with all provisions of the contract and provided every document GEICO requested except for his prepaid cell phone records. (SOF Nos. 4, 17-18, 27). GEICO further fails to provide any authority where an insurance company was prejudiced by not having cell phone records even though cell phone records were not maintained and could not have been produced. GEICO's own cited authority indicates that "[a]n insurer may deny coverage on the basis of the insured's refusal to cooperate if it is *substantially* prejudiced." (Def. MSJ pp. 24-25) (citing *Othman*, 759 F.2d at 1465) (emphasis added). In contrast to *Othman*, where the insured refused to produce important documents and information, Plaintiff fully complied with GEICO's requests throughout its investigation and did not refuse cooperation. (SOF Nos. 4-8). If GEICO was in any way prejudiced, it did not result from Plaintiff's purported failure to cooperate in its investigation.

GEICO also argues that Plaintiff's breach of contract claim should fail on the grounds that "if the deficiencies in an insured's submission are substantial and 'a far cry from minor defects,' then there is no substantial performance." (Def. MSJ p. 25:22-7) (citing *Gilbert v. Infinity Insurance Co.*, 186 F. Supp.3d 1075, 1085-86 (C.D. Cal. 2016)). GEICO states that the denial of Plaintiff's claim "was based on the prejudicial effect the lack of cell phone records had on GEICO's ability to complete its investigation" as they were unable to "cross-check the details of

plaintiff's story." (Def. MSJ p. 26:15-22). However, GEICO cannot claim, in good faith, that where Plaintiff has fully complied with all of its requests that his failure to produce unavailable cell phone records are such a "substantial deficiency" as to prejudice GEICO's investigation. (SOF Nos. 15-16, 18).

The facts in *Gilbert v. Infinity Ins. Co*., 186 F.Supp.3d 1075 (C.D. Cal. 2016), are also distinguishable. In *Gilbert*, the insured's cell phone records were available and obtained by the insured, but the insured purposefully produced them with redacted phone numbers which prejudiced the insurer's investigation. *Id.* at 1082-84. In this case, Plaintiff did not purposefully choose to avoid producing his cell phone records, but instead tried repeatedly to obtain such records and was unable to obtain them. (SOF Nos. 6-11). Plaintiff stated under oath that he "wanted to" provide GEICO with his cell phone records and went to T-Mobile on multiple occasions to obtain his cell phone records but was unable to do so since such records are not maintained for prepaid customers. (SOF No. 6). At bottom, GEICO has provided no legal authority on point to support its position. GEICO had no legal basis to deny Plaintiff's claim four years ago, and it has not brought forth any now. Therefore, Plaintiff is entitled to summary judgment on his breach of contract claim and GEICO's motion should be denied.

**B. Summary Judgment Should Be Granted in Favor of Plaintiff's Breach of Contract Claim Because GEICO Breached the Implied Covenant Of Good Faith And Fair Dealing by Denying Plaintiff's Claim in Bad Faith.**

GEICO also acted in bad faith by unreasonably withholding the benefits Plaintiff is due under the policy based solely on records GEICO knew he could not provide in breach of the implied covenant of good faith and fair dealing. It is well settled in California that "every contract contains an implied covenant of good faith and fair dealing" and that "[a]ll insurance contracts include the implied covenant of good faith and fair dealing." *Letizia v. Facebook Inc*., No. 16-cv-062320TEH, 2017 WL 3006950 at *9 (N.D. Cal. July 14, 2017); *Chierfue Her v. State Farm Ins. Co*., 92 F. Supp. 3d 957, 973 (E.D. Cal. 2015). The duty of good faith and fair dealing "requires

'an insurer to give at least as much consideration to the interests of the insured as it gives to its own interests.'" *Id*. (quoting *Wilson v. 21st Century Ins. Co*., 171 P.3d 1082, 1087 (Cal. 2007)).

In first party insurance cases, the implied covenant of good faith and fair dealing is breached when denial or delay in provision of benefits is unreasonable. *Wilson*, 171 P.3d at 1087 ("denial of a claim **on a basis unfounded in the facts known to the insurer**, or contradicted by those facts, may be deemed unreasonable") (emphasis added). "When benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable, and numerous other tactics may breach the implied covenant ...." *Chierfue Her*, 92 F. Supp. 3d at 973 (quoting *Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619 (Cal. 1995). Additionally, "[a] 'bad faith' claim against an insurer is based on a breach of the implied covenant of good faith and fair dealing, which exists to assure the insurer makes prompt payment of claims to the insured." *Id.* (citing *Buxbaum v. Aetna Life & Casualty Co.*, 126 Cal. Rptr.2d 682, 687 (Cal. 2002). "To establish a bad faith claim against an insurer, the insured must show that: (1) benefits due under the policy were withheld; and (2) the reason for withholding the benefits was unreasonable or without proper cause." *Id*. In making this determination,

> The issue is not whether the insurer has received every item of information that it has requested or has in its hands the exact type of information that it prefers when deciding a claim, rather *the question is whether there was enough evidence of whatever form and however acquired* that the insurer would act unreasonably if it refused to pay the claim.

*Id.* at 972 (citing *McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 3d 1030, 1046 (Cal. Ct. App. 1984) (emphasis in original).

Here, GEICO unreasonably withheld the benefits due under the policy by denying Plaintiff's claim on May 29, 2014 solely because Plaintiff could not provide his prepaid cell phone records which Defendant knew could not be produced. (SOF No. 37). As stated above, GEICO does not dispute that Plaintiff cooperated by attempting to get his cell phone records and also

admits that Plaintiff informed GEICO on multiple occasions that T-Mobile did not maintain cell and text records for its prepaid customers (SOF Nos. 20-21). GEICO also admits that it had no actual knowledge that such records could be produced, even by an upgrade of a customer's plan, despite insisting that Plaintiff should have done so to provide these records. (SOF Nos. 29-30, 37, 40-44). GEICO requested written confirmation from T-Mobile that these records were never available for prepaid customers and it is undisputed that Plaintiff cooperated and provided GEICO with this confirmation. (SOF Nos. 32-33). Most importantly, GEICO confirmed with T-Mobile that these records were not maintained for prepaid customers and that if a prepaid customer changed his account to a postpaid account it would only provide records from that day forward. (SOF No. 36).

Yet, despite confirming that Plaintiff could not provide his cell phone records, GEICO again denied Plaintiff's claim on May 29, 2014 based on Plaintiff's failure to provide his non-existent cell phone records. (SOF Nos. 36 and 37). GEICO knew and has known that Plaintiff could not provide these records since before its final denial on May 29, 2013 and throughout the entirety of this litigation. Nonetheless, GEICO still maintains its denial was appropriate and seeks summary judgment on this claim. More tellingly of GEICO's bad faith is the testimony of Mr. Grothen. Mr. Grothen, GEICO's corporate representative and Regional Liability Administrator who authorized the denial of Plaintiff's claim, testified that GEICO is obligated to make a determination regarding coverage based on the information GEICO has in its possession. (SOF No. 47). Furthermore, GEICO's "Claims Manual" states that its investigators are to "[a]void drawing conclusions based on assumption or speculation. An erroneous conclusion can make the difference between settlement and denial. If the denial is unsound, the result may be a complaint or a lawsuit, either of which could have been avoided." (SOF No. 45). The law is clear that "[b]ad faith may be present when an insurer ignores evidence that supports a claim and focuses on facts that would justify a denial." *Chierfue Her*, 92 F. Supp. 3d at 975. By contradicting its own actions

through sworn testimony, and basing its denial of Plaintiff's claim on facts "unfounded in the facts known to the insurer," GEICO's acted in bad faith in denying Plaintiff's claim and no "genuine issue" as to the GEICO's liability remains. *Cecena*, 2007 WL 13245, at *7 (citing *Lunsford*, 18 F.3d at 656); *Wilson*, 171 P.3d at 1087.

It is also undisputed that GEICO has never possessed any evidence of fraud or misrepresentation by Plaintiff in submitting his insurance claim or that he was involved in any way in the theft of his vehicle. (SOF No. 51). Mr. Grothen, who also served as GEICO's corporate representative, testified that if Plaintiff had provided confirmation that his prepaid cellular telephone records were never available – which he undisputedly did as evidenced in SOF No. 33 – that GEICO **could not have denied** Plaintiff's claim for failure to cooperate based on his cell phone records. (SOF No. 48).[9] Instead, GEICO would be obligated to examine Plaintiff's file based on the information they had available and if there was no evidence of any misrepresentation or fraud, GEICO would be required to pay Plaintiff's claim. (SOF Nos. 47-48). *See Egan v. Mutual of Omaha ins. Co.*, 620 P.2d 141, 145-46 (Cal. 1979) ("To protect [an insured's] interests it is essential that an insurer fully inquire into possible bases that might support the insured's claim. Although we recognize that distinguishing fraudulent from legitimate claims may occasionally be difficult for insurers . . . an insurer cannot reasonably and in good faith deny payments to its insured **without properly investigating the foundation for its denial**.") (emphasis added). Therefore, GEICO's denial of coverage for Plaintiff's claim constitutes bad faith and summary judgment should be granted in favor of Plaintiff's breach of contract claim.

//

//

[9] Because GEICO could no longer deny Plaintiff's claim for lack of cooperation based on his inability to produce his prepaid cellular phone records that did not exist, GEICO was required to examine Plaintiff's claim file for evidence of misrepresentation or fraud, which it is undisputed did not exist. (SOF Nos. 49, 51).

## V. PLAINTIFF'S ARGUMENT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE FOR SUMMARY ADJUDICATION OF ISSUES AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT.

Plaintiff now turns to the arguments in GEICO's Motion for Summary Judgment, of which there are genuine issues of material fact which preclude summary judgment in GEICO's favor. As demonstrated below, GEICO has failed to satisfy its burden of showing "the absence of a triable issue of material fact" as to Plaintiff's claims for breach of contract claim[10], violation of the California Business & Professions Code Section 17200, fraud, declaratory relief, and injunctive relief. *Cecena v. Allstate Ins. Co.*, 2007 WL 13245, at *3 (N.D. Cal. Jan. 16 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Instead of demonstrating the absence of material facts, GEICO's arguments are entirely dedicated to introducing irrelevant and immaterial facts which have no bearing on the elements of any claim in this lawsuit or this Court's resolution of summary judgment, a prime example of which is discussed in Section V.A, *supra*. Because Defendant has failed to satisfy its burden, and because genuine issues of material fact exist which preclude summary judgment on Plaintiff's claims, in addition to his breach of contract claim, this Court should deny GEICO's Motion for Summary Judgment in its entirety.

### A. GEICO's Declarations and Plaintiff's Criminal Records Attached to GEICO's Motion For Summary Judgment Should be Stricken Because the Declarations Contradict Sworn Testimony and the Criminal Records Are Irrelevant to GEICO's Denial of Plaintiff's Claim.

In an attempt to disregard unfavorable testimony, GEICO submits the declarations of Lon Grothen, Larry Wright, and John Quinto. GEICO ignores these witnesses' previous deposition testimony and instead cites entirely to their declarations. (*See* Def. MSJ). Such declarations contain contradictory testimony, fail to provide the Declarant's full testimony, and should be disregarded by this Court. *See Cleveland v. Groceryworks.com, LLC*, 200 F. Supp.3d 924, Fed.

[10] Plaintiff has demonstrated in Section III, *supra*, how GEICO has failed to satisfy its FED. R. CIV. P. 56 burden as to Plaintiff's breach of contract claim and why this Court should instead grant summary judgment in favor of Plaintiff. Plaintiff will not re-hash these issues here.

R. Evid. Serv. 61 (N.D. Cal. 2016) ("A declaration that purports to impeach his or her own prior sworn testimony" is barred by California courts at the summary judgment stage.); *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir.1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."); *Scottsdale Ins. Co. v. Moreno*, 133 F. App'x 415, 416 (9th Cir. 2005) ("A party cannot create a material issue of fact on a motion for summary judgment by offering an affidavit that 'flatly contradicts' the affiant's prior testimony."). Additionally, a court "may find a declaration to be a sham when it contains facts that the affiant previously testified he could not remember." *Yeager,* 693 F.3d at 1080. Plaintiff has highlighted the contradictions between the Declarations submitted in support of GEICO's Motion For Summary Judgment and the deposition testimony provided by such Declarants. (Attached hereto as Ex U, specifically Mr. Grothen's Declaration ¶¶ 4, 4-16, Mr. Wright's Declaration ¶¶ 5,12, 14, 16, 19, 22, 24-25, and Mr. Quinto's Declaration ¶¶ 20-21, 23, and 26). Plaintiff requests that this Court strike these sham declarations and rely instead on the deposition testimony of the witnesses and the evidence identified by Plaintiff.

Additionally, GEICO attaches the declaration of their counsel's attorney, Maryam Maleki, to provide purported evidence of Plaintiff's criminal background after the close of discovery and which formed no basis in GEICO's denial of Plaintiff's claim for failure to provide his prepaid cell phone records. Summary judgment involves only material facts and there is nothing about the records attached to Mrs. Maleki's Declaration that are material to the claims asserted in this lawsuit. *Mazzarella v. U.S. Postal Serv.*, 849 F. Supp. 89, 93 (D. Mass. 1994) ("only disputes over facts that might affect the outcome of the suit under the governing substantive law will preclude summary judgment; irrelevant or unnecessary factual disputes will not enter the court's consideration."). Such records are wholly irrelevant to this case and have no bearing on GEICO's denial of Plaintiff's insurance claim based on the failure to provide his prepaid cell phone records

as stated in its final May 29, 2014 denial letter. (SOF No. 38). GEICO Therefore, Plaintiff respectfully requests that this Court strike the portions of Mr. Wright, Mr. Quinto and Mr. Grothen's Declarations which contradict their prior testimony and disregard the irrelevant and inadmissible records submitted by GEICO.

**B. Summary Judgment is Not Appropriate as to Plaintiff's Unlawful, Unfair and Fraudulent Business Practices Act (California Business & Professions Code Section 17200, et. seq.) Because GEICO Has Failed to Satisfy Its Rule 56 Burden By Showing The Absence Of Any Material Fact.**

GEICO cites no authority to support its convoluted argument in attempt to prove Plaintiff's claim fails under Section 17200, et seq. "In order to bring a claim for violation of Section 17200, 'a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair deceptive, untrue or misleading advertising.'" *Makreas v. First Nat. Bank of N. Cal.*, 856 F. Supp. 2d 1097, 1101 (N.D. Cal. 2012). Furthermore, "to state a UCL claim, a plaintiff must establish that the practice is unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)." *Id.* at 1102. Genuine issues of material fact exist as to whether GEICO's business practices are "unlawful, unfair, or fraudulent." Much like GEICO's statement of facts, GEICO states in conclusory fashion without supporting evidence that "[a] defendant cannot be liable under 17200 for committing 'unlawful' business practices without having violated another law" and that GEICO "carried out its obligation to investigate plaintiff's claim" so therefore, "Geico did not engage in the alleged conduct and has not violated the 'unlawful' prong." *See* Def. MSJ p. 28:1-2, 29:14-17. However, Plaintiff clearly articulated in his First Amended Complaint that GEICO violated specific California Civil Code Sections 1572, 1573, 1709, 1711, 1770, 1670.5, Cal. Ins. Code Section 790.03 and the common law, all of which are "forbidden by law." *See* Plaintiff's First Amended Complaint p. 6; *Makreas*, 856 F. Supp. 2d at 1102. Furthermore, a business practice may be "unfair

or fraudulent in violation of the UCL even if the practice does not violate any law." *Berrien v. New Raintree Resorts Int'l, LLC*, 276 F.R.D. 355, 362 (N.D. Cal. 2011).

Furthermore, by misrepresenting itself as an insurance company that will provide coverage to vehicles in the event of theft, Plaintiff has proven that GEICO is likely to deceive the public into thinking that coverage for a claim will occur when no findings of fraud or misrepresentation are present. (SOF Nos. 50-51). GEICO further misstates that "Plaintiff cannot establish that by denying his claim for failure to provide cell phone records, Geico failed to give its insured's rights at least as much consideration as its own interest, inasmuch as a requirement that the insured cooperate by providing requested documents is an enforceable condition of insurance under the policy . . .". Def. MSJ p. 28: 17-20. GEICO argues that "[t]here was nothing unfair about Geico's investigation or its decision to deny plaintiff's claim for failure to cooperate." Def. MSJ p. 30: 2-3. This alone creates a genuine dispute of material fact as to Plaintiff's Section 17200 claim.

GEICO also admits that "there must be evidence of fraud to deny the claim for fraud" and further that "a claim will not be denied on a basis of suspicion without evidence of actual fraud." (Def. MSJ p. 28:27-29:3; *see also* SOF No. 50). However, Plaintiff contends that is precisely what GEICO did in denying Plaintiff's claim. (SOF No. 51). Unfair under Section 17200 "simply means any practice whose harm to the victim outweighs its benefits." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). As demonstrated *supra*, GEICO denied Plaintiff's theft claim due to Plaintiff's "failure to cooperate" when Plaintiff fully complied with all available requests, was unable to produce his prepaid cell phone records, Plaintiff communicated this to GEICO on multiple occasions, and GEICO even discovered through its own investigation that T-Mobile did not maintain cell phone records for its prepaid customers like Plaintiff. (SOF Nos. 4-6, 12, 36). Additionally, GEICO's corporate representative, Mr. Grothen, testified that GEICO must pay a claim when it only has a suspicion of fraud or misrepresentation and cannot deny a claim unless it has actual supporting evidence. (SOF No. 50). Whether GEICO

unfairly denied Plaintiff's claim based on his inability to produce cell phone records that did not exists, surely presents a question of fact as to Plaintiff's Section 117200 claim.

Without tangible evidence to support its position, the facts indicate that GEICO issued a policy which was and still remains impossible for Plaintiff to comply with due to his inability to produce his prepaid cell phone records. (SOF 8, 33, 36). Plaintiff was never told he would need to produce his cell phone records nor is there any indication in the policy that the production of cell phone records is needed for cooperation with the claims investigation. California courts have recognized that this is fraudulent in nature as insurers' "policies must be interpreted so as to protect the reasonable expectations of the insured." *Miller v. Elite Ins. Co.*, 161 Cal. Rptr. 322, 329 (Cal. Ct. App. 1980) (citing *Gray v. Zurich*, 419 P.2d 168, 175 (Cal 1966). Therefore, summary judgment must be denied as to this count because there exists genuine issues of material fact as to whether there is a claim for Plaintiff's Unlawful, Unfair, and Fraudulent Business Practices.

**C. This Court Should Deny GEICO's Motion as to Plaintiff's Fraud Claim Because GEICO Has Failed to Satisfy Its Rule 56 Burden By Showing the Absence of Any Material Fact.**

For the same reasons articulated above, GEICO suppressed material information and defrauded Plaintiff in denial of his insurance claim. Therefore, GEICO has failed to satisfy its FED. R. CIV. P., Rule 56 burden and summary judgment should be denied.

**D. Summary Judgment Should Be Denied as to Plaintiff's Declaratory Relief Count Because Plaintiff's Declaratory Judgment Request Is Not Duplicative Of The Breach of Contract Claim.**

It is undisputed that the parties entered into a valid insurance contract for Plaintiff's vehicle on September 25, 2013 and that coverage was bound on the date of Plaintiff's loss, September 26, 2013. As extensively shown above, Defendants denied Plaintiff's insurance claim in bad faith. Therefore, Plaintiff seeks a declaration from this Court that Defendant's actions were unreasonable, were taken in bad faith and constitute a breach of the implied covenant of good faith and fair dealing inherent in the parties' insurance contract.

**E. Summary Judgment Should Not Be Granted as to Plaintiff's Injunctive Relief Claim**

California courts have held that a plaintiff who proves a violation of the UCL should not be precluded from obtaining injunctive relief merely because the plaintiff faces no realistic threat of suffering an injury from the defendant's unfair business practices in the future. *See, e.g., Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027, at *3 (N.D. Cal. 2015); *Koehler v. Litehouse, Inc.*, 2012 U.S. Dist. LEXIS 176971, 2012 WL 6217635, at *6 (N.D. Cal. 2012); *Cabral v. Supple, LLC*, 2012 U.S. Dist. LEXIS 137365, 2012 WL 4343867, at *2-3 (C.D. Cal. 2012); *Henderson v. Gruma Corp.*, 2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188, at *7-8 (C.D. Cal. 2011).

## VI. CONCLUSION

Wherefore, Plaintiff respectfully requests this Court grant Summary Judgment in favor of Plaintiff's Breach of Contract Claim (Count I) as the evidence shows that GEICO improperly denied Plaintiff's claim in breach of the parties' contract and the implied duty of good faith and fair dealing. Additionally, Plaintiff respectfully requests this Court deny GEICO's Motion for Summary Judgment in its entirety.

Dated: December 8, 2017

**MCCALLUM, METHVIN & TERRELL, P.C.**

By: /s/ James M. Terrell
James M. Terrell (Appearance *Pro Hac Vice*)
jterrell@mmlaw.net
P. Michael Yancey (Appearance *Pro Hac Vice*)
myancey@mmlaw.net
Patrick C. Marshall (Appearance *Pro Hac Vice*)
pmarshall@mmlaw.net
McCallum, Methvin & Terrell, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199; Fax: (205) 939-0399

Ross Bozarth, Esq. (Bar No. 259602)
Email: rbozarth@gblegal.com
**Guenard & Bozarth**
8830 Elk Grove Boulevard
Elk Grove, CA 95624
Tel: (916) 714-7672; Fax: (916) 714-9031

*Attorneys for Plaintiff*

**PROOF OF SERVICE**

The undersigned certifies that on December 8, 2017, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

/s/ James M. Terrell
OF COUNSEL