Dennis B. Kass (State Bar No. 137263)
*dbk@manningllp.com*
Richard Garcia (State Bar No. 198185)
*rgg@manningllp.com*
Alexandra C. Seibert (State Bar No. 283008)
*acs@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone: (415) 217-6990
Facsimile: (415) 217-6999

Attorneys for
GEICO GENERAL INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

CHRISTOPHER T. MONROE,

Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

Defendant.

Case No. 14-CV-05174-HRL

**DEFENDANT GEICO GENERAL INSURANCE COMPANY'S COMBINED REPLY TO OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: January 25, 2017
Time: 9:00 a.m.
Ctrm.: 4

[Filed concurrently with Reply Separate Statement of Undisputed Material Facts; Appendix of Evidence; and Responsive Separate Statement of Undisputed Material Facts]

Complaint filed:

COMES NOW defendant Geico General Insurance Company and submits this Combined Reply To Opposition To Its Motion For Summary Judgment And Opposition To Plaintiff's Cross-Motion For Partial Summary Judgment.



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 5

II. REPLY TO OPPOSITION TO GEICO'S MOTION FOR SUMMARY JUDGMENT ..... 5

A. THERE IS NO BASIS FOR STRIKING THE DECLARATIONS OF GEICO WITNESSES. ..... 5

B. THERE IS NO BASIS FOR STRIKING PLAINTIFF'S CRIMINAL RECORDS. ..... 6

C. GEICO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD CLAIM. ..... 7

D. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF. ..... 8

E. GEICO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM. ..... 9

F. THE COURT SHOULD DECLINE TO EXERCISE DISCRETIONARY JURISDICTION OF PLAINTIFF'S DUPLICATIVE DECLARATORY RELIEF CLAIM. ..... 11

G. GEICO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM UNDER SECTION 17200 ET SEQ. ..... 12

III. OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM. ..... 13

A. INTRODUCTION ..... 13

B. PLAINTIFF CANNOT ESTABLISH THERE IS NO TRIABLE ISSUE OF FACT THAT HE MET HIS OBLIGATION TO COOPERATE AND ASSIST BY PROVIDING HIS CELL PHONE RECORDS. ..... 14

C. PLAINTIFF HAS NOT ALLEGED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND ANY SUCH CLAIM WOULD BE SUBSUMED UNDER HIS BREACH OF CONTRACT CLAIM. ..... 17

IV. CONCLUSION ..... 19

## TABLE OF AUTHORITIES


**Page**

**CASES**

*Bates v. UPS* 511 F.3d 974(9th Cir. 2007) ........ 8

*Brizuela v. Calfarm Ins. Co.* 116 Cal.App.4th 578 (2004) ........ 9

*Cabral v. Supple, LLC* 2012 U.S.Dist. LEXIS 137365 ........ 8

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* 222 Cal.App.3d 1371 ........ 17

*D'Amico v. Board of Medical Examiners* 11 Cal.3d 1 (1974), ........ 5

*Fox v. Good Samaritan L.P.* 801 F.Supp.2d 883 (N.D. Cal. 2010). ........ 17

*Gilbert v. Infinity Ins. Co.* *supra*, 186 F.Supp.3d 1075 (2016), ........ 9, 16

*Globe Indem. Co. v. Superior Court* 6 Cal.App.4th 725 (1992) ........ 9

*Hickman v. London Assur. Corp.* 184 Cal. 524 (1920) ........ 15

*Hodgers-Durgin v. de la Vina* 199 F.3d 1037 (9th Cir.1999) ........ 12

*Kaar v. Wells Fargo Bank, N.A.* 2016 U.S.Dist. LEXIS 71475, (N.D. Cal. 2016) ........ 17

*Kennedy v. Allied Mut. Ins. Co.* 952 F.2d 262 (9th Cir. 1991) ........ 5

*Lilly v. Jamba Juice Co.* 2015 U.S. Dist. LEXIS 34498 (N.D. Cal. 2015) ........ 8

*Othman v. Globe Indem. Co.* 759 F.2d 1458 (9th Cir. 1985) ........ 16

*Scalf v. D.B. Log Homes, Inc.* 128 Cal.App.4th 1510 ........ 5

*Trinity Hotel Investors, LLC v. Sunstone OP Props, LLC* 2009 U.S.Dist. LEXIS 13692, (C.D. Cal. 2009) ........ 17


MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

*Yeager v. Bowlin*
693 F.3d 1076 (9th Cir. 2012)........................................................................................ 5

**RULES**

Federal Rules of Civil Procedure
rule 56 (c)(4)............................................................................................................... 5

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This combined brief consists of Geico's Reply to plaintiff's Opposition to Geico's Motion for Summary Judgment and Geico's Opposition to plaintiff's Motion for Partial Summary Judgment which is addressed to his breach of contract cause of action only. Geico also submits the Declaration of John Quito in opposition to plaintiff's motion and as a rebuttal deposition in support of Geico's motion (referred to as "Quinto Dec. 2").

## II. REPLY TO OPPOSITION TO GEICO'S MOTION FOR SUMMARY JUDGMENT

### A. THERE IS NO BASIS FOR STRIKING THE DECLARATIONS OF GEICO WITNESSES.

Federal Rules of Civil Procedure rule 56 (c)(4) acknowledges that declarations may support a motion for summary judgment. The sham affidavit rule is also known as the D'Amico rule, after *D'Amico v. Board of Medical Examiners,* 11 Cal.3d 1 (1974), which establishes that "a party cannot **create an issue of fact** by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) (emphasis added). "In a nutshell, the rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony." *Scalf v. D.B. Log Homes, Inc.*, 128 Cal.App.4th 1510, 1521, 1522 (2005). The D'Amico rule does not apply here because: (1) it bars contradictory declarations by a party **opposing** a motion for summary judgment; (2) it applies only when declaration testimony "**flatly contradicts**" prior deposition testimony; and (3) the declaration must be determined by the court to be an **actual sham**.

There are two important limitations on the sham affidavit rule: (1) the district court must make a "factual determination that the contradiction was actually a sham"; and (2) the "inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). The opposing party's sham testimony must flatly contradict earlier testimony. *Kennedy v. Allied Mut. Ins. Co., supra,* 952 F.2d at 266. Courts should not disavow a declaration as a sham for minor contradictions. *Yeager v. Bowlin*, *supra,* 693 F.3d at 1080 ("'[T]he nonmoving party is not precluded from elaborating on,

explaining or clarifying prior testimony elicited by opposing counsel on deposition . . . .'").

Even assuming that the rule could theoretically apply to Geico's declarations, which it cannot, the declarations do not contradict earlier deposition testimony. Plaintiff submits a seven-page chart of deposition testimony he asserts contradicts the declarations of Grothen, Wright, and Quinto. Rather than set forth the deposition testimony verbatim, nearly all of the testimony is summarized by plaintiff. Plaintiff has not demonstrated that the declarations are "sham" declarations submitted for the sole purpose of creating a triable issue of fact.

**B. THERE IS NO BASIS FOR STRIKING PLAINTIFF'S CRIMINAL RECORDS.**

Plaintiff asserts that Geico has no more evidence to justify its denial of plaintiff's claim than it did when if first denied the claim and then objects to submission of that very evidence on the ground that it is irrelevant. [P Mtn 1: 23-24; P Oppo 21: 27-28.] Plaintiff's criminal records are relevant because they establish that plaintiff made false statements in his recorded statement which may have been discovered had Geico been provided with plaintiff's cell phone records and which would have triggered further and closer investigation into plaintiff's claim. Contrary to the representation in plaintiff's recorded statement that he had been arrested only once for possession of a small amount of drugs, not trafficking, and had never been on probation or parole, at the time of his statement plaintiff was a convicted felon with convictions for unemployment ***insurance fraud, theft,*** and possession and use of a controlled substance. [Geico ("G") Exhs. S,T, U.] He had been arrested at least eight times and had a long history of felony drug arrests, including arrests for possession for sale of a controlled substance and distribution of a controlled substance. [G Exhs. O, Q, S, U.] The criminal records are evidence that plaintiff lied to Geico about his criminal record and concealed the fact that he was convicted felon with a significant criminal background, including conviction for insurance fraud and theft.

In response to a question during his recorded statement about specific phone numbers plaintiff said, "Yeah, that's my cellphone. And the other number is, because my phone got disconnected, and, obviously, I'm borrowing this phone," [G Exh. C at p. 3; G Exh. AA]. Contrary to his statement suggesting that he had only one cell phone and that because that one cell phone had



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

been disconnected, he had to borrow a phone, plaintiff's bank records revealed that plaintiff had at least three cell phones in August and September of 2013, two of which were not revealed to Wright. [G Exh. AA; G Exh. C at p. 3.] The bank records are evidence that plaintiff lied about his cell phones in his recorded statement, which bears on his cooperation, and that he concealed that he had multiple other cell phones, records for which may have shown that his claim was not valid. [G Exh. C at pp. 14-16; G Exhs. O-U.] The bank records and the criminal records are evidence that plaintiff made misrepresentations that, had the investigation not been impeded, might have been discovered and led to more and closer scrutiny of plaintiff's account of the theft of his vehicle. These records are relevant.

In addition, plaintiff asks the court to award him declaratory and injunctive relief, both of which are forms of equitable relief, and require clean hands. These records are relevant as evidence that he does not have clean hands.

**C. GEICO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FRAUD CLAIM.**

Plaintiff offers only one substantive sentence in opposition to Geico's motion for summary judgment on his fraud claim: "For the same reasons articulated above, GEICO suppressed material information and defrauded Plaintiff in denial of his insurance claim." [P Oppo. 24: 17-18.] There is no evidence that Geico fraudulently induced plaintiff to purchase a Geico policy, and wrongful denial of a claim is breach of contract, not fraud.

The only reference plaintiff makes to suppression of information is his assertion that Geico does not set forth in its policy that it might require insureds to provide cell phone records in connection with an investigation of a claim. This assertion does not give rise to liability for at least three reasons. First, an insurer has no duty to set forth the details of its claims handling procedures in its policies. Second, the evidence establishes that plaintiff was not induced to purchase his policy in reliance on a belief that Geico had disclosed all of its claims handling policies both because **no** claims handling policies were disclosed and because undisputed evidence establishes that plaintiff purchased his policy based on its price. Third, there is no evidence that at the time plaintiff purchased his policy, Geico did not intend to honor a valid claim under the policy. In fact, plaintiff

asserts as an undisputed fact that "GEICO ***incorrectly assumed***, but did not have actual knowledge, that Plaintiff ***could*** obtain his prepaid cellular telephone records . . . [by] changing his plan from a prepaid account . . . ." [P UMF 10 (emphasis added).]

There is no evidence that Geico defrauded plaintiff into purchasing his policy or that he reasonably relied on any misrepresentation by Geico in purchasing his policy. This case is simply not a fraud case. Geico is entitled to summary judgment on plaintiff's fraud claim.

**D. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.**

To be entitled to prospective injunctive relief there must be a likelihood that the plaintiff will be wronged again. *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007). Plaintiff argues that this rule does not apply to a plaintiff who proves a violation of the UCL, citing four district court cases, all of which are class actions for false advertising for mislabeling of products. [P Oppo 25: 3-11.] These cases do not assist plaintiff. In each of the cited cases the courts reiterated that to have standing to obtain injunctive relief, a plaintiff must allege that a real and immediate threat exists that he will be wronged again. In *Lilly v. Jamba Juice Co.*, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027 (N.D. Cal. 2015) the court observed that courts have grappled with the question of when a consumer class may be certified for the purposes of obtaining injunctive relief against deceptive product labeling, noting that some courts have held that once a consumer is aware that a label is misleading, she cannot have standing to seek injunctive relief because she will not be misled in the future, while other courts have found that such a consumer has standing, as long as she expresses the intent to purchase the product in the future. *Id.* at * 6-7. Based on reasoning tied specifically to false labeling, the court held "a consumer is not disabled from seeking injunctive relief against false labeling solely because she learns, after purchasing a product, that the label is false." *Id.* at *13. In *Cabral v. Supple, LLC*, 2012 U.S.Dist. LEXIS 137365, 2012 WL 6217635 the court held "With such advertising remaining on supermarket shelves, Plaintiffs, as representatives of a class, should be entitled to pursue injunctive relief on behalf of all consumers in order to protect consumers from Defendant's alleged false advertising." *Id.* at *6. Plaintiff, however, is not a representative of members of the general public who might at any time buy a mislabeled product. Rather, he brings personal action for alleged wrongful denial of his own insurance claim under his personal insurance



MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

policy, but he is no longer insured by Geico and therefore no threat exists that he will be wronged by Geico again. He lacks the status necessary for the harm he alleges. Moreover, he admits that Geico did not have a general policy of denying claims when cell phone records are not available. [*See*, G UMF 38.] Plaintiff lacks standing to seek injunctive relief.

### E. GEICO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT CLAIM.

Payment of an insurance claim is conditional on the insured's compliance with conditions of coverage. *Globe Indem. Co. v. Superior Court*, 6 Cal.App.4th 725, 731 (1992) (obligation to pay policy proceeds **does not arise until** insured complies with contractual obligations to submit reasonably requested information); *Brizuela v. Calfarm Ins. Co.*, 116 Cal.App.4th 578, 589 (2004) (failure to comply with policy provisions requiring examination under oath and production of documents generally results in forfeiture of coverage, relieving insurer of liability to pay and providing **absolute defense to action on the policy**).

In *Gilbert v. Infinity Ins. Co*., *supra*, 186 F.Supp.3d 1075 (2016), the court held that cell phone records are reasonably requested in an insurance coverage investigation and granted summary judgment on a breach of contract claim in favor of an insurer who denied the insured's claim for failure to provide unredacted cell phone records under a requirement that the insured "cooperate with [the insurer] in any matter concerning a claim or suit." *Id.* at 1077, 1085. Accordingly, plaintiff cannot prevail on his breach of contract claim unless he proves that he complied with his obligation to provide the requested cell phone records, which he cannot do.

Plaintiff's policy included a condition that required him to assist in securing evidence and cooperate in Geico's investigation of his claim. He admits that he was asked to provide cell phone records for a one-month period before the date of the theft, that he was instructed that to obtain the records it might be necessary to upgrade his account from a pre-paid account, that he never attempted to upgrade his account, and that he never provided the requested records, which cannot now be obtained. As a result, Geico was not able to use the records to cross-check information plaintiff provided in his recorded statement, some of which has since been proven to be false. Geico was unable to complete its investigation, and therefore invoked its rights under the contract to deny



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

plaintiff's claim for failure to comply with his contractual obligation to assist and cooperate.

In the face of these facts, plaintiff argues that he complied with his obligation by requesting the records, but he was told that his cell phone carrier does not maintain records **for pre-paid accounts**. However, plaintiff's request for the records was insufficient to satisfy his contractual obligation because he was advised from the outset that it might be necessary for him to upgrade his account to obtain his records and that if there was a cost associated with the upgrade, he could ask Geico to pay for it. Nevertheless, although he admits knowing that the investigator wanted him to upgrade his account and told him that Geico would pay for the associated costs, plaintiff did not upgrade his account. He offered as his excuse that he would have lost money and he didn't believe he could get records for the requested period of time preceding an upgrade. However, plaintiff admits that he never asked Geico to pay for the costs associated with an upgrade and he has never offered evidence that he was told (as opposed to assumed) that he could not get records for the period prior to the update.

Furthermore, Geico invited plaintiff to provide confirmation from his cell phone company that records for his phone had never been available. Plaintiff failed to provide the requested confirmation. Instead, he submitted a letter that merely reiterated that "**due to his pre-paid account** with T-Mobile we do not hold phone records for pre-paid phone number . . . ." (Emphasis added.) The cell phone carrier did not confirm that plaintiff's records had never existed or that had he timely upgraded his account the records could not have been provided. The evidence establishes, to the contrary, that T-Mobile records for pre-paid accounts do exist and can be provided. Wright and Grothen both testified that records for pre-paid cell phone accounts have been obtained and T-Mobile confirmed to Quinto that cell phone records for pre-paid accounts exist and can be provided. Furthermore, although T-Mobile's general service for a pre-paid account may not have included a monthly print-out of call details, plaintiff may also have been able to obtain those records had he simply explained that his special need for the records. [*See*, Quinto Dec. 2, ¶¶ 5-8.] However, plaintiff does not claim to have offered any explanation regarding his need for the records and admits that he did not upgrade his account. Undisputed facts demonstrate that plaintiff cannot prove that he complied with this contractual obligation to assist and cooperate.

Plaintiff argues that Geico's denial for failure to cooperate was a breach of contract because Geico knew he could never have obtained the requested cell phone records. However, there is **no** evidence that plaintiff could not have obtained his cell phone records **or that Geico knew** that he could not have obtained his cell phone records. Plaintiff asserts in his papers, but **never testified**, that he was told that even if he upgraded, he could not get records for dates from before the upgrade, which he asserts never existed. [P Oppo 1: 23-25, 27-28: 2: 2-3.] It is undisputed that RLA Grothen had seen telephone records from pre-paid accounts and Geico had obtained pre-paid cell phone records. [Grothen Depo 97: 12, 98: 10-11, 23-24 (P Exh. E).] Wright also knew, based on his experience with insureds who were told that their cell phone records were not available, but were able to obtain their records after they upgraded their accounts, information shared among SIU investigators, and his own personal inquiries that pre-paid cell phone records can be obtained from cell phone companies when the account is upgraded. Wright believed this was true as to T-Mobile in 2013. [Wright Depo 69: 21 – 70: 1; 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14; 21-24; 82: 5-12 (P Exh. F).] As a former law enforcement officer, Wright knew that cell phone records for pre-paid cell phone accounts do exist. [Wright Depo. 78: 4-6 (P Exh. F).] Quinto's supervisor memorialized in the claim records "We believe the calls should register and be logged with T-Mobile company and there would be a record of these calls . . . ." [P Exh. J (5/20/2014 entry).] The understanding of Wright, Quinto's supervisor, and Grothen was confirmed when T-Mobile confirmed that it does have cell phone records for pre-paid accounts which are available to law enforcement and others. [P Exh. J (5/22/2014 entry); Quinto Rebuttal Dec., ¶¶ 5-8].

Geico has shown here and in opposition to plaintiff's motion for summary judgment on the breach of contract claim that plaintiff did not meet the assistance and cooperation condition of coverage under the policy. Geico is entitled to summary judgment on plaintiff's breach of contract claim.

### F. THE COURT SHOULD DECLINE TO EXERCISE DISCRETIONARY JURISDICTION OF PLAINTIFF'S DUPLICATIVE DECLARATORY RELIEF CLAIM.

Plaintiff requests "a declaration as to [the] respective rights [of the parties] under the Policy and . . . [that] this Court declare that the burden to prove a claim and the manner of proof at issue is



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

unlawful and **in material breach of the Policy** so that future controversies under the Policy may be avoided." [FAC, ¶ 45 (emphasis added), *see also*, item E, FAC prayer for relief.] The declaratory relief cause of action is duplicative of the cause of action for breach of contract. Moreover, there will be no future controversies under plaintiff's policy as he is no longer insured by Geico. The court should decline to exercise discretionary jurisdiction of this claim.

Furthermore, the bank and criminal records in support of Geico's motion are evidence that plaintiff comes to the court seeking declaratory relief, which is a form of equitable relief, with unclean hands. *Hodgers-Durgin v. de la Vina,* 199 F.3d 1037, 1039 (9th Cir.1999).

### G. GEICO IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM UNDER SECTION 17200 ET SEQ.

An action may violate section 17200 under the unlawful, unfair, or fraudulent prong. For discussion of why Geico did not violate the fraudulent prong of the statute, see the discussion in support of Geico's motion for summary judgment on plaintiff's fraud claim. It should be noted that plaintiff bases his argument regarding the fraudulent prong on Geico's denial of his claim for fraud without evidence of fraud. [P Oppo 23: 15-18.] However it is undisputed that plaintiff's claim was denied for failure to cooperate, which prevented Geico from being able to make a determination as to the validity of his claim, not for fraud. For Geico's discussion of why it did not violate the unfair prong of the statute, see its opposition to plaintiff's claim for breach of contract based on the covenant of good faith and fair dealing.

Plaintiff bases his claim that Geico violated the law on "the conduct described herein, and particularly through the wrongful denial of a valid automobile theft claim . . . ." [FAC, ¶ 27.] He identifies actions (a-g), all related to the alleged wrongful denial of his claim, which he alleges violated the law. [FAC, ¶ 28.][1] For Geico's discussion of why it did not violate the unlawful prong

---

[1] In response to a contention interrogatory asking for all facts supporting his claim for violation of section 17200, plaintiff responded, "Plaintiff incorporates by reference all allegations set forth in his First Amended Complaint. Additionally, Plaintiff states that GEICO failed to give his rights at least as much consideration as their own interests by denying his valid automobile theft claim without a reasonable factual basis that the claims were not valid and by wrongfully shifting the burden of proving the claim was not valid to Plaintiff. GEICO also wrongfully denied the claim due to the Plaintiff's inability to produce evidence in the form of cell phone records, although no notice was given to the Plaintiff, either



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

of the statute by breaching the contract, see the discussion in support of Geico's motion for summary judgment on the breach of contract claim and its opposition to plaintiff's cross-motion for summary judgment on the breach of contract claim.

Furthermore, as discussed above, plaintiff is not entitled to the injunctive relief he seeks pursuant to this claim.

## III. OPPOSITION TO CROSS-MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S BREACH OF CONTRACT CLAIM.

### A. INTRODUCTION

Plaintiff seeks summary judgment as to his breach of contract claim only. As discussed above, an insurer's obligation to pay policy proceeds does not arise until the insured complies with the conditions of coverage, including his obligation cooperate and assist in securing evidence. In order to prevail on his breach of contract claim, therefore, plaintiff must establish that he did comply with his obligation assist and cooperate. If there is a triable issue of fact as to whether plaintiff met this obligation (or as Geico asserts in its motion for summary judgment, there is no triable issue of fact that he did **not** meet his obligation), his motion for summary adjudication on his breach of contract claim must be denied.

Plaintiff's attempt to resist summary judgment based on the fact that Wright and Grothen did not have absolute knowledge that T-Mobile had records for pre-paid accounts in 2013 is non-availing because Geico's request for cell phone records was reasonable in light of the experience of Wright that cell phone records for pre-paid accounts do exist and that insureds who had been told that their pre-paid account records were not available were able to obtain the records after upgrading their accounts, information shared among SIU investigators, and his own personal inquiries, that cell phone records that are not made available to pre-paid customers can be obtained from cell phone companies when the account is upgraded. In addition, Grothen had seen records from pre-paid cell phone accounts and knew that pre-paid cell phone records had been obtained. Furthermore, Wright and Grothen's understanding was correct. Contrary to plaintiff's assertion that Quinto confirmed

---

prior to purchasing the insurance or filing the claim with GEICO that providing cell phone records was a condition or requirement necessary to GEICO's claim processing." [G Exh. Y.]



MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

with T-Mobile representatives that T-Mobile does not maintain cell phone records for its prepaid customers and that even if a prepaid customer upgraded his account to post-paid account, this would not allow retrieval of prior prepaid cell phone records that were not maintained [P Mtn. 8: 1-8], Quinto confirmed the opposite – that records for pre-paid accounts do exist and can be made available. [P Exh. J (5/22/2014 entry); Quinto Dec. 2.]

Furthermore, the right to deny a claim for failure to cooperate does not depend on the ultimate availability of the evidence requested. Geico made a reasonable request that plaintiff provide his cell phone records and gave instructions as to how it believed that could be accomplished. It was plaintiff's obligation under the contract to make reasonable efforts to follow Geico's instructions to obtain the records, but he did not do so. Had he timely followed instructions, and then reported that the records, in fact, could not be obtained in the manner Geico believed they could, Geico would have been in a position to attempt other means to obtain the records or to make a determination to deny or acknowledge coverage. However, plaintiff neither upgraded his account nor provided proof that upgrading would have been futile because the records were never available. Because plaintiff did not follow the procedures outlined until it was too late to obtain the records, Geico was left without the ability to complete its investigation and therefore denied the claim for failure to cooperate.

The argument that plaintiff returns to, repeatedly, - that Geico did not have evidence that plaintiff's car was not stolen - is both factually incorrect[2] and not relevant because Geico denied plaintiff's claim for *failure to cooperate* which prevented Geico from completing its investigation into whether the claim was valid or fraudulent. Geico did not deny the claim because it had established that the claim was *fraudulent*.

**B. PLAINTIFF CANNOT ESTABLISH THERE IS NO TRIABLE ISSUE OF FACT THAT HE MET HIS OBLIGATION TO COOPERATE AND ASSIST BY PROVIDING HIS CELL PHONE RECORDS.**

Plaintiff asserts that he tried to obtain his cell phone records, but could not do so because his

---

[2] There was significant circumstantial evidence that the claim may not be valid, including the many suspicious circumstances of the claim set forth in the statement of facts in the moving papers.



MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

provider did not maintain records for pre-paid accounts. [P Mtn 1: 27-28.] However, Geico had previously advised him that he might be told that records on pre-paid accounts are not available and he may need to upgrade his account from pre-paid to monthly to obtain the records and that Geico would pay the costs associated with upgrading his account. Plaintiff admits that he **never upgraded his account** and he never asked Geico to pay the costs associated with an upgrade. [P Depo 2, pp. 156: 5-13, 24 - 157: 4, 12-16 (G Exh. W); G UMF 8.]

Furthermore, no evidence, not even his own testimony, support's plaintiff's assertion that T-Mobile told him that upgrading would not enable him to obtain his records from before the upgrade. [P Mtn. 2: 1-4; 5: 12-14] Plaintiff cites his deposition testimony, Exhibit H (see Geico's objection to Exh. H cited in response to Geico's UMF 6), and Exhibit R. Plaintiff did not testify that T-Mobile told him that if he upgraded, he would not be able to obtain records prior to the date of the upgrade. He testified merely that, "They all told me the same thing, that there's no records for prepaid customers." [P Depo 173: 24-25 (P Exh. B).] Plaintiff's Exhibit R is his handwritten note bearing the words (in all capital letters) "Mon 10/14/13 430 pm Liz customer service rep no records for prepaid customers was going to upgrade plan but wouldn't cover dates 9/1/13 – 10/1/13 I was going to upgrade to monthly but it would of canceled out my month I just paid for." [P UMF 8; P Exh. R.] However, plaintiff testified that he does not know who Liz is and he does not know if the information on the note is something Liz, whoever she is, told him. [P Depo 2, pp. 153: 2-8, 12-21; 154: 13 – 155: 2, 7-8 (G Exh. W).] The note reflects that plaintiff did not upgrade his plan as requested. It is not evidence of information from T-Mobile, rather than assumptions plaintiff made on his own.

Plaintiff also asserts that Geico knew that upgrading would not enable him to obtain the requested records. [P Mtn 2:4-5.] Plaintiff relies exclusively on an entry by claim representative Quinto. However, as discussed above, rather than confirming that plaintiff's cell phone records were never available, T-Mobile actually confirmed that plaintiff's cell phone records were initially available and could be provided, even though he had a pre-paid account. [P Exh. J (5/22/2014 entry), Quinto Rebuttal Dec., ¶¶ 5-8.]

Plaintiff objects that *Hickman v. London Assur. Corp.*, 184 Cal. 524 (1920) in not applicable



Manning & Kass
Ellrod, Ramirez, Trester LLP
Attorneys at Law

because the facts are inapposite. In *Hickman* the Supreme Court explained that cooperation requirements in insurance policies are reasonable and valid because "the amount and circumstances of a loss are almost entirely within the sole knowledge of the insured, and the opportunity and temptation to perpetrate a fraud upon the insurer is often great." *Id.* at 530. When an insured refuses to cooperate, he "forfeit[s] all right to recover." *Id.* These holdings do not depend upon the particular facts of the case. As plaintiff notes, the Court also held that to excuse nonperformance by the insured "it must appear that the act to be done could not by any means have been accomplished." *Id.* Plaintiff cannot establish that he could not provide the cell phone records "by any means" because he did not upgrade his account.

Plaintiff asserts that demanding cell phone records that do not exist is not reasonably requested information. [P Mtn 14:1-2.] However, cell phone records are reasonably requested. *Gilbert v. Infinity Ins. Co.*, 186 F.Supp.3d 1075 (C.D. Cal. 2016) (summary judgment in favor of insurer where plaintiff refused to provide unredacted cell phone records). The evidence establishes that Wright and Grothen believed that such records were available and could be obtained if plaintiff upgraded his account. Furthermore, Geico confirmed with T-Mobile that records for pre-paid accounts actually exist before it denied plaintiff's claim the last time for failure to cooperate. Even assuming that plaintiff's cell phone records were not available upon upgrade, Geico would not know that because plaintiff did not upgrade his account.

Plaintiff argues that under *Othman v. Globe Indem. Co.*, 759 F.2d 1458 (9th Cir. 1985) the insurer must show that it was substantially prejudiced. [P Mtn 15: 12-22.] Substantial prejudice in the context of investigation of an insurance claim occurs when the insurer is unable to conclude its investigation. In *Othman* the court found that the information the insured failed to provide was material to the investigation and payment was excused because "without it Globe lacked relevant information that **might** help to prove who set the fire." *Id.* at 1465 (emphasis added).

Not only does plaintiff fail to raise any triable issue of fact that he met his obligation to cooperate by following reasonable instructions to obtain reasonably relevant cell phone records, in fact, as asserts in Geico's motion for summary judgment, there is no triable issue that plaintiff did **not** meet its contractual obligations and for breach of contract is foreclosed.

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

### C. PLAINTIFF HAS NOT ALLEGED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND ANY SUCH CLAIM WOULD BE SUBSUMED UNDER HIS BREACH OF CONTRACT CLAIM.

Plaintiff argues that summary judgment should be granted on his breach of contract claim because Geico breached the covenant of good faith and fair dealing by denying his claim in bad faith. [P Mtn 16: 19-21.] However, plaintiff has not pled a claim for breach of the covenant of good faith and fair dealing. The allegations of the complaint "serve to frame--and limit--the issues" in a motion for summary judgment. *Fox v. Good Samaritan L.P.*, 801 F.Supp.2d 883, 896 (N.D. Cal. 2010). Summary judgment cannot be granted or denied on grounds not raised by the pleadings. Plaintiff's cause of action for breach of contract makes no reference to the covenant of good faith and fair dealing or to bad faith. It is a straight-forward breach of contract claim, alleging, "Defendant has failed to perform and materially breached the Policy by delaying and denying benefits due under the Policy." [FAC, ¶ 24.]

Furthermore, where the allegations supporting a claim for breach of the implied covenant of good faith and fair dealing rely on the same alleged act and seek the same relief claimed in a contract cause of action, they may be disregarded as superfluous as no additional claim is stated, and the claim is subsumed in the contract cause of action. *Trinity Hotel Investors, LLC v. Sunstone OP Props, LLC,* 2009 U.S.Dist. LEXIS 13692, *11 (C.D. Cal. 2009); *Kaar v. Wells Fargo Bank, N.A.*, 2016 U.S.Dist. LEXIS 71475, *4-5 (N.D. Cal. 2016).

Moreover, there is no evidence to support a claim for breach of the implied covenant of good faith and fair dealing, even if it had been alleged and were it not subsumed into the breach of contract claim. "To assert a breach of the implied covenant of good faith and fair dealing, plaintiffs must show that the defendants' conduct 'demonstrates a failure or refusal to discharge contract responsibilities, prompted not by an **honest mistake, bad judgment or negligence**, but rather by a conscious and deliberate act.' " *Trinity Hotel Investors, LLC v. Sunstone OP Props, LLC, supra*, 2009 U.S.Dist. LEXIS 13692, at * 9-10, quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371 at 1395 (emphasis added). Plaintiff asserts again and "most importantly" that Geico confirmed with T-Mobile that if a prepaid customer changes his account to a post-paid

account T-Mobile would only provide records from the date of the upgrade, yet denied his claim for failure to cooperate. [P Mtn 18: 2-11.]

As has been detailed above, there is no evidence that Wright, Quinto, or Grothen had any bad faith regarding the denial of plaintiff's claim for failure to cooperate. Wright had information, based on his experience, that plaintiff might be told that records are not available for pre-paid accounts, but that if he would upgrade his account he would be able to obtain the requested records, and he so instructed plaintiff. Plaintiff did not provide the requested cell phone records and Wright identified multiple details of plaintiff's story that he was unable to investigate due to the lack of plaintiff's cell phone records. [Wright Dec., ¶ 25.] Furthermore, he was not involved in the decision to deny the claim.

Having personally seen records from pre-paid cell phone accounts and knowing that pre-paid cell phone records had been obtained, it was also Grothen's understanding that records for pre-paid accounts do exist and can be obtained. [Grothen Depo 97: 12, 98: 10-11, 23-24 (P Exh. E).] Quinto's supervisor documented Geico's collective understanding regarding the existence of cell phone records for pre-paid accounts: "We believe the calls should register and be logged with the T-Mobile company and there would be a record of these calls not in the Sales Office but with T-Mobile." [P Exh. J (5/20/2014 entry).]

Despite the fact that plaintiff had not provided confirmation from his cell phone company that records for his pre-paid cell phone account did not exist, and despite Wright's, Quinto's, Quinto's supervisor's, and Grothen's understanding that records for pre-paid cell phone accounts do exist, Quinto took the extra step of contacting T-Mobile to inquire. T-Mobile confirmed their understanding that records on pre-paid accounts do exist and can be provided to law enforcement and others. [P Exh. J (5/22/2014 entry); Quinto Dec. 2, ¶ 8.] Based on his conversation with the T-Mobile representative, Quinto understood that although the general level of customer support for pre-paid accounts does not include providing call-detail records, had plaintiff timely upgraded his account or explained his special need for the records, he could have obtained his records. [Quinto Dec. 2, ¶ 8.] Based in part upon this information, Grothen determined to stand by the determination to deny plaintiff's claim for failure to cooperate based on the facts that rendered plaintiff's claim

suspicious, the aspects of plaintiff's story that Geico could likely have confirmed or refuted through plaintiff's cell phone records had they been provided, plaintiff's repeated lack of response and delayed responses over the history of the investigation and its effect on the availability of the cell phone records, and the effect of the lack of cell phone records on Geico's ability to complete its investigation of the claim. [Grothen Dec., ¶ 16.] There is no evidence of a "conscious and deliberate" bad faith denial of plaintiff's claim.

## IV. CONCLUSION

Geico respectfully requests that it motion for summary judgment be granted.

DATED: December 22, 2017

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/
Richard Garcia
Attorneys for GEICO GENERAL INSURANCE COMPANY

MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP ATTORNEYS AT LAW

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

# CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 333 Bush Street, 27th Floor, San Francisco, CA 94104.

On December 22, 2017, I served true copies of the following document(s) described as **DEFENDANT GEICO GENERAL INSURANCE COMPANY'S COMBINED REPLY TO OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 22, 2017, at San Francisco, California.

/s/
Lisette Estevez-Watkins

**SERVICE LIST**
***Christopher Monroe v. Geico General Insurance Co.***
**14-CV-05174-EJD**


**Bradley Ross Bozarth**
Guenard & Bozarth, LLP
8830 Elk Grove Blvd.
Elk Grove, CA 95624
916-714-7672
919-7149031 (fax)
rbozarth@gblegal.com

**Attorney for Christopher T. Monroe**
*(Plaintiff)*

**Gary Alan Waldron**
**Sherry Sue Bragg**
Weintraub Tobin
23 Corporate Plaza Dr.
Suite 200
Newport Beach, CA 92660
949-760-0204
gwaldron@weintraub.com
sbragg@weintraub.com

**Attorneys for Christopher T. Monroe**
*(Plaintiff)*

**Kristin E. Hobbs**
Hobbs Law Group
1340 E. Route 66
Suite 210
Glendora, CA 91740
626-782-4520
k.hobbs@hobbslawgroup.com

**Attorney for Christopher T. Monroe**
*(Plaintiff)*

**Perry Michael Yancey**
**James Michael Terrell**
**Patrick Clayton Marshall**
McCallum, Methvin & Terrell, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
205-939-0199 ext. 105
205-939-0399 (fax)
myancey@mmlaw.net
jterrell@mmlaw.net

**Attorneys for Christopher T. Monroe**
*(Plaintiff)*


MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW