Dennis B. Kass (State Bar No. 137263)
*dbk@manningllp.com*
Richard Garcia (State Bar No. 198185)
*rgg@manningllp.com*
Alexandra C. Seibert (State Bar No. 283008)
*acs@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone: (415) 217-6990
Facsimile: (415) 217-6999

Attorneys for GEICO GENERAL INSURANCE COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

CHRISTOPHER T. MONROE,

Plaintiff,

v.

GEICO GENERAL INSURANCE COMPANY,

Defendant.

Case No. 14-CV-05174-HRL

**DEFENDANT GEICO GENERAL INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS**

Date: January 25, 2017
Time: 9:00 a.m.
Ctrm.: 4

[Filed concurrently with Reply to Opposition to Motion for Summary Judgement; and Response to Plaintiff's Separate Statement of Undisputed Material Facts]

Complaint filed:

COMES NOW defendant Geico General Insurance Company and submits it Response to plaintiff's Separate Statement of Uncontroverted Facts.

## UNCONTROVERTED FACTS

| Claim | Plaintiff's Undisputed Facts and Supporting Evidence | Defendant's Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Breach of Contract** | | |
| 1. A contract existed between Plaintiff and GEICO. | Fact 1: GEICO issued Policy No. 4325-03-34-16 to Plaintiff on September 25, 2013 to insure Plaintiff's 2006 white Lexus GS 300 with Vin No. JTHBH96S065010679.<br><br>(Ex. A, Special Investigation Unit "SIU" Case Report Prepared by Larry Wright); (Deposition of Chris Monroe "Monroe Depo" p. 78:6-10, 84:4-22, attached as Ex. B; Insurance Card, attached as Ex. L). | Undisputed. |
| 2. Plaintiff performed under the contract. | Fact 2: Plaintiff paid GEICO the initial premium on the policy on September 25, 2013 at 11:48 am PST.<br><br>(Ex. A, SIU Case Report Prepared by Larry Wright); (Monroe Depo, pp. 78:6-10, 84:4-22, Ex. B). | Undisputed that plaintiff paid the minimum premium payment. |
| | Fact 3: Plaintiff's vehicle was stolen on September 26, 2013. Plaintiff reported his stolen vehicle to the police the same day.<br><br>(Police Report, Ex. C; Monroe Depo, pp. 94:21-96:13, Ex. B) | Geico cannot admit or deny that plaintiff's vehicle was stolen inasmuch as there is evidence suggesting that the car was not stolen or that plaintiff colluded in the theft of the car, but his failure to cooperate and assist in securing evidence prevented the completion of Geico's investigation.<br>[Quinto Dec., ¶¶ 10, 23; Wright Dec., ¶¶ 24, 25.]<br>The evidence does not support the date of the alleged theft. The cited police report notes that the alleged theft occurred between 11 a.m. on September 25 and 8 a.m. on September 26, 2013.<br>[P's Exh. C (police report).]<br>Undisputed that plaintiff reported his vehicle stolen to the police on September 26, 2013. |
| | Fact 4: Plaintiff provided GEICO with the police report, a recorded interview, a notarized vehicle theft questionnaire, witness information, and bank records per GEICO's request.<br><br>(Deposition of John Quinto "Quinto | Undisputed that plaintiff eventually provided Geico with the first page of a vehicle theft report, a notarized theft questionnaire, witness information and bank records. Undisputed that plaintiff gave a recorded statement. |

| | | |
|---|---|---|
| | Depo" pp. 80:23-81:6, attached as Ex. D; Deposition of Lon Grothen "Grothen Depo" p. 90:2-11, attached as Ex. E; Deposition of Larry Wright "Wright Depo" pp. 103:21-104:22, attached as Ex. F; Exhibit 17 to Quinto Depo, attached as Ex. G). | **Additional Facts**: Some of the listed documentation was not provided until many months after it was requested, and after multiple requests, and after the claim had been denied for failure to cooperate on December 10, 2013. [Quinto Dec. ¶¶ 13, 15, 16, 18; Exhs. H, J to Quinto Dec.; Wright Dec., ¶¶ 18, 19, 23, 24, 25; Exhs. B, E to Wright Dec.] Plaintiff provided false answers to a number of questions in the recorded interview. [Exh. C to Wright Dec., pp. 3, 14, 15; Exhs. O, Q, S, T, U to Maleki Dec., Exh. AA to Muhlestein Dec.] |
| | Fact 5: GEICO also requested that Plaintiff provide his cellular telephone and text records. (Wright Depo, p. 174:2-14, Ex. F). | Undisputed. |
| | Fact 6: Plaintiff attempted to retrieve these records for GEICO on multiple occasions but was unable to obtain and provide such records because his cellular telephone provider, T-Mobile, informed him that they do not maintain cellular telephone records for prepaid customers. (Monroe Depo, pp. 171:5-172-23, 173:18-174:22, Ex. B; Exhibit 5 to Wright Deposition, attached as Ex. H). | Undisputed that plaintiff testified that he made multiple telephone calls requesting a copy of his pre-paid cell phone records. Disputed that T-Mobile has no cell phone records for pre-paid accounts. Plaintiff offers no evidence that the company has no records and Geico claim representative Quinto confirmed with T-Mobile that it does initially have cell phone records for pre-paid accounts. [P's Exh. J (5/22/2014 entry); Quinto Dec.] Disputed that plaintiff was unable to obtain his cell phone records, inasmuch as he admits that he did not attempt to upgrade his account and provides no evidence that he explained the unique nature of his need for the records to T-Mobile, which had the ability to provide his records. [P Depo 2, pp. 156: 5-13, 24 - 157: 4, 12-16.] |

| | | |
|---|---|---|
| | | **Objection to Evidence**: Exh. H, the only purported documentation that plaintiff contacted a cell phone company to request records, is objected on the ground that it lacks foundation. It is identified in plaintiff's counsel's declaration only as Exh. 5 to Wright's deposition. Wright testified, "I have no idea what this is." Thereafter he merely responded to questions asking him to confirm words on the document. [Wright Depo 127: 7-128: 23.] |
| | Fact 7: Plaintiff communicated to GEICO that he could not provide his cellular telephone records because T-Mobile did not maintain such records for its prepaid customers.<br><br>(Monroe Depo, pp. 171:5-172-23, Ex. B; Wright Depo, pp. 82:5-19, 88:7-16, 90:23-91:2, 127:4-128:22, Ex. F; Quinto Depo, p. 141:13-19, Ex. D; Ex. H, (showing T-Mobile's internal customers notes for Plaintiff and stating that Plaintiff Chris Monroe called in on 10/14/2013 "to see if we could help him print out his cell and SMS records, edu cx we don't keep those records in our database…")) | Undisputed that plaintiff conveyed the stated information to Geico, but disputed that the information was correct for the reasons stated in response to fact 6 above.<br>See Objection to Exh. H at UMF 6, above. |
| | Fact 8: Plaintiff's cell phone provider, T-Mobile, further confirmed that upgrading his account to a monthly "post-paid" plan would not allow him to obtain his prepaid cell phone records, but instead, only his cell phone records from the date he changed his plan to a monthly plan forward. Plaintiff communicated this to GEICO on multiple occasions.<br><br>(*See* SIU Report, Ex. A, p. 6, "2013-10-30" "He [Plaintiff] has reported, in his documentation, that he is unable to obtain his phone and text records."; Ex. J, Atlas Notes, "recd handwritten note indicating no records for prepaid customers. Was going to upgrade plan but wouldn't cover dates 9/1/13-10/1/13."; Ex. 9 to Monroe Depo, attached as Ex. R). *See also* Def's MSJ, pp. 14-15. | Disputed. The evidence cited does not establish that T-Mobile confirmed that upgrading his plan would not allow plaintiff to obtain his prepaid cell phone records prior to the date of the upgrade. Neither the SIU report nor plaintiff's handwritten note establish that cell phone records prior to the date of upgrade would not be available. Furthermore, plaintiff testified that he did not know the source of the information on the note. [P Depo 2, pp. 153: 2-8, 12-21; 154: 13 – 155: 2, 7-8.]<br>Not only is the fact not supported by plaintiff's evidence, it is refuted by evidence that cell phone records for T-Mobile cell phone records are initially available.<br>[P's Exh. J (5/22/2014 entry); |

| | | |
|---|---|---|
| | | Quinto Dec.] |
| | Fact 9: Plaintiff secured a letter from T-Mobile's Retail Store Manager, James Truong, confirming that T-Mobile does not maintain cellular telephone records for its prepaid customers as GEICO requested. Plaintiff provided this letter to GEICO.<br><br>(*See* Exhibit 8 to Wright Depo, attached as Ex. I). | Disputed. Plaintiff's letter did not confirm that his cell phone records "had never been available" or that they would not have been available had plaintiff timely requested to up-grade his account.<br>[P's Exh. I (Geico's request and Truong's letter).] |
| | Fact 10: GEICO incorrectly assumed, but did not have actual knowledge, that Plaintiff could obtain his prepaid cellular telephone records in other ways such as changing his plan from a prepaid account to a monthly "post-paid" account.<br><br>(Monroe Depo, pp. 155:25-157:10, Ex. B; Wright Depo, pp. 67:16-68:20, 88:20-89:14, Ex. F; Grothen Depo, pp. 140:6-141:11, Ex. E). | Disputed. Plaintiff's evidence does not establish that Geico's information (or assumption) was incorrect. Furthermore, T-Mobile does have cell phone records for its pre-paid accounts [see, P's Exh. J (5/22/2014 entry); Quinto Dec.] and based on the experience of multiple Geico personnel that other insureds who upgraded their pre-paid accounts with cell phone carriers were able to obtain their records, it was reasonable to believe that plaintiff could have obtained his records had he timely upgraded his account.<br>[Wright Depo 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14 (Exh. F to P's evidence); Grothen Depo 97: 12, 98: 10-11, 23-24 – Exh. E to P's evidence.] |
| | Fact 11: Plaintiff could not obtain his prepaid cellular phone records from T-Mobile, which John Quinto, the claims examiner assigned to Plaintiff's claim, confirmed with T-Mobile on May 22, 2014.<br><br>(*See* Atlas Notes, Defendant's internal customer database, page DEF001275, attached as Ex. J). | Disputed. The cited evidence does not establish the fact, and in fact refutes the fact. Exh. J states the Quinto confirmed with T-Mobile that it does have cell phone records for pre-paid accounts, based on which Geico believed that had plaintiff timely upgraded his account or even explained that he needed to provide his records to his insurer for investigation of his claim, he could have obtained his records.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| 3. Defendant breached the contract. | Fact 12: GEICO denied Plaintiff's claim for "failure to cooperate" solely because Plaintiff did not provide his unavailable prepaid cellular telephone records.<br><br>(*See* Exhibit 19 to Quinto Depo, attached as Ex. K). | Undisputed that Geico denied plaintiff's claim for failure to cooperate for failure to provide cell phone records. Disputed that plaintiff's records were "unavailable" for the reasons set forth in fact 11 above. |

| | | |
|---|---|---|
| | | |
| | Fact 13: Because Plaintiff could not provide his prepaid cellular telephone records, as such records were not maintained by T-Mobile, GEICO denied his claim based on a "lack of cooperation".<br><br>(*See* Exhibit 19 to Quinto Depo, attached as Ex. K). | Undisputed that Geico denied plaintiff's claim based on failure to cooperate.<br>Disputed that T-Mobile did not maintain cell phone records for pre-paid accounts for reasons set forth in fact 11 above.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| 4. Plaintiff has suffered damages. | Fact 14: Plaintiff did not receive any payment from GEICO for his automobile theft claim due to GEICO's denial of his claim.<br><br>(*See* Exhibit 19 to Quinto Depo, attached as Ex. K; Monroe Depo. pp. 134:6-9, 135:19-23, 139:1-12, 164:2-10, Ex. B) | Undisputed. |
| | Fact 15: Plaintiff's car, which he purchased for approximately $30,000, was paid off as of October 2013. The estimated value of his car as of September 2013 is $18,250, in addition to $7,000 of enhancements for a total value of $25,250.<br><br>(Monroe Depo, pp. 38:20-40:5, Ex. B; *See* Kelly Blue Book Certified Value Report, attached as Ex. V). | Disputed. Plaintiff's evidence does not establish the fact. Plaintiff does not provide Monroe's cited deposition testimony. Furthermore, the cited evidence does not establish that there were $7,000 worth of enhancements to plaintiff's car. |
| **Count 1 (continued):**<br><br>**Defendant breached its implied covenant of good faith and fair dealing** | | |
| 1. Benefits due under the policy were withheld; and | Fact 16: GEICO has failed to pay Plaintiff for the timely and legitimate claim he filed regarding the theft of his 2006 Lexus, which was insured by Defendant on the date of loss.<br><br>(Ex. K; Ex. L; Monroe Depo pp. 78:6-10, 84:4-22, Ex. B). | Undisputed that Geico denied plaintiff's claim. Geico cannot admit or deny that the claim was legitimate because plaintiff's failure to provide cell phone records impeded Geico's ability to complete its investigation.<br>[Quinto Dec., ¶¶ 10, 23 Wright Dec., ¶¶ 24, 25.]<br>However, Geico asserts that the fact is irrelevant because Geico denied plaintiff's claim for failure to cooperate, not on the ground that the claim was invalid.<br>[See, P's UMF 12.] |

| | | |
|---|---|---|
| 2. The reason for withholding the benefits was unreasonable or without proper cause. | Fact 17: After Plaintiff filed his insurance claim for the theft of his vehicle, GEICO requested that Plaintiff provide a notarized vehicle theft report, and that Plaintiff participate in a recorded interview to aid and assist in the evaluation and investigation of Plaintiff's insurance claim. Larry Wright, GEICO's claims investigator, later requested that Plaintiff provide witness information and bank records.<br><br>(Exhibit 11 to Quinto Depo, attached as Ex. M, Exhibit 14 to Quinto Depo, attached as Ex. N; Exhibit 17 to Quinto Depo, Ex. G; Quinto Depo, pp. 80:23-81:6, Ex. D; Wright Depo, pp. 144:22-145:16, Ex. F). | Undisputed. |
| | Fact 18: Plaintiff provided these documents and participated in the recorded interview.<br><br>(*See* Exhibit 17 to Quinto Depo, Ex. G; Quinto Depo, pp. 80:23-81:6, 95:18-96:1, Ex. D; Wright Depo, pp. 132:11-18, 144:22-145:16, Ex. F). | Undisputed that plaintiff ultimately provided the identified documents after his claim had been denied. Undisputed that plaintiff participated in a recorded statement.<br>**Additional fact:** Plaintiff provided false answers to a number of questions in the recorded interview. [Exh. C to Wright Dec., pp. 3, 14, 15; Exhs. O, Q, S, T, U to Maleki Dec., Exh. AA to Muhlestein Dec.] |
| | Fact 19: GEICO, and specifically Larry Wright, also requested that Plaintiff provide his cellular telephone records for 9/1/13 – 10/1/13, the month in which the theft of his vehicle occurred.<br><br>(Wright Depo, p. 174:2-14, Ex. F). | Undisputed. |
| | Fact 20: After multiple attempts to retrieve these cellular phone records from his provider, T-Mobile, Plaintiff communicated to GEICO that such records were not obtainable and could not be provided to GEICO because T-Mobile did not maintain such records for its prepaid phone customers.<br><br>(Monroe Depo, pp. 171:5-172-23, Ex. B; Wright Depo, pp. 82:5-19, 88:7-16, 90:23-91:2, 127:4-128:22, Ex. F; Quinto Depo, p. 141:13-19, Ex. D; Exhibit 5 to Wright Deposition, Ex. H, showing T-Mobile Internal notes and stating that Chris Monroe called in on | Undisputed that plaintiff offered undocumented testimony that he made multiple telephone calls asking for his cell phone records.<br>Undisputed that plaintiff communicated to Geico that he could not obtain records for his pre-paid cell phone account.<br>Disputed that he could not obtain his cell phone records because T-Mobile did not maintain cell phone records for pre-paid accounts.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.]<br>See Objection to Exh. H at UMF |

| | | |
|---|---|---|
| | 10/14/2013 "to see if we could help him print out his cell and SMS records, edu cx we don't keep those records in our database…"; Ex. 9 to Monroe Depo, Ex. R, "MON 10/14/13 430 PM LIZ CUSTOMER SERVICE REP, NO RECORDS FOR PREPAID CUSTOMERS WAS GOING TO UPGRADE PLAN BUT WOULDN'T COVER DATES 9/1/13-10/1/13"). | 6, above. **Additional fact:** Plaintiff does not know who Liz is or who she worked for and he does not know if the note reflects information Liz told him. [P Depo 2, pp. 153: 2-8, 12-21; 154: 13 – 155: 2, 7-8.] |
| | Fact 21: GEICO admits that Plaintiff communicated on multiple occasions that T-Mobile did not maintain records for its prepaid phone customers.<br><br>(*See*, *e.g.* SIU Report, Ex. A, ("Monroe related that his cell carrier would not provide the records; they informed him that records are not available to prepaid customers."); (Wright Depo, pp. 82:5-19, 88:7-16, 90:23-91:2, 127:4-128:22, Ex. F). | Undisputed. |
| | Fact 22: GEICO subsequently sent Plaintiff several letters stating that GEICO was continuing to evaluate and investigate Plaintiff's claim.<br><br>(*See* Exhibits 12, 13, and 15 to Quinto Depo, attached as composite Ex. O) | Undisputed except as to the word "subsequently" which is ambiguous. |
| | Fact 23: On December 10, 2013, GEICO denied Plaintiff's claim for the first time.<br><br>(*See* Exhibit 16 to Quinto, attached as Ex. P). | Undisputed. |
| | Fact 24: Following this denial, Plaintiff resent GEICO the documents he had originally provided to GEICO via US Mail, which GEICO purportedly never received.<br><br>(*See* Atlas Notes, Ex. J). | Undisputed that plaintiff claims to have sent documents and that he subsequently sent documents. |
| | Fact 25: Larry Wright, the Claims Investigator who investigated Plaintiff's claim, confirmed that Defendant had originally received documents Plaintiff sent via USPS #7012 2210 0002 6774 1312, although it appears to have been sent to GEICO's Claims department rather than the Special Investigations Unit.<br><br>(SIU Report, Ex. A, "I researched the mailing number he provided, USPS # | Undisputed. |

| | | |
|---|---|---|
| | 7012 2210 0002 6774 1312 and noted that Geico had received the documentation.") | |
| | Fact 26: After receiving these documents, GEICO re-opened Plaintiff's claim on or around March 20, 2014.<br><br>(*See* Atlas Notes, Ex. J). | Undisputed. |
| | Fact 27: Prior to April 10, 2014, GEICO possessed every document it had originally requested with the exception of Plaintiff's prepaid cellular phone records which Plaintiff had repeatedly communicated he could not obtain or provide.<br><br>(*See* Exhibit 17 to Quinto Depo, Ex. G) ("Since then, we received the above documents from you [notarized vehicle theft questionnaire, legible bank records], but no cellular phone records. . . You related that the cell carrier would not provide these records, and that those records were not available to prepaid customers."). | Undisputed.<br>**Additional facts:** Plaintiff communicated that he could not obtain cell phone records for his pre-paid account. However, he never requested to upgrade his account as instructed by Wright. His reason for not requesting to upgrade his account was that he would lose money and that he would not be able to obtain records for the period prior to the upgrade, which he believed did not exist. He provided no evidence that he was told by anyone at T-Mobile that such records did not exist. Evidence establishes that they did exist. Plaintiff never asked Geico to pay for the cost of an upgrade.<br>[P Depo 2, pp. 155: 16 – 157: 4, 12-20.] |
| | Fact 28: On April 10, 2014, GEICO denied Plaintiff's claim for a second time.<br><br>(*See* Exhibit 17 to Quinto Depo, Ex. G). | Undisputed. |
| | Fact 29: Despite denying Plaintiff's claim solely because he could not provide his prepaid cellular phone records, GEICO did not know whether T-Mobile actually maintained cellular phone records for its prepaid customers when it denied Plaintiff's claim.<br><br>(Quinto Depo, p. 148:16-24, Ex. D; Wright Depo, p. 70:5-23, 78:7-19, Ex. F). | Undisputed that Geico denied plaintiff's claim.<br>Disputed that plaintiff could not provide his cell phone records inasmuch as he did not upgrade his account to obtain his records.<br>[P Depo 2, pp. 155: 16 – 157: 4.]<br>Disputed that Geico did not know whether T-Mobile actually maintained cell phone records for prepaid customers. Quinto confirmed with T-Mobile that records for pre-paid accounts do initially exist and can be provided to law enforcement, etc., and presumably to the customer upon an explanation of need (as opposed to a monthly print-out of the call detail |

| | | |
|---|---|---|
| | | which is not a service provided for a pre-paid account). [P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| | Fact 30: GEICO speculated that a prepaid customer such as Plaintiff could change his cellular phone plan to obtain his previous phone records; however, GEICO does not know whether T-Mobile's prepaid phone customers can change their cellular phone plan to access their previous months' cellular phone records. In fact, the evidence in the record demonstrates that they cannot.<br><br>(Grothen Depo, pp. 94:23-95:18, 140: 5-24, Ex. E; Wright Depo, pp. 76:21-77:3, Ex. F; Quinto Depo, p. 58:2-59:16, Ex. D..) | Disputed. Wright testified that he did have knowledge, based on his law enforcement background, that cell phone records for pre-paid accounts exist, and that he had knowledge, based on his experience with insureds who were told that their pre-paid account records were not available, but were able to obtain the records after upgrading their accounts and information shared among SIU investigators and based on his own personal inquiries, that cell phone records that are not made available to pre-paid customers can be obtained from cell phone companies when the account is upgraded. He testified that it was his belief that records for pre-paid accounts exist and that that was true as to T-Mobile in 2013. [Wright Depo 69: 21 – 70: 1; 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14, 21-24; 78: 4-6; 82: 5-12.] |
| | Fact 31: Plaintiff then contacted the California Department of Insurance seeking an investigation into GEICO's denial of his claim. As a result of this inquiry, GEICO again reopened Plaintiff's claim on May 6, 2014.<br><br>(*See* Exhibit 18 to Quinto Depo, attached as Ex. Q). | Undisputed except as to the fact that Geico reopened plaintiff's claim, which is not established by the cited evidence. |
| | Fact 32: On May 6, 2014, GEICO requested via letter that Plaintiff provide written confirmation from T-Mobile that his prepaid cellular phone records were never available from T-Mobile in order to re-evaluate the denial of Plaintiff's claim.<br><br>(*See* Exhibit 18 to Quinto Depo, Ex. Q) ("You recently advised us that due to the length of time that has elapsed, the cell phone records we requested are no longer available through your phone carrier. This lapse has impeded us form being able to complete our investigation of this loss. If this is incorrect and these records were never available through your phone carrier, we need a letter from the phone | Undisputed. |

| | | |
|---|---|---|
| | company confirming this. . . Once the information we requested is received, we will be able to re-evaluate our position.”). | |
| | Fact 33: On May 14, 2014, Plaintiff provided GEICO with confirmation from T-Mobile via a 3 page fax which contained a letter from T-Mobile’s Retail Store Manager, James Truong stating that “Mr. Christopher Monroe came in the store to inquire about his cell phone records but due to his pre-paid account with T-Mobile we do not hold phone records for pre-paid phone number 408-688-4512.”<br><br>(*See* Exhibit 8 to Larry Wright, Ex. I) | Undisputed that plaintiff provided the quoted letter. Disputed that the letter was the requested confirmation, inasmuch as it did not state that plaintiff's cell phone records were never available or that had plaintiff upgraded his account he could not have obtained his records.<br>[P's Exh. I (Geico's request and Truong's letter).] |
| | Fact 34: John Quinto, Plaintiff’s claim examiner, testified that this letter meant that Plaintiff’s prepaid cellular phone records were not available.<br><br>(Quinto Depo, pp. 144:20-145:11, 146:20-147:6, Ex. D). | Disputed. The cited evidence does not establish the fact. Quinto testified that the letter "does make a statement about the availability of the phone records" and that plaintiff intended to convey that records were not available for that prepaid phone number.<br>[Quinto Depo pp. 144:20-145:11, 146:20-147:6 (P's Exh. D.]<br>**Additional fact:** Quinto testified immediately after the cited testimony that the letter did not warrant paying plaintiff's claim because Wright had given plaintiff specific instruction as to how he could get cell phone records by establishing an account that was not pre-paid.<br>Furthermore, Quinto confirmed with T-Mobile that records for pre-paid accounts do initially exist and can be provided to law enforcement, etc., and presumably to the customer upon an explanation of need (as opposed to a monthly print-out of the call detail which is not a service provided for a pre-paid account).<br>[Quinto Depo 147: 7-13 (P's Exh. D); P's Exh. J (5/22/2014 entry); Quinto Dec..] |
| | Fact 35: Lon Grothen, the Regional Liability Administrator above Mr. Quinto who had the ultimate authority to deny Plaintiff’s claim, also admitted that this letter confirmed that T-Mobile does not maintain cell phone | Disputed as phrased. Grothen testified that the letter says that T-Mobile does not maintain cell phone records for prepaid phone customers. He did not admit that the letter confirmed that fact. |

| | | |
|---|---|---|
| | records for its prepaid phone customers such as Plaintiff.<br><br>(Grothen Depo, pp. 19:16-20:3, 110:9-24, Ex. E). | [Grothen Depo 110: 7-24. (P's Exh. E).]<br>**Additional facts:** Grothen testified that it was Geico's belief that plaintiff could have gotten his cell phone records.<br>[Grothen Depo 108: 6-7 (P's Exh. E).]<br>Quinto's supervisor noted Geico's understanding regarding the existence of cell phone records for pre-paid accounts in the Atlas system: "We believe the calls should register and be logged with the T-Mobile company and there would be a record of these calls not in the Sales Office but with T-Mobile."<br>[P Exh. J (5/20/2014 entry).]<br>Quinto also understood that records of calls made on pre-paid accounts exist.<br>[Quinto Dec., ¶ 3.] |
| | Fact 36: On May 22, 2014, Mr. Quinto further confirmed, independently, that T-Mobile does not maintain cellular phone records for its prepaid customers and that if a prepaid customer changed his account to a post-paid account, it would only provide records from that day forward.<br><br>(*See* Ex. J, Atlas Record Notes entered by John Quinto on 05/22/2014, DEF001275) ("called and s/w tmobile customer service, 800-866-2453. no cell rcds for pre-paid acct even if t-mobile towers used for pre-paid or post-paid accts. if pre-paid converted to post-paid, only rcds avail online from the time of conversion to post-paid . . . s/w adam. no cell rcds available for pre-paid accts."); Grothen Depo pp. 28:15-29:9 "All claim notes are housed in ATLAS", Ex. E). | Disputed. T-Mobile confirmed to claims representative Quinto that records for pre-paid cell phones do initially exist and can be provided to law enforcement, etc., and presumably to the customer upon an explanation of need (as opposed to a monthly print-out of the call detail which is not a service provided for a pre-paid account).<br>Plaintiff omitted from the quotation of the entry the following critical language: "no cell rcds available for pre-paid accts. clarified that not avail to genl public, but is avail to law enforcement, etc." This statement confirmed to Quinto that records for prepaid accounts do exist and can be provided to law enforcement, etc., and presumably to a customer for purposes of providing it to his insurance company for investigation of a claim.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec., ¶¶ 6, 8.] |

| | | |
|---|---|---|
| | Fact 37: Mr. Wright, the SIU [Special Investigation Unit] investigator responsible for investigating Plaintiff's claim and the person whose SIU report Mr. Quinto used as his sole justification for recommending to Mr. Grothen that Plaintiff's claim be denied, does not recall making any effort to confirm that Plaintiff could have somehow obtained his prepaid cellular phone records from T-Mobile.<br><br>(Wright Depo, pp. 76:21-77:3, <u>Ex. F</u>; Quinto Depo, p. 58:2-59:16, <u>Ex. D</u>). | Disputed as phrased. Wright testified that beyond his understanding based on his experience with other insureds, his experience as a law enforcement officer, and his communications with other SIU investigators that records on pre-paid accounts can be obtained by upgrading the account, he does not recall whether he verified plaintiff's information with T-Mobile.<br>[Wright Depo 76: 21 – 77: 3.] |
| | Fact 38: Despite Plaintiff providing GEICO with the confirmation letter from T-Mobile and Mr. Quinto confirming that Plaintiff's prepaid records were not available from T-Mobile, GEICO denied Plaintiff's claim for a third and final time on May 29, 2014.<br><br>(*See* Exhibit 19 to Deposition of John Quinto, <u>Ex. K</u>). | Undisputed that Geico denied plaintiff's claim for a third and final time on May 29, 2014.<br>The remainder of the fact is disputed. The letter plaintiff provided does not confirm that plaintiff's cell phone records were never available or that he could not have obtained the cell phone records had he timely upgraded his account.<br>[P's Exh. 19.]<br>Quinto confirmed with T-Mobile that records for prepaid accounts do exist and can be provided to law enforcement, etc., and presumably to a customer for purposes of providing it to his insurance company for investigation of a claim.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| | Fact 39: GEICO denied Plaintiff's claim on May 29, 2014 solely because Plaintiff did not provide his cellular phone records for his prepaid cell phone.<br><br>(Quinto Depo, p. 142:7-13, <u>Ex. D</u>; Grothen, p. 89:2-5, <u>Ex. E</u>; Monroe Depo., p. 135:19-23, <u>Ex. B</u>). (Fax from Larry Wright to John Quinto on 3/31/2014 "His choice not to provide us phone records has prejudiced our ability to conduct a thorough claims investigation." DEF001233, attached as <u>Ex. S</u>). | Undisputed. |
| | Fact 40: Mr. Grothen, the individual who denied Plaintiff's claim for lack of cell phone records, testified that his entire belief that Plaintiff could have | Disputed. Grothen testified that he relied on the experience of the SIU investigator, on his report and on statements made by him. He |

| | | |
|---|---|---|
| | somehow obtained his cell phone records was based on Mr. Wright's SIU written report.<br><br>(Grothen Depo, pp. 140:6-141:11, Ex. E). | testified that the SIU investigator had been through the process of obtaining cell phone records before and would know how to do it.<br>[Grothen Depo 140: 13 – 141: 5.] |
| | Fact 41: Mr. Grothen further testified that if this belief turned out to be incorrect and Plaintiff could not have obtained his prepaid cellular phone records, he would re-evaluate Plaintiff's claim in its entirety.<br><br>(Grothen Depo, pp. 140:6-141:11, Ex. E). | Undisputed. |
| | Fact 42: Mr. Wright did not know whether Plaintiff could have obtained his prepaid cellular phone records when he provided his written report and has no personal knowledge that T-Mobile, or any other cell phone carrier, maintains such records for its prepaid cellular phone customers.<br><br>(Wright Depo, pp. 67:16-68:20, 70:5-23, 78:7-19, 88:20-89:14, Ex. F). | Disputed. Wright testified that he did have knowledge, based on his law enforcement background, that cell phone records for pre-paid accounts exist, and that he had knowledge, based on his experience with insureds who were told that their pre-paid account records were not available, but were able to obtain the records after upgrading their accounts and information shared among SIU investigators and based on his own personal inquiries, that cell phone records that are not made available to pre-paid customers can be obtained from cell phone companies when the account is upgraded. He testified that it was his belief that records for pre-paid accounts exist and that that was true as to T-Mobile in 2013.<br>[Wright Depo 69: 21 – 70: 1; 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14, 21-24; 78: 4-6; 82: 5-12.] |
| | Fact 43: Furthermore, Mr. Wright did not and does not know whether a T-Mobile customer could change or upgrade his plan from a prepaid account to a monthly or post-paid account to obtain his prior months cellular phone records.<br><br>(Wright Depo, pp. 67:16-68:20, 70:5-23, 78:7-19, 88:20-89:14, Ex. F). | See, Response to fact 43 above. |
| | Fact 44: Mr. Wright's sole belief that Plaintiff could upgrade his account to obtain his prepaid cell phone records was based on second hand discussions with other GEICO employees, which he personally never confirmed. (Wright Depo 67:1-68:20; 71:23-75:14, Ex. F). | Disputed. Disputed. Wright testified that he had knowledge, based on his law enforcement background, that cell phone records for pre-paid accounts exist, and that he had knowledge, based on his experience with insureds who were told that their pre-paid account records were not available, |

| | | |
|---|---|---|
| | | but were able to obtain the records after upgrading their accounts and information shared among SIU investigators and based on his own personal inquiries, that cell phone records that are not made available to pre-paid customers can be obtained from cell phone companies when the account is upgraded.<br>[Wright Depo 69: 21 – 70: 1; 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14, 21-24; 78: 4-6; 82: 5-12.] |
| | Fact 45: GEICO's "Claims Manual" says the investigators are to "[a]void drawing conclusions based on assumption or speculation. An erroneous conclusion can make the difference between settlement and denial. If the denial is unsound, the result may be a complaint or a lawsuit, either of which could have been avoided."<br><br>(*See* Claims Manual, Chapter V Investigation p. V-2, Ex. T). | Undisputed. |
| | Fact 46: GEICO's claims investigator and SIU investigator testified that they did not know what else Plaintiff could have done to obtain and provide his prepaid cellular phone records.<br><br>(Quinto Depo, p. 83:4-14, Ex. D; Wright Depo, p. 88:7-25, Ex. F). | Geico asserts that what else plaintiff might have done to obtain his records is irrelevant because he admits that he did not do what he was instructed to do, which was to upgrade his plan.<br>Disputed in that the testimony is taken out of context. Quinto testified that he was not sure what transpired after plaintiff was requested to provide cell phone records and that he wouldn't be able to answer what else could be done and would refer the customer to the investigator for that information. [Quinto Depo 83: 7-15; 84: 4-14 (P's Exh. D).]<br>In response to a question as to what Wright would have done to get the records had he been the insured, he responded, "I would have . . . changed my policy or my service plan as I directed him to do."<br>[Wright Depo 89: 1-5.] |
| | Fact 47: Mr. Grothen testified that GEICO is obligated to make a determination regarding coverage based on the information that they have in their possession. | Disputed in that the testimony is taken out of context. Grothen testified that the insured is obligated to provide sufficient information for Geico to make a determination as to the validity of |

| | | |
|---|---|---|
| | (Grothen Depo, p. 77:4-78:11, Ex. E). | the claim. Assuming that has occurred and the claim has not been denied for failure to cooperate, then Geico has an obligation to make a determination regarding coverage, based on the best information Geico has.<br>[Grothen Depo 77: 15 - 78: 11.] |
| | Fact 48: Mr. Grothen also testified that if Plaintiff had provided confirmation that his prepaid cellular telephone records were never available (which he did as evidenced in Ex. I) then GEICO **could not have denied** Plaintiff's claim based on a failure to cooperate. Instead, GEICO would have to examine Plaintiff's file as it was and if there was no evidence of any misrepresentations, GEICO would be required to pay his claim.<br><br>(Grothen Depo, pp. 100:7-24, 102:3-23, 107:10-23, 113:9-114:12, Ex. E). | Undisputed except as to the parenthetical. Plaintiff's letter did not confirm that his cell phone records were never available or that had he timely upgraded his account from pre-paid he could not have obtained his records.<br>[P's Exh. I.]<br>Furthermore, Quinto confirmed with T-Mobile that records for prepaid accounts do exist and can be provided to law enforcement, etc., and presumably to a customer for purposes of providing it to his insurance company for investigation of a claim.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| | Fact 49: Because GEICO could no longer deny Plaintiff's claim for lack of cooperation based on his inability to produce his prepaid cellular phone records that did not exist, GEICO was required to examine Plaintiff's claim file for evidence of misrepresentation or fraud.<br><br>(Grothen Depo, pp. 102:24-104:25, Ex. E). | Geico asserts that this "fact" is argument, not fact. Geico disputes the premises that Geico could not deny plaintiff's claims for failure to cooperate, that records for his pre-paid cell phone account did not initially exist. and that he could not have obtained them by upgrading his account as not established.<br>[P Depo 2, pp. 156: 5-13, 24 - 157: 4, 12-16; P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| | Fact 50: When conducting this examination, GEICO must pay a claim if it only has a suspicion of fraud or misrepresentation; GEICO cannot deny a claim unless it has evidence of fraud or misrepresentation.<br><br>(Grothen Depo, pp. 59:11-60:8, 61:22-62:6, 62:18-63-3, Ex. E). | Geico asserts that this fact is irrelevant, inasmuch as Gecio denied plaintiff's claim for failure to cooperate, not for fraud or misrepresentation. (See P's UMF 12.) Geico was impeded from completing its investigation by plaintiff's failure to provide his cell phone records. However, Geico does not dispute that it must have evidence of fraud or misrepresentation to deny a claim on that ground.<br>[Quinto Dec., ¶¶ 10, 23; Wright Dec., ¶¶ 24, 25.] |
| | Fact 51: There exists no evidence of fraud or misrepresentation by Plaintiff in submitting his insurance claim or | Geico asserts that this fact is irrelevant, inasmuch as Gecio denied plaintiff's claim for failure |

| | | |
|---|---|---|
| | that he was involved in any way in the theft of his vehicle.<br><br>(Quinto Depo, pp. 102:22-103:14, Ex. D; Grothen Depo, p. 87:9-21, Ex. E; Wright Depo, pp. 124:4-15, Ex. F). | to cooperate in Geico's investigation and failure to assist in securing evidence, not for fraud or misrepresentation. Geico was impeded from completing its investigation by plaintiff's failure to provide his cell phone records.<br>[Quinto Dec., ¶¶ 10, 23; Wright Dec., ¶¶ 24, 25.] |
| | Fact 52: Therefore, Defendant's denial of Plaintiff's claim was in bad faith and GEICO should have paid Plaintiff's claim.<br><br>(Grothen Depo, pp. 100:7-24, 102:3-23, 107:10-23, 113:9-114:12, Ex. E). | Geico asserts that this "fact" is argument, not fact. Geico further asserts that this "fact" is irrelevant, inasmuch as Gecio denied plaintiff's claim for failure to cooperate in Geico's investigation and failure to assist in securing evidence, not for fraud or misrepresentation. (See P's UMF 12.) Geico was impeded from completing its investigation by plaintiff's failure to provide his cell phone records.<br>[Quinto Dec., ¶¶ 10, 23; Wright Dec., ¶¶ 24, 25.]<br>Furthermore, although there was no dispositive proof of fraud, there was evidence suggesting the possibility of fraud that warranted further investigation that Geico was unable to perform.<br>[P Depo 1, pp. 14: 16-19, 24 – 15: 3; 17: 19 – 18: 5; 19: 23-25; 20: 3-13, 18 – 21: 2, 4-9; 27: 20-23; 42: 17 – 44: 5; 45: 18-2; 57: 16 – 58: 1; 61: 4-6; 63: 18-21; 64: 3-16; Quinto Dec., ¶¶ 7, 8, 10; Exh. F to Quinto Dec.; Exhs. B, C to Wright Dec., pp. 3, 5-8, 12, 13, 18-20, 25; P Depo 2, pp. 17: 19 – 18: 2; 30: 25 – 31: 22; 56: 14-15, 20-25; 57: 18-23; 73: 11-17; 78: 6-10; 96: 9-13; 176: 9-14; Wright Dec., ¶ 23; Quinto Dec., ¶ 19.] |
| | Fact 53: Plaintiff's vehicle has not been recovered.<br><br>(Monroe Depo, p. 34:15-17, Ex. B) | Undisputed. |
| | Fact 54: Plaintiff has suffered damages as a result of his claim being denied, in that Plaintiff has not had the use and enjoyment of his car and has been forced to hire attorneys to prosecute his claim against GEICO to recover for his loss. | Undisputed factually. However, attorney's fees are not recoverable damages in a claim for breach of contract unless the contract so provides. Furthermore, plaintiff does not provide the cited deposition testimony. |

| | | |
|---|---|---|
| | (*See* Atlas Notes, Ex. J; Monroe Depo, pp. 36:25-37:3, Ex. B). | |

I attest that the evidence cited herein fairly and accurately supports or disputes the facts as asserted.

DATED: December 22, 2017

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/

Dennis B. Kass
Richard Garcia
Alexandra C. Seibert
Ladell Hulet Muhlestein
Attorneys for GEICO GENERAL INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is 333 Bush Street, 27th Floor, San Francisco, CA 94104.

On December 22, 2017, I served true copies of the following document(s) described as **DEFENDANT GEICO GENERAL INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 22, 2017, at San Francisco, California.

/s/
Lisette Estevez-Watkins

**SERVICE LIST**
***Christopher Monroe v. Geico General Insurance Co.***
**Case No. 14-CV-05174-HRL14-CV-05174-EJD**

**Bradley Ross Bozarth**
Guenard & Bozarth, LLP
8830 Elk Grove Blvd.
Elk Grove, CA 95624
916-714-7672
919-7149031 (fax)
rbozarth@gblegal.com

**Attorney for Christopher T. Monroe**
*(Plaintiff)*

**Gary Alan Waldron**
**Sherry Sue Bragg**
Weintraub Tobin
23 Corporate Plaza Dr.
Suite 200
Newport Beach, CA 92660
949-760-0204
gwaldron@weintraub.com
sbragg@weintraub.com

**Attorneys for Christopher T. Monroe**
*(Plaintiff)*

**Kristin E. Hobbs**
Hobbs Law Group
1340 E. Route 66
Suite 210
Glendora, CA 91740
626-782-4520
k.hobbs@hobbslawgroup.com

**Attorney for Christopher T. Monroe**
*(Plaintiff)*

**Perry Michael Yancey**
**James Michael Terrell**
**Patrick Clayton Marshall**
McCallum, Methvin & Terrell, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
205-939-0199 ext. 105
205-939-0399 (fax)
myancey@mmlaw.net
jterrell@mmlaw.net

**Attorneys for Christopher T. Monroe**
*(Plaintiff)*