*Counsel for Plaintiff:*
James M. Terrell (Appearance *Pro Hac Vice*)
Email: jterrell@mmlaw.net
P. Michael Yancey (Appearance *Pro Hac Vice*)
Email: myancey@mmlaw.net
Patrick C. Marshall (Appearance *Pro Hac Vice*)
Email: pmarshall@mmlaw.net
MCCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205
Tel: (205) 939-0199; Fax: (205) 939-0399

[additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

CHRISTOPHER T. MONROE,

Plaintiff,

v.

GIECO GENERAL INSURANCE COMPANY,

Defendant.

Case No. 14-CV-05174-HRL

**PLAINTIFF'S REPLY TO DEFENDANT GIECO INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUGMENT**

Date: January 25, 2017
Time: 9:00 a.m.
Ctrm.: 4

[Filed concurrently with Plaintiff's Reply in Support of its Cross-Motion for Partial Summary Judgement; and Plaintiff's Supplemental Appendix of Rebuttal Evidence]

COMES NOW Plaintiff Christopher T. Monroe and submits this Reply to Defendant GIECO Insurance Company's Response to Plaintiff's Separate Statement of Uncontroverted Facts in Support of Plaintiff's Cross-Motion for Partial Summary Judgment.

## UNCONTROVERTED FACTS

| Claim | Plaintiff's Undisputed Facts and Supporting Evidence | Defendant's Response/Supporting Evidence |
|---|---|---|
| **Claim 1: Breach of Contract** | | |
| 1. A contract existed between Plaintiff and GIECO. | Fact 1: GIECO issued Policy No. 4325-03-34-16 to Plaintiff on September 25, 2013 to insure Plaintiff's 2006 white Lexus GS 300 with Vin No. JTHBH96S065010679.<br><br>(Ex. A, Special Investigation Unit "SIU" Case Report Prepared by Larry Wright); (Deposition of Chris Monroe "Monroe Depo" p. 78:6-10, 84:4-22, attached as Ex. B; Insurance Card, attached as Ex. L). | Undisputed. |
| 2. Plaintiff performed under the contract. | Fact 2: Plaintiff paid GIECO the initial premium on the policy on September 25, 2013 at 11:48 am PST.<br><br>(Ex. A, SIU Case Report Prepared by Larry Wright); (Monroe Depo, pp. 78:6-10, 84:4-22, Ex. B). | Undisputed that plaintiff paid the minimum premium payment. |
| | Fact 3: Plaintiff's vehicle was stolen on September 26, 2013. Plaintiff reported his stolen vehicle to the police the same day.<br><br>(Police Report, Ex. C; Monroe Depo, pp. 94:21-96:13, Ex. B) | GIECO cannot admit or deny that plaintiff's vehicle was stolen inasmuch as there is evidence suggesting that the car was not stolen or that plaintiff colluded in the theft of the car, but his failure to cooperate and assist in securing evidence prevented the completion of GIECO's investigation.<br>[Quinto Dec., ¶¶ 10, 23; Wright Dec., ¶¶ 24, 25.]<br>The evidence does not support the date of the alleged theft. The cited police report notes that the alleged theft occurred between 11 a.m. on September 25 and 8 a.m. on September 26, 2013.<br>[P's Exh. C (police report).]<br>Undisputed that plaintiff reported his vehicle stolen to the police on |

| | | |
|---|---|---|
| | | September 26, 2013. |

**Moving Party's Reply:** The evidence cited by GIECO does not refute Fact No. 3. GIECO cites no "evidence suggesting that the car was not stolen or that Plaintiff colluded in the theft of the car." Instead, the evidence indicates there were no findings of fraud or misrepresentation by Plaintiff involving the theft of his vehicle and that Plaintiff's vehicle was stolen on September 26, 2013. (Quinto Depo, pp. 102:22-103:14, Ex. D; Grothen Depo, p. 87:9-21, Ex. E; Wright Depo, pp. 124:4-15, Ex. F; Police Report, Ex. C).

| | | |
|---|---|---|
| | Fact 4: Plaintiff provided GIECO with the police report, a recorded interview, a notarized vehicle theft questionnaire, witness information, and bank records per GIECO's request.<br><br>(Deposition of John Quinto "Quinto Depo" pp. 80:23-81:6, attached as Ex. D; Deposition of Lon Grothen "Grothen Depo" p. 90:2-11, attached as Ex. E; Deposition of Larry Wright "Wright Depo" pp. 103:21-104:22, attached as Ex. F; Exhibit 17 to Quinto Depo, attached as Ex. G). | Undisputed that plaintiff eventually provided GIECO with the first page of a vehicle theft report, a notarized theft questionnaire, witness information and bank records. Undisputed that plaintiff gave a recorded statement.<br>**Additional Facts**: Some of the listed documentation was not provided until many months after it was requested, and after multiple requests, and after the claim had been denied for failure to cooperate on December 10, 2013.<br>[Quinto Dec. ¶¶ 13, 15, 16, 18; Exhs. H, J to Quinto Dec.; Wright Dec., ¶¶ 18, 19, 23, 24, 25; Exhs. B, E to Wright Dec.]<br>Plaintiff provided false answers to a number of questions in the recorded interview.<br>[Exh. C to Wright Dec., pp. 3, 14, 15; Exhs. O, Q, S, T, U to Maleki Dec., Exh. AA to Muhlestein Dec.] |

**Moving Party's Reply to GIECO's "Additional Facts":** Plaintiff objects to GIECO's statement that "Plaintiff provided false answers to a number of questions in the recorded interview." This statement is both factually inaccurate and immaterial to Plaintiff's Fact No. 4. (*See* Plaintiff's Recorded Statement, pp. 14-16, Ex. C to GEICO's Motion for Summary Judgment or Summary Adjudication of Issues).

| | | |
|---|---|---|
| | Fact 5: GIECO also requested that Plaintiff provide his cellular telephone and text records.<br><br>(Wright Depo, p. 174:2-14, Ex. F). | Undisputed. |

| | | |
|---|---|---|
| | Fact 6: Plaintiff attempted to retrieve these records for GIECO on multiple occasions but was unable to obtain and provide such records because his cellular telephone provider, T-Mobile, informed him that they do not maintain cellular telephone records for prepaid customers.<br><br>(Monroe Depo, pp. 171:5-172-23, 173:18-174:22, Ex. B; Exhibit 5 to Wright Deposition, attached as Ex. H). | Undisputed that plaintiff testified that he made multiple telephone calls requesting a copy of his pre-paid cell phone records.<br>Disputed that T-Mobile has no cell phone records for pre-paid accounts. Plaintiff offers no evidence that the company has no records and GIECO claim representative Quinto confirmed with T-Mobile that it does initially have cell phone records for pre-paid accounts. [P's Exh. J (5/22/2014 entry); Quinto Dec.]<br>Disputed that plaintiff was unable to obtain his cell phone records, inasmuch as he admits that he did not attempt to upgrade his account and provides no evidence that he explained the unique nature of his need for the records to T-Mobile, which had the ability to provide his records.<br>[P Depo 2, pp. 156: 5-13, 24 - 157: 4, 12-16.] |
| | | **Objection to Evidence**: Exh. H, the only purported documentation that plaintiff contacted a cell phone company to request records, is objected on the ground that it lacks foundation. It is identified in plaintiff's counsel's declaration only as Exh. 5 to Wright's deposition. Wright testified, "I have no idea what this is." Thereafter he merely responded to questions asking him to confirm words on the document.<br>[Wright Depo 127: 7-128: 23.] |

**Moving Party's Reply:** The statements GIECO relies on in Mr. Quinto's second declaration are based on speculation, not fact, and should be stricken as contrary to his prior sworn testimony. (Quinto Depo, p. 148:16-24, Ex. D). Although GIECO disputes "that T-Mobile has no cell phone records for pre-paid accounts," Plaintiff contends, as stated above, that he was **informed by T-Mobile** that they did not maintain cell phone records for prepaid customers. This is evidenced by Plaintiff's sworn testimony cited above.

Mr. Quinto did not confirm that Plaintiff's pre-paid cell phone records were available to Plaintiff or that Plaintiff could have obtained them by upgrading his plan. The purported evidence cited by GIECO that Mr. Quinto confirmed "with T-Mobile that it does initially have cell phone

records for pre-paid accounts" is factually inaccurate and refuted by Mr. Quinto's own ATLAS notes. The 05/22/2014 Atlas Notes entered by Mr. Quinto state that:

> revd with supv. –called and s/w tmobile customer service, 800-866-2453. **no cell rcds for pre-paid acct even if t-mobile towers used for pre-paid or post-paid accts**. **If pre-paid converted to post-paid, only rcds avail online from the time of conversion to post-paid**. ---he xferred me to pre-paid acct dept, 877-778-2106. s/w adam. **No cell rcds available for pre-paid accts**. **Clarified that not avial to genl public**, **but is avial to law enforcement, etc**. I asked if he knew if any time-frame storage limitations. he said would be different dept that could answer that-legal dept. --- will make apt with rla, to discuss above.

(*See* 05/22/2014 Atlas Notes, Ex. J) (emphasis added). The Atlas notes do not show that Plaintiff's pre-paid cell phone records were "initially" available or ever available to **Plaintiff**. To the contrary, Mr. Quinto made **two separate notes** that T-Mobile does not maintain cell phone records for its pre-paid customers, and that such records are not available to the general public. The Atlas notes further confirm that Plaintiff could not have upgraded his plan to obtain such pre-paid cell phone records. These blatant misrepresentations of the information contained in Mr. Quinto's notes in which GIECO relies on throughout its Response are contrary to the ATLAS notes and should be disregarded by this Court.

GIECO further misstates that Plaintiff "did not attempt to upgrade his account." Plaintiff testified that he inquired whether upgrading his plan would allow him to obtain his prepaid phone records, at the instruction of Mr. Wright, and was told by T-Mobile that it would not.

> "A: Yeah. But I don't know how to explain it. **He wanted me to upgrade my plan. So this is me saying that I was doing what he was asking of me.** But it didn't make sense to do it, because I had already paid for a month, I would lose that money, and **what it was gonna accomplish wouldn't have helped anyways.**
> Q: Why wouldn't it have helped?
> A: Because he wanted records from whatever date to the 1st, like it's asking here. And when I called, it was after the 1st. And **if I upgraded then, it wouldn't have produced records they never ever had.**
>
> Q: Right. Okay. And so then he had told you, essentially, to look into doing this or to upgrade. And it sounds like your testimony is that it didn't make sense to do that because if you did upgrade it, you still wouldn't have had access to the records he wanted. Is that correct?
> A: Exactly."

(*See* Monroe Depo, pp. 156: 3-13, 156:22-157:4, Ex. B and Ex. W to Plaintiff's Supplemental Appendix of Rebuttal Evidence) (emphasis added). And regardless, even if Plaintiff had not done this, GIECO confirmed on its own that Plaintiff could not upgrade his plan to obtain his pre-paid cell phone records as stated above.

Furthermore, there is no evidence that if Plaintiff had "explained the unique nature of his need for the records to assist his insurer in its investigation of his claim" that Plaintiff could have obtained his records from T-Mobile as cited to in Mr. Quinto's second Declaration. (Quinto 2nd

Dec, ¶ 8). This is purely speculation by Mr. Quinto and unsupported by the record evidence.

**Moving Party's Reply to GIECO's Objection to Evidence:** GIECO's objection to Exhibit H ("Ex. H") should be disregarded, as Plaintiff provided Ex. H during discovery. During that time, GIECO could have but did not question its authenticity or object "on the ground that it lacks foundation." Thus, such objections should be considered waived. Furthermore, GIECO misstates that this is "the ***only*** purported documentation that plaintiff contacted a cell phone company to request records." Plaintiff also provided a letter from T-Mobile confirming that T-Mobile does not maintain cell phone records for its pre-paid cell phone customers. (*See* Exhibit 8 to Wright Depo, attached as Ex. I).

| | | |
|---|---|---|
| | Fact 7: Plaintiff communicated to GIECO that he could not provide his cellular telephone records because T-Mobile did not maintain such records for its prepaid customers.<br><br>(Monroe Depo, pp. 171:5-172-23, Ex. B; Wright Depo, pp. 82:5-19, 88:7-16, 90:23-91:2, 127:4-128:22, Ex. F; Quinto Depo, p. 141:13-19, Ex. D; Ex. H, (showing T-Mobile's internal customers notes for Plaintiff and stating that Plaintiff Chris Monroe called in on 10/14/2013 "to see if we could help him print out his cell and SMS records, edu cx we don't keep those records in our database…")) | Undisputed that plaintiff conveyed the stated information to GIECO, but disputed that the information was correct for the reasons stated in response to fact 6 above.<br>See Objection to Exh. H at UMF 6, above. |

**Moving Party's Reply:** *See* Reply to Fact 6.

| | | |
|---|---|---|
| | Fact 8: Plaintiff's cell phone provider, T-Mobile, further confirmed that upgrading his account to a monthly "post-paid" plan would not allow him to obtain his prepaid cell phone records, but instead, only his cell phone records from the date he changed his plan to a monthly plan forward. Plaintiff communicated this to GIECO on multiple occasions.<br><br>(*See* SIU Report, Ex. A, p. 6, "2013-10-30" "He [Plaintiff] has reported, in his documentation, that he is unable to obtain his phone and text records."; Ex. J, Atlas Notes, "recd handwritten note indicating no records for prepaid | Disputed. The evidence cited does not establish that T-Mobile confirmed that upgrading his plan would not allow plaintiff to obtain his prepaid cell phone records prior to the date of the upgrade. Neither the SIU report nor plaintiff's handwritten note establish that cell phone records prior to the date of upgrade would not be available. Furthermore, plaintiff testified that he did not know the source of the information on the note.<br>[P Depo 2, pp. 153: 2-8, 12-21; 154: 13 – 155: 2, 7-8.]<br>Not only is the fact not supported by plaintiff's evidence, it is refuted |

| | | |
|---|---|---|
| | customers. Was going to upgrade plan but wouldn't cover dates 9/1/13-10/1/13."; Ex. 9 to Monroe Depo, attached as <u>Ex. R</u>). *See also* Def's MSJ, pp. 14-15. | by evidence that cell phone records for T-Mobile cell phone records are initially available.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| **Moving Party's Reply:** *See* Reply to Fact 6. Furthermore, Plaintiff's handwritten note does establish that cell phone records prior to the date of upgrade would not be available as it states that Plaintiff "was going to upgrade plan but wouldn't cover dates 9/1/13-10/1/13." Even if Plaintiff had not done this, GIECO confirmed on its own that Plaintiff could not upgrade his plan to obtain his pre-paid cell phone records. (Ex. 9 to Monroe Depo, attached as <u>Ex. R</u>; *See also* Atlas Notes, <u>Ex. J</u>). | | |
| | Fact 9: Plaintiff secured a letter from T-Mobile's Retail Store Manager, James Truong, confirming that T-Mobile does not maintain cellular telephone records for its prepaid customers as GIECO requested. Plaintiff provided this letter to GIECO.<br><br>(*See* Exhibit 8 to Wright Depo, attached as <u>Ex. I</u>). | Disputed. Plaintiff's letter did not confirm that his cell phone records "had never been available" or that they would not have been available had plaintiff timely requested to up-grade his account.<br>[P's Exh. I (GIECO's request and Truong's letter).] |
| **Moving Party's Reply:** The evidence cited by GIECO does not refute Fact 9. Additionally, Mr. Quinto testified that Mr. Truong's letter confirmed that Plaintiff's pre-paid cell phone records were never available. (Quinto Depo, pp. 146:20-147:6, <u>Ex. D</u>) (Mr. Quinto: "Yeah, the language is 'We do not hold phone records for prepaid phone number,' such-and-such. Q: What does that mean to you? A: That it's not available for that prepaid phone number."). | | |
| | Fact 10: GIECO incorrectly assumed, but did not have actual knowledge, that Plaintiff could obtain his prepaid cellular telephone records in other ways such as changing his plan from a prepaid account to a monthly "post-paid" account.<br><br>(Monroe Depo, pp. 155:25-157:10, <u>Ex. B</u>; Wright Depo, pp. 67:16-68:20, 88:20-89:14, <u>Ex. F</u>; Grothen Depo, pp. 140:6-141:11, <u>Ex. E</u>). | Disputed. Plaintiff's evidence does not establish that GIECO's information (or assumption) was incorrect. Furthermore, T-Mobile does have cell phone records for its pre-paid accounts [see, P's Exh. J (5/22/2014 entry); Quinto Dec.] and based on the experience of multiple GIECO personnel that other insureds who upgraded their pre-paid accounts with cell phone carriers were able to obtain their records, it was reasonable to believe that plaintiff could have obtained his records had he timely upgraded his account.<br>[Wright Depo 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14 (Exh. F to |

| | | |
|---|---|---|
| | | P's evidence); Grothen Depo 97: 12, 98: 10-11, 23-24 – Exh. E to P's evidence.] |

**Moving Party's Reply:** GIECO's cited testimony does not dispute Plaintiff's Fact 10. As demonstrated in Reply No. 6, the ATLAS notes do not state that "T-Mobile does have cell phone records for its pre-paid accounts" that were obtainable by Plaintiff nor does it indicate that "plaintiff could have obtained his records had he timely upgraded his account." The testimony is based on improper assumptions rather than facts.

Plaintiff's Ex. J (5/22/2014 entry) states that "**if pre-paid converted to post-paid, only rcds avail online from the time of conversion to post-paid**. --- he xferred me to pre-paid acct dept. 877-778-2106. s/w adam. **No cell rcds available for pre-paid accts**. **clarified that not avail to genl public**, but is avail to law enforcement, etc."

The testimony of Mr. Wright cited by GIECO does not state that Mr. Wright knew that T-Mobile customers, or any other cell phone providers' customers, could obtain their pre-paid cell phone records by upgrading their plans. Mr. Wright testified that he has no personal knowledge that a pre-paid T-Mobile customer in 2013 could have upgraded his plan to obtain his cell phone records or that such records were even maintained by T-Mobile. Mr. Wright also testified that he believed he may have had knowledge about obtaining records in 2015, but that he had "no personal knowledge in 2013," and that although he had verified cell phone records were unavailable in the past he did not do so in 2013 nor did he recall whether he did it for Plaintiff. (Wright Depo, pp. 67:1-68:20, 70:5-8, 74:14-75:6, 75:25-77:3, 78:7-19, Ex. F).

Mr. Grothen testified that although he had "seen prepaid phone records", "he does not know for a fact whether T-Mobile maintains prepaid phone customer cell phone records in 2013" and that he had a T-Mobile account that was not a prepaid account. (Grothen Depo, pp. 98:10-99:16, Ex. E).

| | | |
|---|---|---|
| | Fact 11: Plaintiff could not obtain his prepaid cellular phone records from T-Mobile, which John Quinto, the claims examiner assigned to Plaintiff's claim, confirmed with T-Mobile on May 22, 2014.<br><br>(*See* Atlas Notes, Defendant's internal customer database, page DEF001275, attached as Ex. J). | Disputed. The cited evidence does not establish the fact, and in fact refutes the fact. Exh. J states the Quinto confirmed with T-Mobile that it does have cell phone records for pre-paid accounts, based on which GIECO believed that had plaintiff timely upgraded his account or even explained that he needed to provide his records to his insurer for investigation of his claim, he could have obtained his records.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |

**Moving Party's Reply:** *See* Reply to Fact 6 and 35. Furthermore, GIECO's belief that Plaintiff could have upgraded his account to obtain such records is based on an incorrect assumption by Mr. Quinto rather than a fact and is contrary to sworn testimony and documentary evidence. Such cited testimony by Mr. Quinto does not dispute Plaintiff's Fact No. 11.

| | | |
|---|---|---|
| 3. Defendant breached the contract. | Fact 12: GIECO denied Plaintiff's claim for "failure to cooperate" solely because Plaintiff did not provide his unavailable prepaid cellular telephone records.<br><br>(*See* Exhibit 19 to Quinto Depo, attached as Ex. K). | Undisputed that GIECO denied plaintiff's claim for failure to cooperate for failure to provide cell phone records. Disputed that plaintiff's records were "unavailable" for the reasons set forth in fact 11 above. |
| **Moving Party's Reply:** *See* Reply to Fact 11. | | |
| | Fact 13: Because Plaintiff could not provide his prepaid cellular telephone records, as such records were not maintained by T-Mobile, GIECO denied his claim based on a "lack of cooperation".<br><br>(*See* Exhibit 19 to Quinto Depo, attached as Ex. K). | Undisputed that GIECO denied plaintiff's claim based on failure to cooperate.<br>Disputed that T-Mobile did not maintain cell phone records for pre-paid accounts for reasons set forth in fact 11 above.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| **Moving Party's Reply:** *See* Reply to Fact 11. | | |
| 4. Plaintiff has suffered damages. | Fact 14: Plaintiff did not receive any payment from GIECO for his automobile theft claim due to GIECO's denial of his claim.<br><br>(*See* Exhibit 19 to Quinto Depo, attached as Ex. K; Monroe Depo. pp. 134:6-9, 135:19-23, 139:1-12, 164:2-10, Ex. B) | Undisputed. |
| | Fact 15: Plaintiff's car, which he purchased for approximately $30,000, was paid off as of October 2013. The estimated value of his car as of September 2013 is $18,250, in addition to $7,000 of enhancements for a total value of $25,250.<br><br>(Monroe Depo, pp. 38:20-40:5, Ex. B; *See* Kelly Blue Book Certified Value Report, attached as Ex. V). | Disputed. Plaintiff's evidence does not establish the fact. Plaintiff does not provide Monroe's cited deposition testimony. Furthermore, the cited evidence does not establish that there were $7,000 worth of enhancements to plaintiff's car. |
| **Count 1 (continued):** | | |

| | | |
|---|---|---|
| **Defendant breached its implied covenant of good faith and fair dealing** | | |
| 1. Benefits due under the policy were withheld; and | Fact 16: GIECO has failed to pay Plaintiff for the timely and legitimate claim he filed regarding the theft of his 2006 Lexus, which was insured by Defendant on the date of loss.<br><br>(Ex. K; Ex. L; Monroe Depo pp. 78:6-10, 84:4-22, Ex. B). | Undisputed that GIECO denied plaintiff's claim. GIECO cannot admit or deny that the claim was legitimate because plaintiff's failure to provide cell phone records impeded GIECO's ability to complete its investigation.<br>[Quinto Dec., ¶¶ 10, 23 Wright Dec., ¶¶ 24, 25.]<br>However, GIECO asserts that the fact is irrelevant because GIECO denied plaintiff's claim for failure to cooperate, not on the ground that the claim was invalid.<br>[See, P's UMF 12.] |
| 2. The reason for withholding the benefits was unreasonable or without proper cause. | Fact 17: After Plaintiff filed his insurance claim for the theft of his vehicle, GIECO requested that Plaintiff provide a notarized vehicle theft report, and that Plaintiff participate in a recorded interview to aid and assist in the evaluation and investigation of Plaintiff's insurance claim. Larry Wright, GIECO's claims investigator, later requested that Plaintiff provide witness information and bank records.<br><br>(Exhibit 11 to Quinto Depo, attached as Ex. M, Exhibit 14 to Quinto Depo, attached as Ex. N; Exhibit 17 to Quinto Depo, Ex. G; Quinto Depo, pp. 80:23-81:6, Ex. D; Wright Depo, pp. 144:22-145:16, Ex. F). | Undisputed. |
| | Fact 18: Plaintiff provided these documents and participated in the recorded interview.<br><br>(*See* Exhibit 17 to Quinto Depo, Ex. G; Quinto Depo, pp. 80:23-81:6, 95:18-96:1, Ex. D; Wright Depo, pp. 132:11-18, 144:22-145:16, Ex. F). | Undisputed that plaintiff ultimately provided the identified documents after his claim had been denied. Undisputed that plaintiff participated in a recorded statement.<br>**Additional fact:** Plaintiff provided false answers to a number of questions in the recorded interview. |

| | | |
|---|---|---|
| | | [Exh. C to Wright Dec., pp. 3, 14, 15; Exhs. O, Q, S, T, U to Maleki Dec., Exh. AA to Muhlestein Dec.] |
| **Moving Party's Reply:** *See* Reply to Fact 4. | | |
| | Fact 19: GIECO, and specifically Larry Wright, also requested that Plaintiff provide his cellular telephone records for 9/1/13 – 10/1/13, the month in which the theft of his vehicle occurred.<br><br>(Wright Depo, p. 174:2-14, Ex. F). | Undisputed. |
| | Fact 20: After multiple attempts to retrieve these cellular phone records from his provider, T-Mobile, Plaintiff communicated to GIECO that such records were not obtainable and could not be provided to GIECO because T-Mobile did not maintain such records for its prepaid phone customers.<br><br>(Monroe Depo, pp. 171:5-172-23, Ex. B; Wright Depo, pp. 82:5-19, 88:7-16, 90:23-91:2, 127:4-128:22, Ex. F; Quinto Depo, p. 141:13-19, Ex. D; Exhibit 5 to Wright Deposition, Ex. H, showing T-Mobile Internal notes and stating that Chris Monroe called in on 10/14/2013 "to see if we could help him print out his cell and SMS records, edu cx we don't keep those records in our database…"; Ex. 9 to Monroe Depo, Ex. R, "MON 10/14/13 430 PM LIZ CUSTOMER SERVICE REP, NO RECORDS FOR PREPAID CUSTOMERS WAS GOING TO UPGRADE PLAN BUT WOULDN'T COVER DATES 9/1/13-10/1/13"). | Undisputed that plaintiff offered undocumented testimony that he made multiple telephone calls asking for his cell phone records.<br>Undisputed that plaintiff communicated to GIECO that he could not obtain records for his pre-paid cell phone account.<br>Disputed that he could not obtain his cell phone records because T-Mobile did not maintain cell phone records for pre-paid accounts.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.]<br>See Objection to Exh. H at UMF 6, above.<br>**Additional fact:** Plaintiff does not know who Liz is or who she worked for and he does not know if the note reflects information Liz told him.<br>[P Depo 2, pp. 153: 2-8, 12-21; 154: 13 – 155: 2, 7-8.] |
| **Moving Party's Reply:** *See* Reply to Fact 6 and 35. Furthermore, GIECO's belief that Plaintiff could have upgraded his account to obtain such records is based on an incorrect assumption by Mr. Quinto rather than a fact and contrary to sworn testimony and documentary evidence. Such cited testimony by Mr. Quinto does not dispute Plaintiff's Fact No. 20. | | |
| | Fact 21: GIECO admits that Plaintiff | Undisputed. |

| | | |
|---|---|---|
| | communicated on multiple occasions that T-Mobile did not maintain records for its prepaid phone customers.<br><br>(*See, e.g.* SIU Report, Ex. A, ("Monroe related that his cell carrier would not provide the records; they informed him that records are not available to prepaid customers."); (Wright Depo, pp. 82:5-19, 88:7-16, 90:23-91:2, 127:4-128:22, Ex. F). | |
| | Fact 22: GIECO subsequently sent Plaintiff several letters stating that GIECO was continuing to evaluate and investigate Plaintiff's claim.<br><br>(*See* Exhibits 12, 13, and 15 to Quinto Depo, attached as composite Ex. O) | Undisputed except as to the word "subsequently" which is ambiguous. |
| | Fact 23: On December 10, 2013, GIECO denied Plaintiff's claim for the first time.<br><br>(*See* Exhibit 16 to Quinto, attached as Ex. P). | Undisputed. |
| | Fact 24: Following this denial, Plaintiff resent GIECO the documents he had originally provided to GIECO via US Mail, which GIECO purportedly never received.<br><br>(*See* Atlas Notes, Ex. J). | Undisputed that plaintiff claims to have sent documents and that he subsequently sent documents. |
| | Fact 25: Larry Wright, the Claims Investigator who investigated Plaintiff's claim, confirmed that Defendant had originally received documents Plaintiff sent via USPS #7012 2210 0002 6774 1312, although it appears to have been sent to GIECO's Claims department rather than the Special Investigations Unit.<br><br>(SIU Report, Ex. A, "I researched the mailing number he provided, USPS # 7012 2210 0002 6774 1312 and noted that GIECO had received the documentation.") | Undisputed. |
| | Fact 26: After receiving these | Undisputed. |

| | | |
|---|---|---|
| | documents, GIECO re-opened Plaintiff's claim on or around March 20, 2014.<br><br>(*See* Atlas Notes, Ex. J). | |
| | Fact 27: Prior to April 10, 2014, GIECO possessed every document it had originally requested with the exception of Plaintiff's prepaid cellular phone records which Plaintiff had repeatedly communicated he could not obtain or provide.<br><br>(*See* Exhibit 17 to Quinto Depo, Ex. G) ("Since then, we received the above documents from you [notarized vehicle theft questionnaire, legible bank records], but no cellular phone records. . . You related that the cell carrier would not provide these records, and that those records were not available to prepaid customers."). | Undisputed.<br>**Additional facts:** Plaintiff communicated that he could not obtain cell phone records for his pre-paid account. However, he never requested to upgrade his account as instructed by Wright. His reason for not requesting to upgrade his account was that he would lose money and that he would not be able to obtain records for the period prior to the upgrade, which he believed did not exist. He provided no evidence that he was told by anyone at T-Mobile that such records did not exist. Evidence establishes that they did exist. Plaintiff never asked GIECO to pay for the cost of an upgrade.<br>[P Depo 2, pp. 155: 16 – 157: 4, 12-20.] |
| **Moving Party's Reply to GIECO's "Additional facts":** *See* Reply to Fact 6. | | |
| | Fact 28: On April 10, 2014, GIECO denied Plaintiff's claim for a second time.<br><br>(*See* Exhibit 17 to Quinto Depo, Ex. G). | Undisputed. |
| | Fact 29: Despite denying Plaintiff's claim solely because he could not provide his prepaid cellular phone records, GIECO did not know whether T-Mobile actually maintained cellular phone records for its prepaid customers when it denied Plaintiff's claim.<br><br>(Quinto Depo, p. 148:16-24, Ex. D; Wright Depo, p. 70:5-23, 78:7-19, Ex. F). | Undisputed that GIECO denied plaintiff's claim.<br>Disputed that plaintiff could not provide his cell phone records inasmuch as he did not upgrade his account to obtain his records.<br>[P Depo 2, pp. 155: 16 – 157: 4.]<br>Disputed that GIECO did not know whether T-Mobile actually maintained cell phone records for prepaid customers. Quinto confirmed with T-Mobile that records for pre-paid accounts do initially exist and can be provided to law enforcement, |

| | | |
|---|---|---|
| | | etc., and presumably to the customer upon an explanation of need (as opposed to a monthly print-out of the call detail which is not a service provided for a pre-paid account).<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| **Moving Party's Reply:** *See* Reply to Fact 6. Additionally, GIECO cites to no evidence to support its improper assumption that prepaid records can be provided "**presumably** to the customer upon an explanation of need." | | |
| | Fact 30: GIECO speculated that a prepaid customer such as Plaintiff could change his cellular phone plan to obtain his previous phone records; however, GIECO does not know whether T-Mobile's prepaid phone customers can change their cellular phone plan to access their previous months' cellular phone records. In fact, the evidence in the record demonstrates that they cannot.<br><br>(Grothen Depo, pp. 94:23-95:18, 140: 5-24, <u>Ex. E</u>; Wright Depo, pp. 76:21-77:3, <u>Ex. F</u>; Quinto Depo, p. 58:2-59:16, <u>Ex. D</u>..) | Disputed. Wright testified that he did have knowledge, based on his law enforcement background, that cell phone records for pre-paid accounts exist, and that he had knowledge, based on his experience with insureds who were told that their pre-paid account records were not available, but were able to obtain the records after upgrading their accounts and information shared among SIU investigators and based on his own personal inquiries, that cell phone records that are not made available to pre-paid customers can be obtained from cell phone companies when the account is upgraded. He testified that it was his belief that records for pre-paid accounts exist and that that was true as to T-Mobile in 2013.<br>[Wright Depo 69: 21 – 70: 1; 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14, 21-24; 78: 4-6; 82: 5-12.] |
| **Moving Party's Reply:** The statements regarding Mr. Wright's purported knowledge of pre-paid cell phone records is not supported by the testimony cited by GIECO. Mr. Wright did not testify "that cell phone records that are not made available to pre-paid customers can be obtained from cell phone companies when the account is upgraded." To the contrary, Mr. Wright testified he had no personal knowledge that T-Mobile customers, or any other cell phone providers' customers, could obtain their pre-paid cell phone records by upgrading their plans. Mr. Wright testified that he has no personal knowledge that a pre-paid T-Mobile customer in 2013 could have upgraded his plan to obtain his cell phone records or that such records were even maintained by T-Mobile. Mr. Wright also testified that although he had verified cell phone records were unavailable in the past he did not do so in 2013 nor did he recall whether he did it for Plaintiff. Mr. Wright further testified that not all cell phone companies maintain cell phone records that are obtainable by a customer. (Wright Depo, pp. 67:1-68:20, 70:5-8, 74:14-75:6, 75:25-77:3, 78:7-19, <u>Ex. F</u>; Wright Depo, pp. 66:2-17, attached as <u>Ex. X</u> to Plaintiff's Supplemental Appendix of Rebuttal Evidence). | | |

| | | |
|---|---|---|
| Furthermore, Mr. Wright's sole belief that Plaintiff could upgrade his plan to obtain his records was based on second hand discussions with other GEICO employees, which he personally never confirmed. (*See* SOF No. 44). Mr. Wright later admitted that this GEICO employee was Mr. Grothen. (Wright Depo, pp. 73:1-74:23). However, Mr. Grothen testified that he has no knowledge whether this could be done either, that he had never had a prepaid phone plan and never attempted to change his plan from prepaid to post-paid, and that he has never looked into whether a customer can change his or her plan to obtain his prepaid cell phone records. (*See* SOF Nos. 30, 40, 45). | | |
| | Fact 31: Plaintiff then contacted the California Department of Insurance seeking an investigation into GIECO's denial of his claim. As a result of this inquiry, GIECO again reopened Plaintiff's claim on May 6, 2014.<br><br>(*See* Exhibit 18 to Quinto Depo, attached as <u>Ex. Q</u>). | Undisputed except as to the fact that GIECO reopened plaintiff's claim, which is not established by the cited evidence. |
| | Fact 32: On May 6, 2014, GIECO requested via letter that Plaintiff provide written confirmation from T-Mobile that his prepaid cellular phone records were never available from T-Mobile in order to re-evaluate the denial of Plaintiff's claim.<br><br>(*See* Exhibit 18 to Quinto Depo, <u>Ex. Q</u>) ("You recently advised us that due to the length of time that has elapsed, the cell phone records we requested are no longer available through your phone carrier. This lapse has impeded us form being able to complete our investigation of this loss. If this is incorrect and these records were never available through your phone carrier, we need a letter from the phone company confirming this. . . Once the information we requested is received, we will be able to re-evaluate our position."). | Undisputed. |

| | | |
|---|---|---|
| | Fact 33: On May 14, 2014, Plaintiff provided GIECO with confirmation from T-Mobile via a 3 page fax which contained a letter from T-Mobile's Retail Store Manager, James Truong stating that "Mr. Christopher Monroe came in the store to inquire about his cell phone records but due to his pre-paid account with T-Mobile we do not hold phone records for pre-paid phone number 408-688-4512."<br><br>(*See* Exhibit 8 to Larry Wright, Ex. I) | Undisputed that plaintiff provided the quoted letter. Disputed that the letter was the requested confirmation, inasmuch as it did not state that plaintiff's cell phone records were never available or that had plaintiff upgraded his account he could not have obtained his records.<br>[P's Exh. I (GIECO's request and Truong's letter).] |
| **Moving Party's Reply:** *See* Reply to Fact 9. | | |
| | Fact 34: John Quinto, Plaintiff's claim examiner, testified that this letter meant that Plaintiff's prepaid cellular phone records were not available.<br><br>(Quinto Depo, pp. 144:20-145:11, 146:20-147:6, Ex. D). | Disputed. The cited evidence does not establish the fact. Quinto testified that the letter "does make a statement about the availability of the phone records" and that plaintiff intended to convey that records were not available for that prepaid phone number.<br>[Quinto Depo pp. 144:20-145:11, 146:20-147:6 (P's Exh. D.]<br>**Additional fact:** Quinto testified immediately after the cited testimony that the letter did not warrant paying plaintiff's claim because Wright had given plaintiff specific instruction as to how he could get cell phone records by establishing an account that was not pre-paid.<br>Furthermore, Quinto confirmed with T-Mobile that records for pre-paid accounts do initially exist and can be provided to law enforcement, etc., and presumably to the customer upon an explanation of need (as opposed to a monthly print-out of the call detail which is not a service provided for a pre-paid account).<br>[Quinto Depo 147: 7-13 (P's Exh. D); P's Exh. J (5/22/2014 entry); Quinto Dec..] |

**Moving Party's Reply:** The evidence cited by GEICO does not dispute Fact 34. Mr. Quinto testified that the letter's statement regarding the records meant that "it's not available for that prepaid phone number." (Quinto Depo, pp. 146:25-147:6, Ex. D; *See also* Reply to Fact 6).

| | | |
|---|---|---|
| | Fact 35: Lon Grothen, the Regional Liability Administrator above Mr. Quinto who had the ultimate authority to deny Plaintiff's claim, also admitted that this letter confirmed that T-Mobile does not maintain cell phone records for its prepaid phone customers such as Plaintiff.<br><br>(Grothen Depo, pp. 19:16-20:3, 110:9-24, Ex. E). | Disputed as phrased. Grothen testified that the letter says that T-Mobile does not maintain cell phone records for prepaid phone customers. He did not admit that the letter confirmed that fact.<br>[Grothen Depo 110: 7-24. (P's Exh. E).]<br>**Additional facts:** Grothen testified that it was GIECO's belief that plaintiff could have gotten his cell phone records.<br>[Grothen Depo 108: 6-7 (P's Exh. E).]<br>Quinto's supervisor noted GIECO's understanding regarding the existence of cell phone records for pre-paid accounts in the Atlas system: "We believe the calls should register and be logged with the T-Mobile company and there would be a record of these calls not in the Sales Office but with T-Mobile."<br>[P Exh. J (5/20/2014 entry).]<br>Quinto also understood that records of calls made on pre-paid accounts exist.<br>[Quinto Dec., ¶ 3.] |

**Moving Party's Reply to GIECO's "Additional facts":** Mr. Grothen's "belief" that Plaintiff could have gotten his cell phone records was based on an incorrect assumption rather than a fact. Mr. Grothen testified that he has no personal knowledge of how to obtain cell phone records, he has never looked into whether a customer can change his plan to obtain his pre-paid cell phone records, and that he has no knowledge of whether T-Mobile, or any other cell phone provider for that matter, maintains cell phone records for its pre-paid cell phone customers. (Grothen Depo, pp. 94:23-96:18, 97:6-98:2, 99:5-16, Ex. E and Ex. Y to Plaintiff's Supplemental Appendix of Rebuttal Evidence).

| | | |
|---|---|---|
| | Fact 36: On May 22, 2014, Mr. Quinto further confirmed, independently, that T-Mobile does not maintain cellular phone records for its prepaid customers and that if a prepaid customer changed his account to a post-paid account, it would only | Disputed. T-Mobile confirmed to claims representative Quinto that records for pre-paid cell phones do initially exist and can be provided to law enforcement, etc., and presumably to the customer upon an explanation of need (as opposed to a monthly print-out |

| | | |
|---|---|---|
| | provide records from that day forward.<br><br>(*See* Ex. J, Atlas Record Notes entered by John Quinto on 05/22/2014, DEF001275) ("called and s/w tmobile customer service, 800-866-2453. no cell rcds for pre-paid acct even if t-mobile towers used for pre-paid or post-paid accts. if pre-paid converted to post-paid, only rcds avail online from the time of conversion to post-paid . . . s/w adam. no cell rcds available for pre-paid accts."); Grothen Depo pp. 28:15-29:9 "All claim notes are housed in ATLAS", Ex. E). | of the call detail which is not a service provided for a pre-paid account).<br>Plaintiff omitted from the quotation of the entry the following critical language: "no cell rcds available for pre-paid accts. clarified that not avail to genl public, but is avail to law enforcement, etc." This statement confirmed to Quinto that records for prepaid accounts do exist and can be provided to law enforcement, etc., and presumably to a customer for purposes of providing it to his insurance company for investigation of a claim.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec., ¶¶ 6, 8.] |
| **Moving Party's Reply:** *See* Reply to Fact 6. | | |
| | Fact 37: Mr. Wright, the SIU [Special Investigation Unit] investigator responsible for investigating Plaintiff's claim and the person whose SIU report Mr. Quinto used as his sole justification for recommending to Mr. Grothen that Plaintiff's claim be denied, does not recall making any effort to confirm that Plaintiff could have somehow obtained his prepaid cellular phone records from T-Mobile.<br><br>(Wright Depo, pp. 76:21-77:3, Ex. F; Quinto Depo, p. 58:2-59:16, Ex. D). | Disputed as phrased. Wright testified that beyond his understanding based on his experience with other insureds, his experience as a law enforcement officer, and his communications with other SIU investigators that records on pre-paid accounts can be obtained by upgrading the account, he does not recall whether he verified plaintiff's information with T-Mobile.<br>[Wright Depo 76: 21 – 77: 3.] |
| **Moving Party's Reply:** *See* Reply to Fact 30. | | |
| | Fact 38: Despite Plaintiff providing GIECO with the confirmation letter from T-Mobile and Mr. Quinto confirming that Plaintiff's prepaid records were not available from T-Mobile, GIECO denied Plaintiff's claim for a third and final time on May 29, 2014.<br><br>(*See* Exhibit 19 to Deposition of John Quinto, Ex. K). | Undisputed that GIECO denied plaintiff's claim for a third and final time on May 29, 2014.<br>The remainder of the fact is disputed. The letter plaintiff provided does not confirm that plaintiff's cell phone records were never available or that he could not have obtained the cell phone records had he timely upgraded his account.<br>[P's Exh. 19.] |

| | | |
|---|---|---|
| | | Quinto confirmed with T-Mobile that records for prepaid accounts do exist and can be provided to law enforcement, etc., and presumably to a customer for purposes of providing it to his insurance company for investigation of a claim. [P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| **Moving Party's Reply:** *See* Reply to Fact 6 and Fact 9. | | |
| | Fact 39: GIECO denied Plaintiff's claim on May 29, 2014 solely because Plaintiff did not provide his cellular phone records for his prepaid cell phone.<br><br>(Quinto Depo, p. 142:7-13, Ex. D; Grothen, p. 89:2-5, Ex. E; Monroe Depo., p. 135:19-23, Ex. B). (Fax from Larry Wright to John Quinto on 3/31/2014 "His choice not to provide us phone records has prejudiced our ability to conduct a thorough claims investigation." DEF001233, attached as Ex. S). | Undisputed. |
| | Fact 40: Mr. Grothen, the individual who denied Plaintiff's claim for lack of cell phone records, testified that his entire belief that Plaintiff could have somehow obtained his cell phone records was based on Mr. Wright's SIU written report.<br><br>(Grothen Depo, pp. 140:6-141:11, Ex. E). | Disputed. Grothen testified that he relied on the experience of the SIU investigator, on his report and on statements made by him. He testified that the SIU investigator had been through the process of obtaining cell phone records before and would know how to do it. [Grothen Depo 140: 13 – 141: 5.] |
| | Fact 41: Mr. Grothen further testified that if this belief turned out to be incorrect and Plaintiff could not have obtained his prepaid cellular phone records, he would re-evaluate Plaintiff's claim in its entirety.<br><br>(Grothen Depo, pp. 140:6-141:11, Ex. E). | Undisputed. |
| | Fact 42: Mr. Wright did not know whether Plaintiff could have obtained | Disputed. Wright testified that he did have knowledge, based on his law |

| | | |
|---|---|---|
| | his prepaid cellular phone records when he provided his written report and has no personal knowledge that T-Mobile, or any other cell phone carrier, maintains such records for its prepaid cellular phone customers.<br><br>(Wright Depo, pp. 67:16-68:20, 70:5-23, 78:7-19, 88:20-89:14, Ex. F). | enforcement background, that cell phone records for pre-paid accounts exist, and that he had knowledge, based on his experience with insureds who were told that their pre-paid account records were not available, but were able to obtain the records after upgrading their accounts and information shared among SIU investigators and based on his own personal inquiries, that cell phone records that are not made available to pre-paid customers can be obtained from cell phone companies when the account is upgraded. He testified that it was his belief that records for pre-paid accounts exist and that that was true as to T-Mobile in 2013.<br>[Wright Depo 69: 21 – 70: 1; 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14, 21-24; 78: 4-6; 82: 5-12.] |
| **Moving Party's Reply:** *See* Reply to Fact 30. | | |
| | Fact 43: Furthermore, Mr. Wright did not and does not know whether a T-Mobile customer could change or upgrade his plan from a prepaid account to a monthly or post-paid account to obtain his prior months cellular phone records.<br><br>(Wright Depo, pp. 67:16-68:20, 70:5-23, 78:7-19, 88:20-89:14, Ex. F). | See, Response to fact 43 above. |
| **Moving Party's Reply:** *See* Reply to Fact 30. | | |
| | Fact 44: Mr. Wright's sole belief that Plaintiff could upgrade his account to obtain his prepaid cell phone records was based on second hand discussions with other GIECO employees, which he personally never confirmed. (Wright Depo 67:1-68:20; 71:23-75:14, Ex. F). | Disputed. Disputed. Wright testified that he had knowledge, based on his law enforcement background, that cell phone records for pre-paid accounts exist, and that he had knowledge, based on his experience with insureds who were told that their pre-paid account records were not available, but were able to obtain the records after upgrading their accounts and information shared among SIU investigators and based on his own personal inquiries, that cell phone |

| | | |
|---|---|---|
| | | records that are not made available to pre-paid customers can be obtained from cell phone companies when the account is upgraded. [Wright Depo 69: 21 – 70: 1; 71: 2-25: 72: 4-18; 73: 1-12; 75: 11-24; 76: 4-14, 21-24; 78: 4-6; 82: 5-12.] |
| **Moving Party's Reply:** *See* Reply to Fact 30. | | |
| | Fact 45: GIECO's "Claims Manual" says the investigators are to "[a]void drawing conclusions based on assumption or speculation. An erroneous conclusion can make the difference between settlement and denial. If the denial is unsound, the result may be a complaint or a lawsuit, either of which could have been avoided."<br><br>(*See* Claims Manual, Chapter V Investigation p. V-2, Ex. T). | Undisputed. |
| | Fact 46: GIECO's claims investigator and SIU investigator testified that they did not know what else Plaintiff could have done to obtain and provide his prepaid cellular phone records.<br><br>(Quinto Depo, p. 83:4-14, Ex. D; Wright Depo, p. 88:7-25, Ex. F). | GIECO asserts that what else plaintiff might have done to obtain his records is irrelevant because he admits that he did not do what he was instructed to do, which was to upgrade his plan.<br>Disputed in that the testimony is taken out of context. Quinto testified that he was not sure what transpired after plaintiff was requested to provide cell phone records and that he wouldn't be able to answer what else could be done and would refer the customer to the investigator for that information. [Quinto Depo 83: 7-15; 84: 4-14 (P's Exh. D).]<br>In response to a question as to what Wright would have done to get the records had he been the insured, he responded, "I would have . . . changed my policy or my service plan as I directed him to do."<br>[Wright Depo 89: 1-5.] |
| **Moving Party's Reply:** *See* Reply to Fact 30. | | |

| | | |
|---|---|---|
| | Fact 47: Mr. Grothen testified that GIECO is obligated to make a determination regarding coverage based on the information that they have in their possession.<br><br>(Grothen Depo, p. 77:4-78:11, Ex. E). | Disputed in that the testimony is taken out of context. Grothen testified that the insured is obligated to provide sufficient information for GIECO to make a determination as to the validity of the claim. Assuming that has occurred and the claim has not been denied for failure to cooperate, then GIECO has an obligation to make a determination regarding coverage, based on the best information GIECO has.<br>[Grothen Depo 77: 15 - 78: 11.] |
| | Fact 48: Mr. Grothen also testified that if Plaintiff had provided confirmation that his prepaid cellular telephone records were never available (which he did as evidenced in Ex. I) then GIECO **could not have denied** Plaintiff's claim based on a failure to cooperate. Instead, GIECO would have to examine Plaintiff's file as it was and if there was no evidence of any misrepresentations, GIECO would be required to pay his claim.<br><br>(Grothen Depo, pp. 100:7-24, 102:3-23, 107:10-23, 113:9-114:12, Ex. E). | Undisputed except as to the parenthetical. Plaintiff's letter did not confirm that his cell phone records were never available or that had he timely upgraded his account from pre-paid he could not have obtained his records.<br>[P's Exh. I.]<br>Furthermore, Quinto confirmed with T-Mobile that records for prepaid accounts do exist and can be provided to law enforcement, etc., and presumably to a customer for purposes of providing it to his insurance company for investigation of a claim.<br>[P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| **Moving Party's Reply:** *See* Reply to Fact 9. | | |
| | Fact 49: Because GIECO could no longer deny Plaintiff's claim for lack of cooperation based on his inability to produce his prepaid cellular phone records that did not exist, GIECO was required to examine Plaintiff's claim file for evidence of misrepresentation or fraud.<br><br>(Grothen Depo, pp. 102:24-104:25, Ex. E). | GIECO asserts that this "fact" is argument, not fact. GIECO disputes the premises that GIECO could not deny plaintiff's claims for failure to cooperate, that records for his pre-paid cell phone account did not initially exist. and that he could not have obtained them by upgrading his account as not established.<br>[P Depo 2, pp. 156: 5-13, 24 - 157: 4, 12-16; P's Exh. J (5/22/2014 entry); Quinto Dec.] |
| **Moving Party's Reply:** *See* Reply to Fact 6. | | |
| | Fact 50: When conducting this examination, GIECO must pay a | GIECO asserts that this fact is irrelevant, inasmuch as Gieco denied |

| | | |
|---|---|---|
| | claim if it only has a suspicion of fraud or misrepresentation; GIECO cannot deny a claim unless it has evidence of fraud or misrepresentation.<br><br>(Grothen Depo, pp. 59:11-60:8, 61:22-62:6, 62:18-63-3, Ex. E). | plaintiff's claim for failure to cooperate, not for fraud or misrepresentation. (See P's UMF 12.) GIECO was impeded from completing its investigation by plaintiff's failure to provide his cell phone records. However, GIECO does not dispute that it must have evidence of fraud or misrepresentation to deny a claim on that ground.<br>[Quinto Dec., ¶¶ 10, 23; Wright Dec., ¶¶ 24, 25.] |
| **Moving Party's Reply:** GIECO has failed to admit or deny Fact 50. Therefore, Fact 50 should be deemed admitted. | | |
| | Fact 51: There exists no evidence of fraud or misrepresentation by Plaintiff in submitting his insurance claim or that he was involved in any way in the theft of his vehicle.<br><br>(Quinto Depo, pp. 102:22-103:14, Ex. D; Grothen Depo, p. 87:9-21, Ex. E; Wright Depo, pp. 124:4-15, Ex. F). | GIECO asserts that this fact is irrelevant, inasmuch as Gecio denied plaintiff's claim for failure to cooperate in GIECO's investigation and failure to assist in securing evidence, not for fraud or misrepresentation. GIECO was impeded from completing its investigation by plaintiff's failure to provide his cell phone records.<br>[Quinto Dec., ¶¶ 10, 23; Wright Dec., ¶¶ 24, 25.] |
| **Moving Party's Reply:** GIECO has failed to admit or deny Fact 51. Therefore, Fact 51 should be deemed admitted. | | |

| | | |
|---|---|---|
| | Fact 52: Therefore, Defendant's denial of Plaintiff's claim was in bad faith and GIECO should have paid Plaintiff's claim.<br><br>(Grothen Depo, pp. 100:7-24, 102:3-23, 107:10-23, 113:9-114:12, Ex. E). | GIECO asserts that this "fact" is argument, not fact. GIECO further asserts that this "fact" is irrelevant, inasmuch as Gecio denied plaintiff's claim for failure to cooperate in GIECO's investigation and failure to assist in securing evidence, not for fraud or misrepresentation. (See P's UMF 12.) GIECO was impeded from completing its investigation by plaintiff's failure to provide his cell phone records.<br>[Quinto Dec., ¶¶ 10, 23; Wright Dec., ¶¶ 24, 25.]<br>Furthermore, although there was no dispositive proof of fraud, there was evidence suggesting the possibility of fraud that warranted further investigation that GIECO was unable to perform.<br>[P Depo 1, pp. 14: 16-19, 24 – 15: 3; 17: 19 – 18: 5; 19: 23-25; 20: 3-13, 18 – 21: 2, 4-9; 27: 20-23; 42: 17 – 44: 5; 45: 18-2; 57: 16 – 58: 1; 61: 4-6; 63: 18-21; 64: 3-16; Quinto Dec., ¶¶ 7, 8, 10; Exh. F to Quinto Dec.; Exhs. B, C to Wright Dec., pp. 3, 5-8, 12, 13, 18-20, 25; P Depo 2, pp. 17: 19 – 18: 2; 30: 25 – 31: 22; 56: 14-15, 20-25; 57: 18-23; 73: 11-17; 78: 6-10; 96: 9-13; 176: 9-14; Wright Dec., ¶ 23; Quinto Dec., ¶ 19.] |
| **Moving Party's Reply:** GIECO has failed to admit or deny Fact 52. Therefore, Fact 52 should be deemed admitted. | | |
| | Fact 53: Plaintiff's vehicle has not been recovered.<br><br>(Monroe Depo, p. 34:15-17, Ex. B) | Undisputed. |
| | Fact 54: Plaintiff has suffered damages as a result of his claim being denied, in that Plaintiff has not had the use and enjoyment of his car and has been forced to hire attorneys to prosecute his claim against GIECO to recover for his loss.<br><br>(*See* Atlas Notes, Ex. J; Monroe | Undisputed factually. However, attorney's fees are not recoverable damages in a claim for breach of contract unless the contract so provides. Furthermore, plaintiff does not provide the cited deposition testimony. |

| | | |
|---|---|---|
| | Depo, pp. 36:25-37:3, Ex. B). | |

I attest that the evidence cited herein fairly and accurately supports or disputes the facts as asserted.

**McCALLUM, METHVIN & TERRELL, P.C.**

DATED: December 29, 2017

By: /s/ Patrick C. Marshall
Patrick C. Marshall
Attorney for Plaintiff Christopher T. Monroe