UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTOPHER T. MONROE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GEICO GENERAL INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 5:14-cv-05174-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DIRECTING PARTIES TO SUBMIT STATUS REPORT RE READINESS FOR TRIAL**<br><br>Re: Dkt. Nos. 57, 63 |

I.　INTRODUCTION

　　Plaintiff Christopher T. Monroe ("Monroe") initiated this action against Defendant Geico General Insurance Company ("Geico") after the company denied Monroe's automobile theft claim. Monroe asserts claims for breach of the insurance policy, violation of California Business & Professions Code section 17200 et seq., fraud and declaratory relief. Geico moves for summary judgment, asserting that it lawfully denied Monroe's claim because he did not comply with the assistance and cooperation provision of the insurance policy by failing to provide his cell phone records. Monroe moves for partial summary judgment on his breach of contract and breach of the implied covenant of good faith and fair dealing claims, asserting that Geico had no legitimate basis for denying his insurance claim because Geico knew Monroe's cell phone records for his pre-paid phone were not maintained by T-Mobile and did not exist. The motions are scheduled for hearing on January 25, 2018. The Court finds it appropriate to take the motions under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). Because there are genuine

issues of material fact regarding the existence and availability of Monroe's cell phone records, Geico's motion for summary judgment on the unfair competition claim is denied, and the parties' competing motions for summary judgment on the breach of contract claim are denied. Geico's motion is granted as to the remaining claims.

## II. BACKGROUND

Monroe owned three vehicles at the time he applied for insurance from Geico: a Dodge Neon, a Honda motorcycle and a Lexus GS 300. His insurance with Farmers Insurance on the three vehicles had been lapsed for more than a month when he decided to apply to Geico for the shortest term policy available for his Lexus. Monroe used an on-line website to get quotes from multiple insurance companies. He chose Geico because it was the cheapest.

Monroe applied for insurance with Geico on the morning of September 25, 2013. He used his parents' address on the application, but he lived at a different residence. Later the same day, he washed his Lexus and parked it a couple streets over from his home and left town. The same day, Geico sent Monroe an Evidence of Liability Insurance card bearing the effective date of September 26, 2013. The cooperation and assistance condition in the policy requires the following:

> 3. ASSISTANCE AND COOPERATION OF THE INSURED
>
> The insured will cooperate and assist us, if requested:
> (a) In the investigation of the loss; . . .
> (f) In securing and giving evidence;

Dkt. 59, p. 294 (Ex. BB to Muhlestein Decl.).

On September 27, 2013, Monroe reported to Geico that his Lexus had been stolen the day before. The claims examiner, John Quinto[1], sent Monroe a Theft Questionnaire to be completed,

---

[1] Monroe moves to strike the claims examiner's declaration, asserting that it is a "sham affidavit." The "sham affidavit" rule prevents a party from raising an issue of fact to defeat summary judgment by submitting an affidavit contradicting the party's prior testimony. Yeager v. Bowlin, 693 F.3d 1076, 1080-81 (9th Cir. 2012). The two criteria for invoking the "sham affidavit" are: (1) the contradiction must be clear and unambiguous and (2) the contradictory affidavit must actually be a sham, rather than an attempt to explain or clarify earlier testimony. Id. Here, the claims examiner's declaration is not being offered to raise an issue to defeat summary judgment.

notarized and returned, and also notified him that Geico would need a recorded statement from the last driver of the Lexus. Because Monroe's claim for theft was made within 24 hours of the inception of the policy, the claims examiner referred the matter to Geico's Special Investigative Unit ("SIU"). Geico does not mandate a specific protocol for conducting investigations. Instead, trained SIU investigators make decisions about what documentation is needed based upon the specific facts of the claim they are investigating. When the investigation is completed, the assigned claims examiner and a Regional Liability Administrator ("RLA") discuss the claim.[2] No claim can be denied without authority from a RLA.

Monroe gave the SIU investigator, Larry Wright ("Wright"), a recorded statement on October 9, 2013[3] and provided the following account of the vehicle loss.[4] When Monroe returned home on the evening of September 25th, he discovered that his home had been burglarized. Among the stolen items was a spare key to the Lexus which had been inside a locked portable safe. The house had not been ransacked. Monroe called the police to report the crime. After the police left, Monroe went to bed. The next morning, the first full day of coverage under the policy, Monroe checked on the Lexus and discovered it was gone. The vehicle was never recovered.

Monroe acknowledged that he was having financial challenges at the time he purchased the Geico policy. He was unemployed. His car payments had been in arrears for two months before his mother made the payments for him. His mother was also making his credit card payments. Monroe's cell phone had been turned off because he didn't have the money to pay for it. Geico obtained Monroe's bank records in the course of its investigation, which also indicated to Geico

---

Moreover, the examiner's testimony and declaration are not clearly and unambiguously contradictory. The motion to strike is denied.
[2] Monroe's motion to strike the declaration of the RLA, Lon Grothen, as a "sham affidavit" is denied. The Grothen declaration is not being offered to raise an issue to defeat summary judgment. In any event, the allegedly contradictory statements are not clear and unambiguous.
[3] Monroe's motion to strike Wright's declaration as a "sham affidavit" is denied. The Wright declaration is not being offered to raise an issue to defeat summary judgment. In any event, the Wright's declaration and testimony are not clearly and unambiguously contradictory.
[4] Some of the information regarding the events in question is from Monroe's deposition taken in the course of this suit.

Case No.: 5:14-cv-05174-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
3

that Monroe had financial challenges at the time he purchased the insurance policy.

During the October 9th recorded statement, Wright asked Monroe a number of questions about phone calls he may have received the day and night before the theft. Monroe told Wright he would have to look at his cell phone to know. Wright gave Monroe a written list of the documentation and information he should provide to Geico, which included his Sprint cell phone and text messages records for the period September 1 through October 1, 2013. Wright gave Monroe the following instructions regarding how to obtain cell phone records for a prepaid account:

> You may have to upgrade your cellphone service from . . . prepaid to monthly such that you can obtain your cellphone records. You have to do that, um administratively . . . . [I]f the cost is problematic for you, you can ask the examiner and they often times will authorize the payment of the, uh, cost to upgrade it, and that way you, your, uh, your cellphone records; however, the cellphone records need to have the, uh, the dates of service, they need to have your account number, they need to have the calls rendered, um, and there can be no, um, uh, manipulation or alteration of records. Okay? Um, and what I'm gonna be looking for is phone records from 9/1/2013 through 10/1/2013. Okay? And that's both cellphone and text messages. Okay?

Dkt. 59, pp. 80-81 (Ex. C to Wright Dec. at pp. 23-24).

Although the recorded statement indicates that Monroe told Wright his cell provider was Sprint, Monroe inexplicably contacted T-Mobile several times to try to get his cell records. Dkt. 64-3, p. 171. A T-Mobile log of customer assistance includes the following memo entry:

> Rep ID: Grace G/811119 Name: Chris Issue: Called in to as[k] if we could help him print out his call and sms records, edu cx we don't [sic] keep those records in our database. Xfer to sales[.]

Dkt. 64-9, p. 2. Monroe testified that did not upgrade his cell phone plan because of the cost and he didn't think it would work:

> A. Because I was gonna upgrade, but it was already ten. And if I would have upgraded it, this was the 10/14 date, it would have cancelled out the whole month I had already paid for. You know what I'm saying? Because [Wright] was saying if you upgrade your plan, we'll pay for it or whatever.
>
> Q. Okay. So he asked you – you're saying he asked you to upgrade

Case No.: 5:14-cv-05174-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
4

> your account, but it was gonna cost money or something? Is that what you're saying?
>
> A. Yeah. But I don't know how to explain it. He wanted me to upgrade my plan. So this is me saying that I was doing what he was asking of me. But if didn't make sense to do it, because I had already paid for a month, I would lose that money, and what it was gonna accomplish wouldn't have helped anyways.
>
> Q. Why wouldn't it have helped?
>
> A. Because he wanted records from whatever date to the 1st, like it's asking here. And when I called, it was after the 1st. And if I upgraded then, it wouldn't have produced records they never ever had.
>
> Q. . . . It sounds like there was – Larry had asked you or requested you to upgrade, so that way you could get your text and cell phone records. Is that true?
>
> A. Yeah. He requested my cell phone records. . . .
>
> Q. Right. Okay. And so then he had told you, essentially, to look into doing this or to upgrade. And it sounds like your testimony is that it didn't make sense to do that because if you did upgrade it, you still wouldn't have had access to the records he wanted. Is that correct?
>
> A. Exactly.

Dkt. 59, p. 256-257 (Monroe Dep. at 155:16-157:4). The lack of Monroe's cell phone records impeded Geico's ability to cross-check the accuracy of Monroe's recorded statement.

On October 16, 2013 and again on October 28, 2013, Wright followed up with Monroe regarding the requested information and documentation. On October 28, 2013, Geico received a handwritten note and a copy of Monroe's bank records that was too light to read. The handwritten note reads:

> MON. 10/14/13 4:30 PM LIZ CUSTOMER SERVICE REP NO RECORDS FOR PREPAID CUSTOMERS
> WAS GOING TO UPGRADE PLAN BUT WOULDN'T COVER DATES 9/1/13 – 10/1/13
> I WAS GOING TO UPGRADE TO MONTHLY BUT IT WOULD OF [] CANCELED OUT MY MONTH
> I JUST PAID FOR.

Dkt. 59, p. 23 (Wright Decl., Ex. D). When asked about his handwritten note during deposition,

Case No.: 5:14-cv-05174-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

5

however, Monroe was unable to explain what his note meant. He could not explain the significance of the 10/14/13 date. He did not know who Liz was and did not know if "no records for prepaid customers" was something Liz told him.

On October 30, 2013, Wright spoke to Monroe's friend and noted in the file that the friend generally corroborated Monroe's account of the events surrounding the loss of his vehicle. Wright also confirmed the dates of the burglary and automobile theft reports with the San Jose Police Department.

Wright's "closing report" indicates that as of October 30, 2013, Geico had not received Monroe's cell records, the Theft Questionnaire, or a readable copy of Monroe's bank statement. Approximately a week later, Geico sent Monroe a letter advising him that the company needed more time to secure certain documentation, including cell phone and text records. The following week, Geico sent Monroe another letter advising him of his obligation to assist and cooperate in the investigation of his loss by providing the requested documentation. On November 27, 2013, Geico sent Monroe another letter similar to the previous one. Geico did not receive any documentation in response to these letters. The claims examiner and RLA determined that Monroe's claim should be denied because he had not complied with the cooperation and assistance condition of the insurance policy. On December 10, 2013, Geico notified Monroe of its decision.

In February of 2014, approximately five months after the loss of his vehicle, Monroe submitted the Theft Questionnaire, a police report, legible bank records and his handwritten note to the claims examiner. The claims examiner asked Wright to reopen the investigation into Monroe's claim. On March 25, 2014, Wright contacted Monroe by phone. Monroe told Wright that he had spoken to a representative of his phone carrier who informed him that records were not available to customers who prepaid for cell service. Wright reminded Monroe that he needed to establish a monthly account for cell service in order to obtain his records and that he could discuss the cost of converting the cell service with the claims examiner. Monroe responded that he would have lost the money he had already paid for his phone service that month. Without Monroe's cell

records, Wright was unable to cross-check the information Monroe provided during his recorded statement. Wright completed his investigation on or about March 31, 2014 and notified the claims examiner that Monroe's cell records were no longer available.

In early April of 2014, the claims examiner and RLA met to review Monroe's claim. They determined to stand by their previous denial of the claim because Monroe's cell records had not been provided and were now not available. On April 4, 2014, Geico sent Monroe a second denial letter.

"[N]o later than May 5, 2014," Geico investigated Monroe's criminal record and determined that Monroe had failed to disclose the full extent of his criminal record during his recorded statement. Geico's Motion for Summary Judgment at p.8, n. 1. Among other things, Geico learned that Monroe was a convicted felon with convictions for unemployment insurance fraud, theft, possession of a controlled substance, and use of a controlled substance, and that he had been arrested at least eight times.[5] Geico also learned that Monroe had failed to disclose to Geico that he had at least three prepaid phones in August and September of 2013.

On May 6, 2014, Geico sent a letter to Monroe in response to a complaint he had filed with the Department of Insurance. Geico told Monroe that it had an obligation to investigate all claims; that his claim had been denied due to his failure to cooperate with the investigation; and that in order for Geico to reconsider the denial, it needed his cell records or a letter from his phone carrier confirming that the records were never available. On May 14, 2014, Monroe sent Geico a fax with a letter from a retail store manager for T-Mobile, Mr. Truong, stating the following:

> Mr. Christopher Monroe came in the store to inquire about his cell phone records but due to his prepaid account with T-Mobile we do not hold phone records for pre-paid phone number 408-688-4512.

Dkt. 59, p. 116 (Quinto Decl., Ex. M). Upon receiving the T-Mobile letter, the claims examiner, Quinto, and the RLA, Grothen, reviewed Monroe's claim for the third time. Quinto "concluded

---

[5] Plaintiff's motion to strike the criminal records on the grounds that they are immaterial is denied.
Case No.: 5:14-cv-05174-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
7

that the T-Mobile letter did not indicate whether [Monroe] had attempted to upgrade his account in order to obtain his cell phone records as he had been instructed by Larry Wright. Furthermore, the fact that [Monroe] presented a letter from T-Mobile regarding his cell phone number suggested that he had changed cell phone providers, which likely rendered it more unlikely that he would be able to provide the cell phone records that had been requested some eight months earlier.[]" Dkt. 59, pp. 95-96. RLA Grothen concluded that the T-Mobile letter "provided no evidence that [Monroe] had timely requested that Sprint (or T-Mobile) upgrade his account to monthly and no explanation of why the letter was from T-Mobile, when he had represented that his cell phone provider was Sprint." Dkt. 59, p. 8. Geico decided to "stand by the decision to deny coverage because Monroe's failure to provide cell phone records impeded Geico's investigation of his claim." Id. Accordingly, Geico notified Monroe that his claim was denied.

### III. STANDARDS

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a): Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. The court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324. However, the mere suggestion that facts are in controversy, as well as conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See Thornhill Publishing Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). To meet this burden,

the non-moving party must come forward with admissible evidence. Fed. R. Civ. P. 56(c); see also, Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202; Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## IV. DISCUSSION

Monroe asserts claims for breach of the insurance policy, violation of Section 17200, fraud and declaratory relief. Geico moves for summary judgment of all claims, asserting that it lawfully denied Monroe's claim because he did not comply with the assistance and cooperation provision of the insurance policy by failing to provide his cell phone records. Monroe moves for partial summary judgment on his breach of contract and breach of the implied covenant of good faith and fair dealing claims, asserting that Geico had no legitimate basis for denying his insurance claim because Geico knew Monroe's cell phone records were not maintained by T-Mobile and did not exist.

A. Fraud Claim

In support of the fraud claim, Monroe alleges that Geico never intended to pay legitimate auto theft claims, although it had promised to do so under and through its policies. First Amended Complaint at ¶37. Monroe also alleges that Geico suppressed the truth of its plan to deny claims based on the pretense of an insured's cell phone records being unavailable. Id. Monroe alleges that he reasonably relied on his belief that all material facts about Geico's business practices had been disclosed to him and based on that reliance, he paid premiums to Geico instead of other insurance carriers.

The elements of fraud are: (1) a misrepresentation, concealment or nondisclosure; (2) knowledge of falsity (scienter); (3) intent to defraud (i.e. to induce reliance); (4) justifiable reliance; and (5) damage. Behnke v. State Farm General Ins. Co., 196 Cal.4th 1226, 1443, 1452-53 (2011). Promissory fraud is a subspecies of fraud. The elements of promissory fraud are: (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promise to enter into a transaction; (4) reasonable reliance by the promise; (5) nonperformance by the party making the promise; and (6) resulting damage. Id.

Here, Monroe cannot prevail on a claim for fraudulent inducement to purchase the policy because the undisputed evidence shows that Monroe chose to purchase the Geico policy based on its price and nothing more. Furthermore, Monroe has not offered any evidence to show that at the time Monroe purchased its policy Geico intended to deny legitimate claims for auto theft.

Nor is there any evidence that Geico committed fraud after Monroe purchased the policy. Instead, the evidence shows that Geico conducted an investigation to determine the legitimacy of Monroe's claim. In the course of the investigation, Geico decided that it needed Monroe's cell records. Geico's request for Monroe's cell records was not unreasonable, much less evidence of fraud, in light of the circumstances surrounding the loss of Monroe's vehicle. Further, Wright gave Monroe guidance on how to obtain his cell records from his cell carrier and advised him that Geico often pays for the cost of upgrading cell service. Geico also gave Monroe multiple reminders that it needed his cell records and that he was contractually obligated to cooperate and assist in the investigation. Rather than show a fraudulent intent, this evidence suggests that Geico believed the requested cell records existed and were available at the time it requested them from Monroe.

Monroe takes issue with Geico's insistence on cell records after Monroe told Geico he could not obtain them and submitted the T-Mobile letter. Monroe argues that the cell records were a pretext for denying his legitimate auto theft claim, reasoning that Geico incorrectly assumed, but

did not have actual knowledge that Monroe could obtain his cell records." Dkt. 65, p. 4 (Plaintiff's Statement of Uncontroverted Facts No. 10). An erroneous assumption, however, is insufficient to raise an inference of fraud. Moreover, Monroe's argument is premised on an incomplete recitation of the deposition testimony of Geico employees Wright and Grothen. Although Wright testified that he did not have personal knowledge regarding whether T-Mobile maintains cell records that customers can access, he testified that he had received T-Mobile records for prepaid cell phones from insureds in 2013. Dkt. 64-7, p. 6. Wright also testified that he believed records were available for T-Mobile prepaid cell phones based on his discussions with other employees within Geico's SIU unit. Dkt. 64-7, p. 8. Further, as a former law enforcement officer, Wright knew that cell records for prepaid cell phone accounts were available. Dkt. 64-7, p. 13. Geico employee Grothen similarly testified that he did not know whether T-Mobile specifically maintained cell phone records for prepaid customers, but that he had seen and Geico had successfully obtained records for prepaid cell accounts. Dkt. 64-6, pp. 24-25.

Geico's internal records are consistent with Wright's and Grothen's deposition testimony. In particular, Geico's internal records include a reference to a call from Geico to T-Mobile's customer service as follows:

> Revd with supv. – called and s/w tmobile customer services, 800-866-2453, no cell rcds for pre-paid acct even if t-mobile towers used for pre-paid or post-paid accts. If pre-paid converted to post-paid, only rcds avail online from the time of conversion to post-paid. – he xferred me to pre-paid acct. dept., 877-778-2106. s/w adam. No cell rcds available for pre-paid accts. Clarified that not avail to genl public, but is avail to law enforcement, etc.

Dkt. No. 64-11, p. 3. Further, Geico considered the belatedly submitted T-Mobile letter. Geico determined that the letter failed to establish that the requested cell records did not exist and/or were unavailable several months earlier when Wright had requested them from Monroe. Geico's assessment of the T-Mobile letter does not constitute fraud, particularly because Monroe told Wright during his recorded statement that his cell service provider was Sprint, not T-Mobile. In sum, there is no evidence of fraud. Summary judgment is granted in favor of Geico with respect

to the fraud claim.

B.  Section 17200 Claim

California Business & Professions Code §17200 defines unfair competition as any "unlawful, unfair or fraudulent business act or practice." "Unlawful" practices are those forbidden by law. Saunders v. Super. Ct., 27 Cal.App.4th 832, 838 (1994). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163 (1999).  The "fraudulent" prong requires a showing of actual or potential deception to some members of the public, or harm to the public interest. Id. at 180.  A plaintiff may base a UCL claim on an alleged omission, "[but] to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact that the defendant was obliged to disclose." Sud v. Costco Wholesale Corp., 229 F.Supp.3d 1075, 1085 (N.D. Cal. 2017) (quoting Daugherty v. Am. Honda Motor Co., 144 Cal.App.4th 824, 835 (2006)).

### Alleged Fraudulent Business Practices

Monroe contends that Geico's business practices "deceive[d] the public into thinking that coverage for a claim will occur when no findings of fraud or misrepresentation are present." Dkt. 64, p. 29 (Monroe's Opposition, p. 22).  As previously discussed in connection with Monroe's fraud claim, there is no evidence of fraud or deception.  Furthermore, Monroe's argument ignores that Geico determined there were "red flags" suggesting fraud and Geico was entitled to conduct an investigation into the occurrence.  Wright collected and evaluated documents from Monroe. Wright also contacted Monroe's friend to confirm Monroe's account of his activities.  Wright repeatedly requested cell records from Monroe that Wright reasonably believed were available. Monroe had a contractual duty to cooperate in Geico's investigation into the occurrence as a condition of coverage.  Geico ultimately concluded it was unable to complete its investigation

Case No.: 5:14-cv-05174-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
12

based on Monroe's failure to provide cell phone records. There is nothing fraudulent or deceptive about the manner in which the investigation was conducted.

There is a legitimate dispute about the existence and availability of Monroe's cell records. On the one hand, Geico has presented evidence that the requested cell records existed and were available early in the investigation. Based on his experience as a law enforcement officer and his discussions with employees within Geico's SIU unit, Wright believed the requested cell records existed and were available. Grothen testified that he had seen and Geico had successfully obtained records for prepaid cell accounts. There is also evidence that Geico contacted T-Mobile's customer service and was told records for prepaid cell accounts existed and were available to "law enforcement, etc." Dkt. No. 64-11, p. 3. On the other, Monroe made attempts to obtain his cell records and determined they were not available. The T-Mobile letter tends to support Monroe's position. This legitimate dispute about the existence and availability of Monroe's cell records, however, does not render Geico's conduct fraudulent. Geico is granted summary judgment on the fraudulent business practice claim.

### Alleged Unlawful Business Practices

Monroe alleges that Geico's business practices were unlawful because they violated California Civil Code Sections 1572 (Actual fraud), 1573 (Constructive fraud), 1709 (Deceit; damages), 1711 (Deceit to defraud public or particular class), 1770 (List of proscribed practices), 1670.5 (Unconscionable contract or clause of contract; finding as matter of law; remedies), California Insurance Code Section 790.03 (Prohibited acts), and the common law.

As discussed previously in the context of the fraud claims, Monroe has failed to present any evidence of fraud. It follows that Monroe's 17200 claim also fails to the extent it is predicated on Civil Code Sections 1572, 1573, 1709 and 1711. Monroe's claim also fails to the extent it is predicated on the remaining statutory sections. Civil Code Section 1770 lists twenty-seven (27) proscribed unfair methods of competition and unfair or deceptive acts or practices. Insurance Code Section 790.03 similarly lists several prohibited acts. Monroe does not specify which of the

statutorily proscribed and prohibited acts Geico allegedly committed, much less identify triable facts which, if proven, would establish a violation of these sections. The Court is not required to scour the record for a plausible factual basis for a claim. See Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1029 (9th Cir. 2001). With respect to Civil Code Section 1670.5, Monroe similarly does not identify a specific provision in the insurance contract that is allegedly unconscionable, much less identify triable facts which, if proven, would support such a theory. Nevertheless, the Court has reviewed the record in search of a factual basis for a violation of Civil Code Sections 1670.50 and 1770, as well as Insurance Code Section 790.03 to no avail. Geico's motion for summary judgment is granted as to the claim for unlawful business practices.

## Alleged Unfair Business Practices

The UCL does not define the term "unfair" and the California Supreme Court has not established a definitive test to determine whether a business practices is unfair. Wahl v. Yahoo! Inc., No. 17-2745 BLF, 2017 WL 4098884, at *2 (N.D. Cal. Sept. 15, 2017). Nevertheless, three separate tests have emerged from the California Courts of Appeal that provide guidance on the issue. The first test requires that the public policy underlying the claim "must be tethered to specific constitutional, statutory or regulatory provisions." Drum v. San Fernando Valley Bar Ass'n, 182 Cal.App.4th 247, 257 (2010). Under the second test, courts analyze whether the alleged business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Wahl, supra, at *2 (quoting Drum, 182 Cal.App.4th at 257). The third test requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." Drum, 182 Cal.App.4th at 257.

Monroe's personal account of his attempts to obtain his cell records coupled with the T-Mobile letter raise a triable issue regarding whether Geico unfairly denied Monroe's claim based

1 on his inability to produce cell records that either did not exist or were not available. Geico's
2 motion is denied with respect to the unfair business practices prong of Monroe's Section 17200
3 claim.

C.  Breach of Contract Claim

Geico and Monroe move for summary judgment on the breach of contract claim. To state a claim for breach of contract, a plaintiff must prove (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) resulting damages. Bowman v. CMG, No. 07-3140 SI, 2008 WL 3200662, at *3 (N.D. Cal. Aug. 4, 2008). "It has long been recognized in California that every contract contains an implied covenant of good faith and fair dealing that neither party will injure the right of the other party to receive the benefits of the agreement." In re Apple In-App Purchase Litig., 855 F.Supp. 2d 1030, 1041 (N.D. Cal. 2012) (citing Wolf v. Walt Disney Pictures & Tel., 162 Cal.App.4th 1107, 1120 (2008)). A claim for breach of the implied covenant need not be pled separately. Guzik Tech Enterprises, Inc. v. Western Digital Corp., No. 11-3786 PSG, 2013 WL 6227626, at *12 (N.D. Cal. Nov. 22, 2013).

There is a genuine issue of material fact regarding the existence and availability of Monroe's cell records. The parties' competing motions for summary judgment on the breach of contract claim are denied.

D.  Declaratory Relief Claim

Monroe seeks a declaration that the burden to prove a claim and the manner of proof required by Geico are unlawful and in material breach of the insurance policy. Geico contends that the declaratory relief claim is duplicative of the breach of contract claim and is unnecessary. In response, Monroe asserts that Geico breached the insurance contract by denying his claim in bad faith and therefore he is entitled to declaratory relief.

Under 28 U.S.C. §2201, the court may declare the rights and other legal relations of any interested party seeking such declaration. Declaratory relief "is designed to resolve uncertainties or disputes that may result in future litigation." StreamCast Networks, Inc. v. IBIS LLC, No. 05-

Case No.: 5:14-cv-05174-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

4239 MMM, 2006 WL 5720345, at *3 (C.D. Cal. May 2, 2006). The decision to grant declaratory relief is discretionary. U.S. v. State of Wash., 759 F.2d 1353, 1356 (9th Cir. 1985). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." Id. For example, where a determination of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief. StreamCast Networks, 2006 WL 572034, at *3 (collecting cases). Here, Monroe's declaratory relief claim is entirely duplicative of the breach of contract claim and unnecessary. Defendant's motion is granted with respect to the declaratory relief claim.

## V. CONCLUSION

For the reasons set forth above, the parties' competing motions for summary judgment on the breach of contract claim are DENIED. Geico's motion for summary judgment as to the Section 17200 "unfair" competition claim is DENIED. Geico's motion for summary judgment is GRANTED as to all of the remaining claims.

No later than January 31, 2018, the parties shall file a joint status report regarding their readiness to proceed with the April 17-25, 2018 trial schedule set forth in the Amended Case Management Order, Docket No. 53.

**IT IS SO ORDERED.**

Dated: January 19, 2018

EDWARD J. DAVILA
United States District Judge

Case No.: 5:14-cv-05174-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
16